IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

--------------------------------------------------------x

UNITED STATES OF AMERICA

      -v-

                                   No. 1:19-CR-201-LMB

GEORGE AREF NADER,

      *Defendant*.

--------------------------------------------------------x

## MEMORANDUM OF THE UNITED STATES IN OPPOSITION TO DEFENDANT'S MOTION TO REVOKE DETENTION ORDER

Defendant George Aref Nader ("Nader" or "Defendant") is a twice-convicted child sex offender[1] with a more than thirty-year history of using his international influence and wealth to obtain minor boys for sex and an unrelenting interest in images of minor boys engaged in sexually explicit conduct.  In the 1990s and 2000s, Nader traveled frequently to Europe, where he solicited numerous minor boys for sex through a pimp.[2]

---

[1] Nader pleaded guilty in this District to the offense of transporting child pornography in 1991 and pleaded guilty in 2003 in the Czech Republic to criminal offenses related to allegations that he had sex with two minors.

[2] The Defendant was accused by Czech authorities of 10 instances of sexual conduct for money with five separate underage boys between 1999 and 2002.  According to defense counsel, Nader was eventually convicted of "contributing to the moral corruption of society."  Detention Hr'g Tr. 30:15-17, dkt. 36.  U.S. Magistrate Judge Ivan D. Davis persisted in asking what was the underlying conduct.  Defense counsel replied: "the conduct for which he pled guilty was having a relationship with two young men who were two years under the age of consent in Czechoslovakia."  *Id,* at 30:25-31:2.  Judge Davis clarified, and counsel admitted, that the "relationship" was "sexual conduct, with minors."  *Id,* at 31:3-6.  The government's understanding is that the age of consent in the Czech Republic is 15 years old, so defense counsel's representation means the two boys

Nader arranged for at least one of those boys, who was just fourteen at the time, to travel from Europe to Nader's home in Washington, D.C., where Nader had sex with him about every other day.[3]

So widely-known was Nader's prurient interest in minor boys that, during the past several years, a number of his friends and contacts (*i.e.,* more than one) sent him child pornography via the WhatsApp mobile messaging application, knowing that the material would be well received.  Indeed, Nader responded to many of these videos with approbation.  For example, after receiving a video depicting a boy having sex with a goat, Nader replied approximately four minutes later with four emojis:[4] one grinning face; a thumbs-up; a "smiling face crying tears of joy;" and another thumbs-up.[5]  Upon receiving

---

with whom Nader admitted having sex with were 13 years old.  This is supported by the sworn testimony in the United States from one of the other child prostitutes from the Czech Republic in 1999-2002.

[3] Defendant's claim that this criminal conduct is time-barred is meritless.  Because the statute of limitations for the conduct had not yet lapsed when amendments extending the limitations period took effect, those new limitations periods replaced the original.  *See Stogner v. California*, 539 U.S. 607, 617–19, 632 (2003) (no *ex post facto* violation where original limitations period had not yet expired).

[4] Emojis are "small images, symbols, or icons used . . . to express the emotional attitude of the writer."  *Emoji Definition*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/emoji (last visited July 21, 2019).

[5] On July 10, 2019 and July 17, 2019, defense counsel and a defense expert visited the Federal Bureau of Investigation's Washington Field Office to review forensic materials related to the Indictment, as well as the devices seized from Defendant at John F. Kennedy International Airport in June 2019.  Each visit lasted approximately two hours. The government believes that the defense is, thus, aware that Defendant responded positively to messages containing alleged child pornography.  *Cf.* Def.'s Mem. 2 ("the government has offered no evidence that Mr. Nader had actual knowledge that any of these files were located on [his] iPhone").  Their failure to acknowledge this to the Court would seem to go to their current representations about the strength of the government's case.

a message containing a video of a goat sucking on the genitals of a minor boy, Nader responded approximately three minutes later with five identical emojis depicting a "smiling face crying tears of joy."

With respect to Count 2 of the Indictment, Defendant received a WhatsApp message on December 2, 2016 at 1:39:48PM containing a video of young naked male being hung by his hands from the ceiling, after which his genitals were sprayed with a fluid and then lit on fire.  This video was sent by unindicted person K.K. to Nader.  The video is immediately preceded by a text in Arabic that can be translated as "the person who is bound molested a child, so the father burned his penis with fire."  Less than eight minutes later (at 1:48:26PM on December 2, 2016), Nader responded to K.K. with three emojis, including the "see-no-evil monkey" and two "flushed face."

These videos and other alleged child pornography and obscenity were not deleted from phones Nader transported into the United States on January 17, 2018.  See Indictment (Counts One and Two), dkt. 49.

The punishment Nader now faces in this District provides a powerful incentive for him to flee.  Nader faces not only a fifteen-year mandatory minimum sentence for transporting child pornography, but also a ten-year mandatory minimum for the transportation of a minor into the United States for sex, and a five-year maximum sentence for the importation or transportation of obscene materials.  *See* Indictment, dkt. 49.

Nader's exposure is, however, much more serious than just the instant charges. As the defense had been previously informed, additional witnesses and alleged victims of the illicit conduct of Defendant and co-conspirators have been identified and are currently

being further investigated by the Federal Bureau of Investigation.  Some of these potential charges involve exploitation of other minor boys.

Any claim that Defendant's conduct is somehow far in his past is further belied by two factors.  One is his persistent interest in seeking, grooming, and rewarding children for sexual conduct with adult men.  The government has electronic communications between Defendant and co-conspirators about and with minor victims.

In February 2009, for example, Nader and an unindicted co-conspirator shared pictures of an underage boy, whom the pair had been grooming since at least December 21, 2006.  Nader wrote to the co-conspirator on February 23, 2009: "I am willing to invest in him and I hope he understands how serious that is and he doesn't disappoint himself and us."  The unindicted co-conspirator responded:

> I spoke to him yesterday , his dad was visiting with him at his moms house. …  How do we explain this to his mom/dad. I, we, need to find a very tactful way to introduce you and your generous intentions. DEFINATELY don't want it seen in a ugly light. We will have to bounce it around and figure out a game plan. He will tell you that his tatoos are not just bad ones, but one is for his grandma and I think one for his step brother, but go ahead and tell him what I said, no more! I know he was going to call, but i told him to be very cautious with mom dad around. and he just got your number yesterday. he is in school today and has golf afterwards. You need to email him and let him know what hours he can call, with the time difference."

Nader replied on February 24, 2009:

> He didn't call nor did he send any email. I don't have a good feeling about it. I hope it isn't like son like father and now that he got what he wanted from me related to the [Golf] lessons [that they offered the minor], I am out of his mind.You need to have a real good talk with him before you preoceed with anything else.For example how is he going to handle it with family and other issues we discussed.I will call you in couple days but let me know for now what is happening.Like you don't have enough issues to worry about!!!Thanks anyway!

On March 22, 2009, the unindicted co-conspirator said, in an email discussion entitled "Understanding!", that the minor boy called him and the co-conspirator warned Nader:

> becareful calling yourself "dad" with him..its a <u>very</u> sensitive subject with him.He said you called him Son . mabye hold off on that close of name thing until later..I told him its a culture thing only and nothing more. that arabic males even hold hands when they walk and its "normal" over there. told him not to freak out and that George is not trying to be or take over your real dad. Its just a term of endearment. .but incase the emails get read, it could look "odd". best to call yourself Uncle or Friend.

On March 23, 2009, the unindicted co-conspirator asked Nader:

> but what do we want from [Minor Boy 2]?  Emails, phone calls and a genuine concern and appreciative attitude for the help?  A willingness to look forward?  what do you epect in return for your generous help? let me know your thoughts..so we can get him on schedule or drop it.

Nader responded with caution:

> I don't think you are reading my emails carefully.I don't want anything from him, Period. If he feels like calling and send emails, that is fine. Of course the courage and willingness to move forward. I am willing to help him with a new private boarding school that would prepare him for a decent college and provide him with a healthy climate and good environment.I don't expect anything nor I need anything from him except to hopefully explore his horizons, grow up in a better envirnment and stay of course out of trouble. I will assist him and sponcer his education, both at a private school next year and in a college his choice, unconditionally with all its expenses.Don't push him with a yes or no answer right away. He has got this long Spring break to think about it and I can talk to him later, if he doesn't call now. I will either call him from Iraq at a convenient time or when I come back home in about 3 weeks time.

On March 26, 2009 the unindicted co-conspirator said:

> drove by and saw [Minor Boy 2] today. geez..what can i say about him..ive never met such a nice kid. he asked about you and when you would be available via phone again. he was home alone during teh day :( i just watn to take him away!

An example makes clear that Nader was aware of the illicit nature of his activities.  On March 27, 2009, Nader told the unindicted co-conspirator: "Please, please delete all correspondences after you read them including photos. DO NOT send photos I sent you to anybody else, please and delete them! Please confirm!TX"   In response, the unindicted co-conspirator said, later that day, "its automatic these days..deleted, trashed, then wiped clean..all of my emails, stock transactions, everything!!! and in case of bad news..the computer is going with my mom."  Nader responded "Thanks but no reaction to the photos????did you like them???"  The government has evidence that at least one of the two co-conspirators had sex with Minor Boy 2 and the matter remains under investigation.

On September 18, 2012, Nader sent an email to the same unindicted co-conspirator saying:

> A friend of mine from R[ussia] just got back [from Tunisia]. He stayed there for a week. he said t [sic] was Heaven. Girls and girls all over eager and anxious to come along. He described situation as similar to where we met at old days. One street , long street, filled with girls, 23/24[6] and up ready to be picked up. He said not only they were eager but also very very reasonable. $5 to 10 and maximum when extremely spoiled and special $20. I am going there next. The guy doesn't even speak a word of English or Arabic and was able to pick so many a day. He said they were so" natural, slim, eager and willing and do everything"! His friends stayed for 2 weeks . They were all 9 people. He can't wait to go back there. I got the whole address and place and all! He rented an Apt. The guy is from Moscow. He has seeing it all. And by his own standard, This is the best of all the places he has been to. He likes our style and taste.

---

[6] The government has evidence that Defendant regularly added 10 years to the ages of the persons being discussed with this co-conspirator and regularly referred to boys as "girls." The government believes, therefore, he is talking about 13/14 year old boys, which is consistent with Defendant's more than 30 year history.

The idea that this conduct and/or desire is somehow in Defendant's past is belied by very recent searches on the Safari App that the 60-year old Defendant engaged in on the iPhone X seized last month at JFK.  On October 3, 2018, Nader made the following searches[7] on Safari between 9:13:57AM and 9:16:29AM:

> sex with boys Russia
>
> sex with boys Russia
>
> sex with boys Russia
>
> prostitution in Russia
>
> boys ponography [sic] russia

This is immediately after Nader accessed, again using Safari on his iPhone X, on October 3, 2018 two items:

> incredible movie of 17 year okd [sic] boy who became hustler and porno star
>
> movie of 17 year old porno star in Hollywood

This evidence clearly indicates an ongoing danger to minor boys throughout the world from Defendant.

Another factor the Court must consider is that Defendant continues to have long been interested in disturbing images, most of which involve young boys, that are allegedly obscene and/or child pornography.   The January 2018 seizure of phones involving children was not an aberration as the previous convictions and investigations establish.  The government has additional information about the interest in and consumption of child pornography by Defendant, beyond the instant charges.   For

---

[7] They were deleted on the iPhone X, but were recovered using standard forensic tools.

example, an unindicted co-conspirator on September 25, 2012 sent the Defendant a

number of URLs, which were associated with titles are indicative of child pornography

and appear to have been recommended in a chatroom, including:

>Irland16.rar
>NoCum16.rar
>Highschool17.rar
>SweetnessUKtaste.rar
>17 nocum.rar
>Henry2010 CloseUpBoyCum.rar
>Boy4camxd NoFace Tyskland.rar
>Hawt17NoCum.rar
>Ger17.rar
>Okej16 NoCum.rar
>15 Raktpao American.rar
>16 CutFlorida.rar
>15 SpainTaste.rar
>detroit16.rar
>ukHairy15.rar

Even more recently, when Nader arrived at John F. Kennedy International Airport

("JFK") last month, he carried with him additional videos concealed within the

WhatsApp application on his phones.  Defendant had left Dubai, United Arab Emirates,

where the government believes he had been living since an arrest warrant was issued for

him on April 19, 2018,[8] on a direct flight and landed at JFK, within the Eastern District of

New York.  In Nader's possession at JFK were a set of phones (which were completely

new from the set that were seized by the FBI pursuant to a warrant in January 2018).

After the government obtained a warrant in this District to review the phones that

were seized incident to Defendant's arrest on June 3, 2019, the FBI reviewed the phones.

Two videos of note were found by the forensic examination of the FBI to have be sent by

Defendant.  On July 12, 2018, Defendant sent a 1 minute 27 second allegedly obscene

---

[8] See discussion of timing of initial charge, *infra*.

video of what appears to be an adult man having anal sex with a dog to an unindicted person A.O.  This video appears to the FBI to meet the legal definition of obscenity.

On September 26, 2018, Defendant sent a 1 minute 22 second video that contains ten vignettes each of a surprise sexual nature to unindicted person M.Z.  Vignette #8 on that video appears to show the legs of a female in a short green dress. The hem of the dress is pulled up and the video shows a prepubescent male penis that had been concealed.  Vignette #9 on that video appears to show the legs of a female in high heels and a flowered dress lying on a bed.  As the camera moves closer a hand reaches into the frame, pulling up the hem of the dress to again reveal a prepubescent male penis.  The video continues up the child's torso to reveal his laughing face.  This second video and the videos mentioned below appear to the FBI to meet the legal definition of child pornography.[9]

Also on the phone seized at JFK on June 3, 2019 from Defendant Nader were alleged child pornography videos received since Nader was criminally charged by complaint in this District on April 19, 2018.  For instance, there is a video that begins with an adult female speaking a language other than English. After ten seconds, the images switches to a close up of the genital region of a male child who appears twelve to twenty-four months old.  As the child drinks from a bottle, he flicks and manipulates his penis.  This video was received on Nader's phone from unindicted person K.K. on June 28, 2018, and marked as read.

_____

[9] As the Court is aware, "sexually explicit conduct" is defined under 18 USC 2256(2)(A) as: "means actual or simulated— (i)  sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii)  bestiality; (iii)  masturbation; (iv)  sadistic or masochistic abuse; or (v)  lascivious exhibition of the anus, genitals, or pubic area of any person."

Another video on the phone seized begins with an eight to ten year old male child in shorts and a t-shirt holding a live chicken by the legs.  The child looks at the camera before pulling down his shorts to reveal an erect penis.  The male child then holds up the chicken and penetrates it with his penis.  The child looks at the camera and laughs.  The video is fourteen seconds in length.  It was sent to Defendant by unindicted person Y.N. on November 9, 2018 and marked as read.

A final video begins with an adult female sitting on a sofa with a five to six year-old male child and a two to three year-old male child.  As the video progresses, the older of the two male children and the adult woman appear on a bed and later in various stages of undress.  The adult woman performs fellatio on the five to six year-old male child and masturbates him.  Later in the video the five to six year-old male child appears to have sexual intercourse with the adult female in multiple positions.  The video ends with the five to six year-old child and the adult female naked in the shower.  The adult female again performs fellatio on him.  The video is one minute and seventeen seconds in length. It was sent to Defendant (and marked as read) on January 31, 2019 by unindicted person E.H.M.

The government is aware, and defense counsel has been informed, that the U.S. Attorney's Office in the Eastern District of New York is considering bringing its own charges based on materials found on the phone seized at JFK Airport on June 3, 2019. These charges would likely expose Defendant to yet another fifteen-year (potentially consecutive) mandatory minimum prison sentence for a subsequent conviction growing out of new conduct.

Beyond the further danger to the community that this continued interest in videos of minor boys and the even further increased danger of flight, there are two additional obvious consequences of this new evidence: first, it provides even greater support to the government's allegations about Defendant's interest in and knowledge of the illicit materials at issue in the instant Indictment, and, second, it shows continued interactions by Defendant with many of the same people who sent or received illicit videos.

Defendant misleadingly asserts that he was free to travel to and from the United States on several occasions, omitting the fact that he *never* freely traveled to and from the United States while criminal charges against him were pending.  *Cf.* Def.'s Mem. 3, 10. Nader had already left the country in March 2018, several weeks before criminal charges were filed against him in April 2018, and he did not return to the United States until June 3, 2019.  Upon landing at JFK Airport on June 3, 2019, he was promptly arrested.  That Defendant was free to come and go *prior* to the filing of criminal charges against him is of no moment; it is unclear under what legal basis the government could have restricted his movements absent the arrest warrant that was issued in connection with the April 2018 complaint.

Defendant's final assertion – that he should be released due to some alleged health concerns – should similarly be rejected.  Putting aside that there is no health exemption within the bail statute warranting the release of an extremely dangerous defendant who poses a massive flight risk and has apparently unlimited resources, it is unclear whether Defendant has actually been denied the medical treatment he seeks. There is simply no evidence in the record that he has, and, given the nature and tone of Defendant's filing, a failure to include any such evidence strongly suggests that there is

none.  Further, addressing his medical needs would not require his release, since the jail is equipped to transport him to off-site medical appointments or to transfer him to the custody of the Bureau of Prisons for more specialized care if necessary.

Because the violent crimes against children for which Nader has been charged carry a statutory presumption against release, 18 U.S.C. § 3142(e)(3)(E), and he cannot rebut the presumption, his motion should be denied, and he should remain detained.

## THE INSTANT INDICTMENT

Defendant, a citizen of Lebanon and the United States who has primarily resided overseas during the past decade, is charged in the Indictment with one count of transporting child pornography; one count of transporting obscenity; and one count of transporting a minor into the United States for sex.  *See* Indictment, dkt. 49.  Underlying these three charges is a sordid thirty-to-forty-year period during which Defendant abused his power and wealth to obtain boys for sex and had repeated run-ins with the law both within and outside the United States in connection with his sexual interest in children. *See generally* Detention Hr'g Tr. 5:24–11:9, dkt. 36 (government's factual proffer regarding Defendant's long history of child sexual abuse, extensive ties to foreign countries, and financial assets).

## I.      Defendant's Sexual Abuse of Minors

In the 1990s and 2000s, Defendant traveled frequently to Europe, where he engaged the services of a pimp who introduced him to numerous vulnerable minor boys whom Defendant paid for sex.  One of these boys was a minor referenced in Count Three of the Indictment as Minor Boy 1.  Defendant routinely had sex with minors, paying the minors with cash or gifts of clothing, mobile phones, or other items that the children

would have otherwise been unable to afford.  Some of Defendant's sexual contact with

minors eventually led to Defendant's conviction in Prague in 2003, as described above.

But beyond the allegations in the Czech courts, Defendant arranged for Minor

Boy 1 to obtain a visa to travel to the United States and Nader also paid for Minor Boy

1's travel to the United States.  Upon Minor Boy 1's arrival at Washington-Dulles

International Airport, Nader drove Minor Boy 1 to his home in Washington, D.C., where

Nader sexually exploited him night after night.

Nader took advantage of the power imbalance.  After Minor Boy 1's arrival in the

United States, Nader took control of Minor Boy 1's passport.  When Minor Boy 1

complained that he wanted to leave, Nader did not let him.  When Minor Boy 1 asked to

call his mother, Nader did not let him.  Without his passport or the money to pay for

international travel back to his home country, Minor Boy 1 was at Nader's mercy.  Later,

Nader instructed Minor Boy 1 not to tell anyone what had happened, and Nader

threatened that he could have Minor Boy 1's mother put in jail.  Tragically, the story of

Minor Boy 1 is consistent with the accounts of other minor boys of which the

government is aware Defendant and/or unindicted co-conspirators sexually exploited or

attempted to groom (or help groom).

## II.      Defendant's Consumption of Child Pornography and Obscene Materials

Defendant whetted his sexual appetite for children not only through hands-on

conduct, but also through the consumption of child pornography and obscene materials.

In 1990, Defendant arrived in this District carrying candy tins containing two reels of

film containing child pornography.  He was subsequently indicted and later pleaded

guilty in 1991 to the transportation of child pornography.

Twenty years later, Defendant has engaged in similar conduct – only this time, he concealed the contraband within his cell phones, not candy tins.[10]  The timeline of events related to Counts One and Two of the Indictment is as follows: When Defendant traveled to the United States on January 17, 2018 in connection with an unrelated investigation, devices in his possession were seized and forensically analyzed by those investigators.  In February 2018, while those investigators searched for material relevant to their case, they discovered content they suspected was related to the exploitation of children.  Those investigators made a case referral to the FBI's child exploitation squad within the Washington Field Office.  In March 16, 2018, investigators within the child exploitation squad obtained a search warrant to search one of the devices seized in January 2018 for evidence related to child exploitation.  Travel records show that, on March 22, 2018, Nader traveled to the United States and left the country only two days later, on March 24, 2018.  On April 19, 2018, the government filed its criminal complaint in the instant case, charging Nader with the transportation of child pornography and obtained a warrant for Nader's arrest in the process.  *See* dkt. 1–2, 7.

Travel records indicate that after Defendant left the country on March 24, 2018, he did not travel into the United States again until June 3, 2019, the date he was arrested pursuant to the arrest warrant issued in connection with the April 2018 criminal complaint.

---

[10] This is in addition to the two incidents in the District of Columbia where the child pornography charges against the Defendant were dismissed or not brought despite investigations that led directly to Defendant Nader.  *See* Detention Hr'g Tr. 5:24–11:9, dkt. 36.

The child pornography and obscenity videos supporting Counts One and Two of the Indictment were found within the WhatsApp messaging application on Defendant's phone. As discussed during the preliminary hearing held before Magistrate Judge Theresa C. Buchanan on June 10, 2019, Nader not only *received* alleged child pornography videos, but also *sent* alleged child pornography videos to others. Preliminary Hr'g Tr. 8:22–9:3, dkt. 39 ("Q: Are you aware of whether forensics retrieved any information indicating whether the videos described in the complaint affidavit were sent or received? A: Yes. Q: And what was that information? A: Two of the videos were sent and ten were received."). Moreover, while the agent who testified at the preliminary hearing was unable to provide the full context surrounding Defendant's reaction to those videos (much of this information was outside the scope of the agent's knowledge, since the testifying agent was filling in for the case agent, who was unavailable), the government subsequently provided the defense opportunities to review the forensic materials, which showed that Defendant had accessed alleged contraband, acknowledged it to varying degrees, and had not deleted it prior to transporting the iPhone containing that content to the United States in January 2018. *See supra* 2, 2 n.5 (discussing Defendant's responses to videos containing child pornography and obscenity and defense team's review of the forensic materials on two occasions).

On June 3, 2019, different devices within Nader's possession were seized from Nader upon his most recent entry into the United States at JFK Airport and subsequently forensically examined pursuant to a search warrant. Within two new iPhones were videos depicting the illicit sexual conduct of minors, including a video showing a minor boy having sex with an adult woman and a video showing a child having sex with a

chicken.  Again, the government's understanding is that the U.S. Attorney's Office for the Eastern District of New York is contemplating charges related to these materials.

Defendant's wealth, extensive connections to foreign governments, and his history of residing overseas have been largely uncontested in the previous hearings before the magistrate judges in this case.  *See* Detention Hr'g Tr. 10:5–11:4.  Defendant has been issued travel and identity documents by foreign countries; has a villa in the United Arab Emirates and a chalet in Lebanon; and is active in the purchase and trade of cryptocurrency.  *Id.*  In a previous hearing, the defense conceded that Defendant has a net worth of at least $3 million.  *Id.*  In addition, Defendant has extensive contacts with high-ranking members of foreign governments.  *Id.*

His risk of flight and danger to society have led two judges to order him detained in prior hearings.  *See* 1:19-mj-513-CLP (E.D.N.Y.), dkt. 2 (magistrate judge, in ordering temporary detention, commented that Nader "has every incentive in the world to flee"); Detention Hr'g Tr. 42:1–3, 42:11–43:3, 1:19-CR-201 (E.D. Va.), dkt. 36 (finding Defendant unable to rebut presumption against release due to Defendant's long history of sexual crimes against children, including hands-on offenses).

### ARGUMENT

Under 18 U.S.C. § 3145(b), a court with "original jurisdiction over the offense" may review a defendant's motion for revocation of a magistrate judge's detention order.  This review is conducted *de novo*.  *United States v. Clark*, 865 F.2d 1433, 1436 (4th Cir. 1989).

As the government previously argued before Magistrate Judge Davis on June 10, 2019, Defendant should be detained because there are no conditions or combination of conditions that will reasonably assure his appearance and the safety of any other person

and the community.  This is especially true in this case, where there is a statutory

presumption that Defendant poses both a risk of flight and a danger to the community;

the weight of the evidence is overwhelming; and the charges in the Indictment carry a

fifteen-year mandatory minimum term of imprisonment.  The government need only

prove flight risk by a preponderance of the evidence.  *United States v. Gebro*, 948 F.2d

1118, 1121 (9th Cir. 1991); *United States v. Medina*, 775 F.2d 1398, 1402 (11th Cir.

1985).  With respect to the risk of danger to the community, the burden of proof is clear

and convincing evidence.  *See* 18 U.S.C. § 3142(f)(2)(B).

## I. Defendant Cannot Rebut Presumption That He Poses A Danger to the Community

Defendant's repeated sexual abuse of minors supports a finding that he poses a

danger to the community.  While Defendant appears to claim that his advanced age and

health condition render him harmless, he did not rely on physical force to exploit children

in the past.  Instead, he used his influence and wealth to purchase introductions to

vulnerable boys through intermediaries.  Then, over time, he groomed and paid these

boys for sex, transporting at least one minor to the United States for sex.  If Defendant

were released, he could very well procure children to exploit in the same way.

Moreover, Defendant's prurient interest in children is underscored by his

recurring consumption of child pornography.  In this case, Defendant both sent and

received child pornography via the WhatsApp messaging application on his phone and,

as previously discussed, responded favorably to a number of his friends' transmission of

videos containing alleged child pornography.  That Defendant would express approval of

a video depicting a child having sex with a goat, or find humorous the depiction of a goat

sucking on a child's genitals, underscores the fact that his prurient and sexual interest in children has not abated.

The selection of child pornography found on the phone taken from Nader's possession in January 2018 is part of a larger pattern of collecting such content.  After Defendant departed the United States in March 2018, he continued to acquire child pornography on new devices.  Indeed, two phones seized from his possession at JFK Airport contained child pornography videos that had been sent to him after he had left the United States.  For example, the video depicting a minor boy having sex with an adult woman was date-stamped January 31, 2019.  Under these circumstances, the Court should find that Defendant has not rebutted the presumption against release based on the danger he poses to the community.

## II.   Defendant Has Not Rebutted Presumption That He Poses Risk of Flight

Defendant's international network of high-ranking foreign officials, his wealth, and the lengthy prison sentences he faces here and in other jurisdictions support a finding that he poses a serious risk of flight.  Courts have found flight risk an adequate basis for detention under similar circumstances even where defendants did not face a statutory presumption against release.  *See United States v. Stanford*, 394 F. App'x 72, 75 (5th Cir. 2010) (holding that the factors "compellingly call for . . . pretrial detention," where defendant had "the means, the motive, and the money to flee," including "an international network of contacts," a "primary residence in Antigua and Barbuda for the past fifteen years, and . . . little family ties in Houston"); *United States v. Mehmood*, 358 Fed. App'x. 767 (8th Cir. 2010) (pretrial detention appropriate due to flight risk in visa fraud case where, among other things, defendant had property and financial interests in Canada).

Nor should the Court be persuaded by any of the proposed bail conditions previously rejected by the Magistrate Judge. *See* Detention Hr'g Tr. 27–28 (discussing Defendant's proposal to post $1 million bond and hire private security firm to guard him). As the Magistrate Judge correctly noted, such a security firm would ultimately be hired and paid by Defendant. Id. at Tr. 27:15–24. Unlike an entity like the jail or the U.S. Marshals, who operate outside the influence of a paycheck from either party in a criminal matter, the firm's loyalties would necessarily be compromised. Further, Defendant's wealth and resources should not buy him different treatment than other defendants answering to similar charges. See Tr. 41:1–6 (magistrate judge's agreement with government that Defendant's access to massive resources should not grant him special treatment under the law). Under the facts proffered by the government and uncontested by Defendant, the Court should find that Defendant cannot rebut the presumption against release based on his flight risk.

## III.   Assertions of Health Concerns are Insufficient to Overcome Presumption Against Defendant's Release

Defendant's health concerns are insufficient to overcome the presumption against release. While he asserts that he is not receiving the ideal care that his vast wealth and connections can provide, Nader has made no allegation that he requested and was subsequently denied access to the medical care he describes. The crux of Defendant's claim is that he requires "further evaluation to determine an appropriate course of physical therapy, and then needs to be able to receive that physical therapy promptly and consistently." Def.'s Mem. 12. Defendant has, however, made no showing that he has requested that the Alexandria Detention Center ("ADC") provide follow-up evaluations

for physical therapy, or that ADC is unwilling or unable to facilitate such an evaluation, or implement an appropriate physical therapy plan.

Defendant's argument should be rejected because ADC staff and health professionals within the Bureau of Prisons are available to accommodate Defendant's medical needs.  Based on the government's inquiries of the U.S. Marshals and ADC officials, the government is aware that ADC medical staff are available at the jail twenty-four hours a day, seven days a week, and that ADC employs medical professionals capable of treating a wide range of medical needs.  Further, the government has received assurances from the U.S. Marshals and ADC medical staff that they are sensitive to Defendant's health concerns and have, accordingly, made efforts to accommodate the visits of Nader's privately hired physicians.  In addition, it is the government's understanding that ADC is willing and able to securely transport Nader to outside medical facilities for continued evaluation or treatment, or should the need arise, transfer Defendant to the custody of the Bureau of Prisons for specialized treatment.

While Defendant describes the information regarding his medical treatment as a new development warranting reconsideration of the magistrate judge's previous detention order, little has changed.  During the original detention hearing, the judge commented that the defense had failed to provide an adequate showing that it had attempted to, and had been denied, appropriate medical care:

> THE COURT: And you haven't given me any real explanation on what steps were taken to acquire [a medical appointment with a doctor of Defendant's choice]. . . . I didn't receive a motion for your client to be transported to a hospital or to be transported to some other cardio facility that could evaluate him, which would then give the government an opportunity to provide its response to said motion.

Detention Hr'g Tr. 24:17–25.  There, the judge agreed with the government that, upon a

proper showing, the appropriate relief would have been Defendant's transportation to a

medical facility for an appointment – not release.  *Id.* Tr. 25:17–20 ("THE COURT:

Maybe you should have worded [the emergency motion for conditional release] 'an

emergency motion to transport him.'  Because when you use the word 'release' . . . when

we're going to be discussing detention, it suggest[s] something.")

**CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court

deny Defendant's motion and order that Defendant remain detained pending trial.

Respectfully submitted,

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY

____/s_____
Jay V. Prabhu
Laura Fong
Assistant United States Attorneys
U.S. Attorney's Office
Eastern District of Virginia

July 22, 2019

**<u>Certificate of Service</u>**

I hereby certify that on July 22, 2019, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will send a notification of filing (NEF)

to counsel of record for the defense.


By:        _____/s_____
           Jay V. Prabhu
           Assistant United States Attorney
           United States Attorney's Office
           Eastern District of Virginia
           2100 Jamieson Avenue
           Alexandria, Virginia 22314
           (703) 299-3700
           (703) 299-3981 (fax)
           jay.prabhu@usdoj.gov