IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>vs.<br><br>GEORGE AREF NADER,<br><br>Defendant. | Criminal Action No.: 1:19-cr-00201-LMB |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MEDIA COALITION MOTION TO INTERVENE AND FOR ACCESS TO CERTAIN SEARCH WARRANT MATERIALS

Through this motion, Cable News Network, Inc. ("CNN"); The Associated Press ("AP"); The New York Times Company ("The Times"); and WP Co., LLC, d/b/a/ The Washington Post (the "Post") (collectively, the "Media Coalition") seek to vindicate the public's right of access to certain search warrant materials in this case that are presumptively public under the common law. The Media Coalition respectfully requests that this Court enter an order unsealing the search warrant, affidavit and related materials in case No. 1:18-sw-30 (the "Warrant Materials") and further requests that, if the Court determines that any portion of the Warrant Materials may remain sealed at this time, the Court enter an order setting a "sunlight date" three months from the date of its order when the remaining materials shall be automatically unsealed absent a showing by an opposing party that the materials should remain sealed.

### BACKGROUND

As the Court knows, Defendant George Nader was an important cooperating witness in then-Special Counsel Robert Mueller's investigation of Russian interference in the 2016 election and the potential involvement of people associated with the campaign of President Donald J.

Trump. *See, e.g.*, Redacted Mem. in Supp. of Mot. to Revoke the Detention Order at 1-2 (filed July 19, 2019) (Dkt. 60). Indeed, Nader's name appears more than 100 times in the Special Counsel's final report (the "Mueller Report"), which notes that he "provided information . . . in multiple interviews, all but one of which were conducted under a proffer agreement." Office of Special Counsel Robert S. Mueller, III, Report on the Investigation Into Russian Interference in the 2016 Presidential Election at 147-59 & n.989 (March 2019), available at https://www.justice.gov/storage/report.pdf.

Although it is unrelated, this case had its genesis in the Special Counsel's probe: Investigators reviewing contents of a phone seized from Nader pursuant to a warrant when he arrived in the United States for questioning in the Russia probe found images possibly constituting child pornography, leading the FBI to obtain a second search warrant for those files. *See* Aff. in Supp. of Application for a Search Warrant ¶¶ 3, 15-23, No. 1:18-sw-00154-JFA (filed Mar. 16, 2018), a true and correct copy of which is attached hereto as Exhibit A; *see also* Mem. of the United States in Opp. to Def.'s Mot. to Revoke Detention Order at 14 (filed July 22, 2019) (Dkt. 78). On the Government's motion, this Court on July 19 (Dkt. 72) unsealed the applications, warrants and affidavits for eleven search warrants relevant to this case, including the follow-up warrant. *See generally* Ex. A. The original search warrant from the Special Counsel's investigation, although referenced in the affidavit supporting the second warrant, *id.*, remains sealed. The Media Coalition now seeks to unseal that original warrant, along with the application and affidavit in support of it, to vindicate the public's common-law right of access to these judicial records.

## ARGUMENT

I.   **THE MEDIA COALITION HAS STANDING TO INTERVENE**

The Fourth Circuit has firmly established the right of representatives of the news media to intervene in judicial proceedings, including in criminal matters, to vindicate the public's right of access to judicial proceedings and records. *See, e.g., Company Doe v. Pub. Citizen*, 749 F.3d 246, 262 (4th Cir. 2014) (noting that Fourth Circuit "has previously permitted news organizations to intervene in actions in which they were not otherwise parties to challenge a district court's sealing order"); *United States v. Moussaoui*, 65 F. App'x 881, 884 (4th Cir. 2003) (permitting news organizations to intervene in criminal appeal for limited purpose of seeking to unseal portions of the appellate record and transcript of oral argument). The Media Coalition has standing to intervene because, having been denied access to records required to be available to the public, the members of the Media Coalition have suffered injury to their rights that a favorable ruling on this motion would redress. *E.g., Rosenfeld v. Montgomery Cty. Pub. Sch.*, 25 F. App'x 123, 131-32 (4th Cir. 2001) ("press has standing to intervene in actions in which it is not otherwise a party to seek review of a district court's order sealing documents and court records"); *In re Washington Post Co.*, 807 F.2d 383, 393 n.4 (4th Cir. 1986) (newspaper had standing to challenge sealing of records in criminal case "because it has suffered 'an injury . . . that is likely to be redressed by a favorable decision'") (citation omitted); *In re Voluntary Disclosures in Fifty-Five Closed Cases*, 2018 WL 3540281, at *2 (W.D. Va. July 23, 2018) ("[M]edia outlets 'unquestionably have standing to challenge access to court documents.'") (citation omitted). Therefore, because the news media's right to intervene to request unsealing of judicial records is unquestioned, the Media Coalition should be granted leave to intervene in this case.

## II. THE PUBLIC HAS A COMMON-LAW RIGHT OF ACCESS TO THE MATERIALS THE MEDIA COALITION SEEKS

The Constitution and the common law provide to the public qualified rights of access to criminal trials. *Richmond Newspapers v. Virginia*, 448 U.S. 555, 580 (1980). Those access rights extend to "documents submitted in the course of a trial," such as transcripts, motions and other substantive filings. *In re The Wall St. Journal*, 601 F. App'x 215, 218 (4th Cir. 2015) (quoting *In re Time Inc.*, 182 F.3d 270, 271 (4th Cir.1999)); *In re Charlotte Observer*, 882 F.2d 850, 852 (4th Cir. 1989); *see also Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-98 (1978) ("It is clear that the courts of this country recognize a general right to inspect and copy . . . judicial records and documents."). More specifically, the rights of access attach to "judicial records," which are "documents filed with the court" that "play a role in the adjudicative process, or adjudicate substantive rights." *In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013).

The common-law access right applies to all judicial records and may be overcome only "in unusual circumstances," *Company Doe*, 749 F.3d at 266 (citation omitted), in which "the public's right of access is outweighed by competing interests," *Charlotte Observer*, 743 F.2d at 235. The party seeking to keep the records sealed "bears the burden of showing some significant interest that outweighs the presumption" of openness. *Virginia Dep't of State Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004). More than a conclusory assertion of harm is necessary because "the inquiry must additionally focus on whether the asserted rights are actually compromised." *In re Application & Affidavit for a Search Warrant* ("*In re Search Warrant*"), 923 F.2d 324, 328 (4th Cir. 1991).

Under the common law, the Court must justify sealing a proceeding or judicial record by making specific findings on the record regarding the overriding interests to be served by secrecy

4

and the reasons for rejecting alternative methods to protect those interests, supported by specific findings. *Virginia State Police*, 386 F.3d at 576 (explaining that "[a]dherence to this procedure serves to ensure that the decision to seal materials will not be made lightly and that it will be subject to meaningful appellate review.") (citation omitted). The Court may deny access only "when sealing is 'essential to preserve higher values and is narrowly tailored to serve that interest.'" *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 65-66 (4th Cir. 1989) (citation omitted). In such a case, the alternative to be considered "ordinarily involves disclosing some of the documents or giving access to a redacted version." *Id.* at 66.

### A. The Nader Warrant Materials Should Be Unsealed

Search warrants and supporting materials such as affidavits are judicial records to which the public has a right of access under the common law. *In re Search Warrant*, 923 F.2d at 326-27; *Goetz*, 886 F.2d at 62.[1] The Fourth Circuit has emphasized that "the common law presumption is in favor of access" while recognizing that trial courts have discretion to determine in each case how best to strike the balance between the public's right of access and the other values that might be served by sealing. *In re Search Warrant*, 923 F.2d at 328-29. Importantly, "the presumption in favor of public access to court filings is especially strong where, as here, the filings involve matters of particular concern to the public," such as Russian attempts to interfere with our democracy and potential malfeasance of public officials. *United States ex rel. Permison v. Superlative Techs., Inc.*, 492 F. Supp. 2d 561, 564 (E.D. Va. 2007). The Media Coalition respectfully submits that no party will be able to make the necessary showing that there are "higher values" sufficient to justify the continued blanket sealing of the Warrant Materials.

---

[1] The Fourth Circuit has held that search warrant affidavits are not subject to the constitutional right of access. *Goetz*, 886 F.2d at 62.

Perhaps the most obvious interest the government might be expected to cite is the need to protect the integrity of an ongoing investigation. The Fourth Circuit has noted, however, that "not every release of information contained in an ongoing criminal investigation file will necessarily affect the integrity of the investigation." *Virginia State Police*, 386 F.3d at 579. Redaction of information that could compromise an ongoing investigation sufficiently protects this interest.

Moreover, compelling concerns regarding ongoing investigations are unlikely to be present in this instance, where the Special Counsel has concluded his investigation (in which Nader was granted a limited form of immunity). See Mueller Report at 1. Not only has the Special Counsel finished his work, but at least some of the ancillary investigations associated with the Special Counsel's probe have concluded. *See, e.g., United States v. Cohen* ("*Cohen II*"), 2019 U.S. Dist. LEXIS 118975, at *2-3 (S.D.N.Y. July 17, 2019) (noting government's acknowledgement that campaign finance investigation of "hush money" payments by President Trump's former attorney Michael Cohen had concluded and ordering further release of search warrant materials). Any ongoing investigation of Nader for child pornography or sex-related offenses is unlikely to be implicated by any information in the Warrant Materials, given that the government sought a separate warrant to seek evidence of child pornography precisely because it initially obtained the contents of Nader's phones via a warrant for an *unrelated* investigation: the Special Counsel's probe. See Dkt. 78 at 14.

Other interests that the government might assert are at stake include the need to guard the secrecy of grand jury proceedings and shield the identities of confidential informants. The Media Coalition does not object to redactions or withholdings that are narrowly tailored to serve

6

these interests, such as removing the names of and identifying information regarding confidential informants whose identifies, in fact, currently remain confidential.

One interest Nader might invoke is the need to protect against prejudicial publicity that could affect his Sixth Amendment right to a fair trial. The Fourth Circuit has held, however, that proper screening of potential jurors during *voir dire* is preferable to keeping court records sealed. *In re Search Warrant*, 923 F.2d at 329-30. The appellate court in that case affirmed the complete unsealing of a search warrant related to a young girl's disappearance over the objection of the defendant charged with abducting her, holding that "*voir dire* will protect [the defendant's] right to an impartial jury" and any inconvenience occasioned by more intensive questioning of potential jurors "is a small price to pay for a system of criminal justice which is at once open to the public and fair to the accused." *Id.* The same holds true here. The Court already has unsealed other search warrant materials more specifically related to the current charges against Nader, and juror screening can assuage any concern about any marginal increase in negative publicity engendered by the release of an unrelated warrant for an investigation in which Nader was a cooperating witness.

Privacy considerations may in some limited circumstances qualify as a compelling interest, but not in this instance. Of course, there can be no privacy interest in information that already is public, *Virginia State Police*, 386 F.3d at 579, such as the fact that Nader cooperated with the Special Counsel's investigation and the outlines of his participation in the events the Special Counsel investigated. Because eleven warrants and affidavits have been unsealed that include details regarding Nader's alleged involvement with child pornography – a subject of much more severe opprobrium than Nader's activities described in the Mueller Report – his privacy interest in the Special Counsel's warrant is minimal at best. Further, as the Southern

7

District of New York explained in unsealing portions of search warrants related to former Trump attorney Cohen, "the weighty public ramifications of the conduct described" override any personal privacy concerns, particularly where "the involvement of most of the relevant third-party actors is now public knowledge, undercutting the need for continued secrecy." *Cohen II*, 2019 U.S. Dist. LEXIS 118975, at *3-4 ("Shielding third parties from unwanted attention arising from an issue that is already public knowledge is not a sufficiently compelling reason to justify withholding judicial documents from public scrutiny.") (citation omitted). Again, any legitimate concerns could be addressed by targeted redactions rather than continuing to maintain the Warrant Materials completely under seal.

The public's common-law right to access the Warrant Materials, therefore, far outweighs any countervailing considerations, and the blanket sealing of them should not continue.

### III. THE COURT SHOULD NOT ALLOW INDEFINITE SEALING

Finally, if the Court should determine that some portion of the Warrant Materials may remain sealed be redacted to protect the privacy of one or more individuals or the integrity of one or more ongoing investigations, the public should be allowed access to those materials once the justification for sealing or redaction expires, either when the shielded individuals' identities become known and/or the currently ongoing investigations are complete. The criminal investigations involved in this matter will not continue indefinitely; as the Second Circuit observed, "the government's interest in its ongoing investigation does not ongo [sic] forever." *United States v. Moten*, 582 F.2d 654, 661 (2d Cir. 1978); *see also Phoenix Newspapers, Inc. v. U.S. Dist. Ct.*, 156 F.3d 940, 947 (9th Cir. 1998) ("transcripts of public trial proceedings must be released when the factors militating in favor of closure no longer exist").

To avoid piecemeal re-litigation of public access to these Warrant Materials, therefore, the Media Coalition respectfully requests that, if any portions of the Warrant Materials are to remain sealed, this Court retain jurisdiction to ensure that the records are made public promptly and automatically after the justification for their sealing expires. The Media Coalition requests that this Court set a "sunlight date" for any remaining sealed portions of the Warrant Materials three months from the date of its order in this action, at which time the records would be automatically unsealed by the Clerk absent a showing by the Government or another interested party that continued sealing is justified. Because openness, not secrecy, is the default condition for judicial records, such a sunlight provision would place the onus for continued sealing where it belongs: on the Government or other party who must persuade the Court that these public records must continue to be kept from public view.

Other courts – including the Southern District of New York and the District of Columbia in cases involving the Special Counsel's probe – have imposed similar requirements. *In re Access to Certain Sealed Warrant Materials*, 2019 U.S. Dist. LEXIS 85285, at *10-11 (D.D.C. May 21, 2019) (setting a sunlight date three months after date of order unsealing some search warrant materials related to Cohen); *United States v. Cohen* ("*Cohen I*"), 366 F. Supp. 3d 612, 634 (S.D.N.Y. 2019) (setting sunlight date less than three months after date of order unsealing other Cohen-related warrant materials); *see also, e.g., United States v. Loughner*, 769 F. Supp. 2d 1188, 1197 (D. Ariz. 2011) (stating that "redacted information will be unsealed as soon as it becomes appropriate"); *United States v. Strevell*, No. 05-CR-477(GLS), 2009 WL 577910, at *7 (N.D.N.Y. Mar. 4, 2009) (setting a one-year sunshine date upon which sealing would expire "absent a timely motion to renew from the government" or defendant); *In re Searches of Semtex Indus. Corp.*, 876 F. Supp. 426, 429 (E.D.N.Y. 1995) (ordering that warrant materials be

9

unsealed if no indictment issued in case within three months subject to government's opportunity to explain *in camera* why continued sealing was necessary).

## CONCLUSION

For all of the foregoing reasons, the Media Coalition respectfully requests that this Court grant its motion and enter an order unsealing the Warrant Materials, and further that, if the Court determines that any portion of the Warrant Materials may remain sealed, the Court enter an order setting a sunlight date three months from the date of its order.

Respectfully submitted,

Dated: August 9, 2019

BALLARD SPAHR LLP

By: _____

Jay Ward Brown (Va. Bar No. 34355)
brownjay@balladspahr.com
Matthew E. Kelley (Va. Bar No. 84045)
kelleym@ballardspahr.com
BALLARD SPAHR LLP
1909 K Street, NW
Washington, D.C. 20006-1157
T: (202) 508-1136
F: (202) 661-2299

*Counsel for Cable News Network, Inc.; The Associated Press; The New York Times Co.; and WP Co., LLC, d/b/a/ The Washington Post*

10