## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No.: 1:19-CR-201 |
| v. | |
| GEORGE AREF NADER, | |
| *Defendant.* | |

## GOVERNMENT'S RESPONSE TO MOTION
## FOR PUBLIC ACCESS TO CERTAIN SEALED COURT RECORDS

The United States of America respectfully opposes the motion by a coalition of media companies ("Media Coalition") to unseal certain search warrant materials. The Media Coalition seeks the unsealing of a search warrant, affidavit, and related materials associated with case no. 1:18-sw-30 (the "Warrant Materials"). In the alternative, movants ask that the Court set a "sunlight date" for the unsealing of such materials within three months of the date of its order resolving the motion. It is undisputed that the Warrant Materials are unrelated to the instant child exploitation case against defendant George Nader. *See* Media Coalition Br. 2. Instead, the Warrant Materials concern matters related to the Special Counsel's investigation. And although the Special Counsel has concluded his investigation, the requested materials concern potentially ongoing investigations and the privacy interests of uncharged third parties. No right of public access applies to such materials.

A First Amendment right of access can be found only where a long and unbroken history of public access exists and where access would play a significant positive role in the governmental process. Neither requirement is satisfied here. Search warrant materials regularly remain sealed,

1

particularly while investigations and cases are ongoing.  Finding a right of access here would risk jeopardizing open investigations and ongoing prosecutions.  In any event, substantial law-enforcement and fairness interests would overcome any qualified First Amendment right of access.

The same is true of movants' reliance on the qualified common law right of access to public records.  That right is subject to a balancing of interests, and here, strong public interests support finding no right of public access at this time.  Warrant materials reveal investigative sources and methods, preliminary factual and legal theories, and evidence that has already been gathered—including from grand jury processes.  They show what has been searched and indicate what has not been searched.  And because of the interconnected nature of the Special Counsel's investigation, the Warrant Materials concern matters beyond those involving only Nader.  Making this information public could jeopardize other ongoing investigations and could unfairly harm uncharged individuals who are described in warrant applications or returns.

## STATEMENT

### I.      Factual Background

On March 20, 2017, then-FBI Director James B. Comey testified before the House Permanent Select Committee on Intelligence about the FBI's investigation into Russian interference with the 2016 presidential election.  In open session, Comey stated:

> I have been authorized by the Department of Justice to confirm that the FBI, as part of our counterintelligence mission, is investigating the Russian government's efforts to interfere in the 2016 presidential election, and that includes investigating the nature of any links between individuals associated with the Trump campaign and the Russian government and whether there was any coordination between the campaign and Russia's efforts.

Statement of FBI Director James B. Comey, H. Perm. Select Comm. on Intelligence, *Hearing on Russian Active Measures Investigation* (Mar. 20, 2017), *available at* https://www.fbi.gov/news/

testimony/hpsci-hearing-titled-russian-active-measures-investigation. Comey further stated that "[a]s with any counterintelligence investigation, this will also include an assessment of   whether any crimes were committed." *Id.* He could not "say more about what [the FBI is] doing and whose conduct [it is] examining" because "it is an open, ongoing investigation, and is classified." *Id.*

On May 17, 2017, then-Acting Attorney General Rod J. Rosenstein appointed Robert S. Mueller, III, as Special Counsel "to investigate Russian interference with the 2016 presidential election and related matters."  Order No. 3915-2017, *Appointment of Special Counsel to Investigate Russian Interference with the 2016 Presidential Election and Related Matters* (May 17, 2017) (capitalization omitted).  The Order authorized the Special Counsel "to conduct the investigation confirmed by then-FBI Director James B. Comey in testimony before the House Permanent Select Committee on Intelligence on March 20, 2017, including: (i) any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump; (ii) any matters that arose or may arise directly from the investigation; and (iii) any other matters within the scope of 28 C.F.R. § 600.4(a)." *Id.* ¶ (b).[1] The Order further authorized the Special Counsel "to prosecute federal crimes arising from the investigation of these matters." *Id.* ¶ (c).

In conducting the investigation, agents assisting the Special Counsel's Office have applied for, obtained, and executed search and seizure warrants under Rule 41 of the Federal Rules of Criminal Procedure, as well as warrants under the Stored Communications Act (SCA) requiring the disclosure and authorizing the search of electronic communications contents and records, *see* 18 U.S.C. §§ 2703(a), (b)(1)(A), (c)(1)(A).  The issuing courts and magistrate judges have granted

---

[1] 28 C.F.R. § 600.4(a) confers "the authority to investigate and prosecute federal crimes committed in the course of, and with intent to interfere with, the Special Counsel's investigation, such as perjury, obstruction of justice, destruction of evidence, and intimidation of witnesses."

sealing orders covering the applications and warrants in order to prevent premature disclosures that would jeopardize the ongoing investigation.

The Special Counsel's investigation has involved multiple lines of inquiry. Many have been handled in the Special Counsel's Office. But the Special Counsel has also referred a number of matters to other offices in the government for investigation.

On March 22, 2019, the Special Counsel notified the Attorney General that he had completed his investigation into Russian interference in the 2016 presidential election. The Special Counsel, however, referred a number of matters to other offices in the Department of Justice. Those matters remain ongoing.

## II.  Child Exploitation Case Against George Nader

One of the matters referred by the Special Counsel led to the child exploitation charges filed in this case, after suspected child pornography was discovered on phones belonging to George Nader during the Special Counsel's investigation. In March 16, 2018, investigators within the child exploitation squad of the FBI's Washington Field Office obtained a search warrant to search one of the devices seized in January 2018 for evidence related to child exploitation.

That search warrant and other search warrant materials related to the child exploitation case have been unsealed. Dkt. no. 72. Movants now seek the public disclosure of Warrant Materials unrelated to the child exploitation matter. Media Coalition Br. 2.

## ARGUMENT

Invoking both the First Amendment and the common law, movants seek the unsealing of the Warrant Materials, with limited redactions. In the alternative, they ask the Court to set a "sunlight date" for the unsealing of such materials. Both requests should be denied. Courts have, almost without exception, recognized that the First Amendment provides no right of access to

search warrant materials during open, ongoing investigations.  In any event, any such First Amendment right would be overcome by the compelling interests in protecting the criminal process and the rights of individuals.  The result has been the same under the broader, but weaker, qualified common law right of access to public records.  Disclosure at this juncture could harm potentially ongoing investigations, interfere in the resolution of Nader's case, and reveal the identities of individuals within the scope of both closed and ongoing investigations who have not been charged.

Movants seek to advance the public's interest in understanding more about the Special Counsel's investigation.  That is an important and valuable function of the press.  But that interest does not take precedence over the strong public interest in protecting potentially ongoing investigations against the prejudice from premature disclosure, ensuring the fairness and integrity of criminal proceedings, and protecting uncharged persons from unjustified reputational harm.  Although movants suggest that redactions may address those concerns, redactions are not a viable option.  The Warrant Materials are replete with sensitive information.  Any attempt to redact them would reveal little information to the public while risking the unintentional disclosure of sensitive information.  Nor is setting a "sunlight date" within several months of the date of the Court's order resolving this motion a reasonable alternative.  The Warrant Materials implicate events and individuals who may still be under investigation, and it is difficult to predict when those potential investigations will be resolved.  At any rate, public disclosure of these materials at a later time could still cause reputational harm for uncharged persons.

## I.      The First Amendment Does Not Entitle Movants To The Requested Search Warrant Materials

The First Amendment protects a qualified "right of access to criminal proceedings," *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8 (1986) (*Press-Enterprise II*), but that right does not apply to all phases of the criminal process.  Whether the public possesses a constitutional right of access turns on: "1) 'whether the place and process have historically been open to the press and general public,' and 2) 'whether public access plays a significant positive role in the functioning of the particular process in question.'" *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989) (quoting *Press-Enterprise II*, 478 U.S. at 8–10).  "In the first inquiry, the court asks whether the type of proceeding at issue has traditionally been conducted in an open fashion.  In the second inquiry, the court asks whether public access to the proceeding would tend to operate as a curb on prosecutorial or judicial misconduct and would further the public's interest in understanding the criminal justice system." *In re Wash. Post Co.*, 807 F.2d 383, 389 (4th Cir. 1986).

Both those inquiries support a finding that movants are not entitled to public disclosure of the Warrant Materials.  Historically, search warrant materials have been routinely sealed, and the proceedings during which search warrants are obtained are not open to the public.  *Matter of Leopold to Unseal Certain Elec. Surveillance Applications & Orders*, No. 13-mc-712-BAH, 2018 WL 1129660, at *18 (D.D.C. Feb. 26, 2018) (*Leopold*) (drawing analogy between SCA warrants and grand jury subpoenas, for which "[n]o historical tradition of public access" exists); *see also United States v. Pirk*, 282 F. Supp. 3d 585, 598–600 (W.D.N.Y. 2017) (collecting cases and discussing the issue).   Proceedings for the issuance of search warrants "are not, and have not been, public," and "are 'necessarily ex parte, since the subject of the search cannot be tipped off to the application for a warrant lest he destroy or remove evidence.'" *In re Search of Fair Finance*, 692 F.3d 424, 430 (6th Cir. 2012) (quoting *Franks v. Delaware*, 438 U.S. 154, 169 (1978)).  And "no

evidence" supports the conclusion that search warrant materials have "historically being made open to the press and public" after execution. *Id.*; *accord Goetz*, 886 F.2d at 64.

Although warrant applications and returns are filed with district court clerks, "the government . . . routinely obtain[s] sealing orders," and given "the confidentialities involved in criminal investigations," courts have "generally afforded deference" to those requests. *Fair Finance*, 692 F.3d at 431; *see also Leopold*, 2018 WL 1129660, at *15 (the government has "'always been able to restrict access' to SCA warrants . . . by requesting a sealing order") (quoting *United States v. Appelbaum*, 707 F.3d 283, 291 n.9 (4th Cir. 2013)). It may be the case today that some search warrant affidavits are made available in the clerk's office after execution. *Id.* at *16 (discussing contemporary practice as described by some courts). But "the fact that the government may in some instances allow documents filed after the execution of the search warrant to become public" does not "evidence . . . an *historical* tradition of accessibility." *Fair Finance*, 692 F.3d at 431 (emphasis added).

Nor would public access play a significant positive role in search warrant proceedings. *See Fair Finance*, 692 F.3d at 431. Even after warrants are executed, routine disclosure of the information contained in the documents would be harmful. Warrant applications ordinarily "detail the government's evidence of criminal activity," "identify information sources, such as wiretaps," "reveal the government's preliminary theory of the crime being investigated," and "could alert others" who may be suspects. *Id.* at 432. Disclosure of this information could threaten investigations, invade the privacy of "innocent people," and force the government "to be more selective in the information it disclose[s]" when seeking warrants. *Id.* And while public oversight of search warrant proceedings may encourage compliance with the law, such "monitoring of search warrant proceedings" already effectively occurs though suppression proceedings and damages

actions. *Id.* at 432–33; *see United States v. Grubbs*, 547 U.S. 90, 99 (2006) (protection of property owners' Fourth Amendment rights occurs through "a right to suppress evidence improperly obtained and a cause of action for damages").

Consistent with that analysis, courts have repeatedly held that there is no First Amendment right of access to documents filed in search warrant proceedings." *Goetz*, 886 F.2d at 62, 64–65; *see Pirk*, 282 F. Supp. 3d at 597–601 (collecting cases); *cf. Leopold*, 2018 WL 1129660, at *14–*19 (no First Amendment right for Stored Communications Act warrants).[2]

The consensus is even stronger with respect to search warrant materials related to ongoing matters.  The Court need go no farther to resolve this case.  Even those district courts that have found a qualified First Amendment right of access for "post-investigation warrant materials" have, to the government's knowledge, limited their holdings to warrant materials "after an investigation has concluded."  *In re N.Y. Times Co. for Access to Certain Sealed Court Records*, 585 F. Supp. 2d 83, 88, 90 n.10 (D.D.C. 2008); *Matter of the Application of WP Co. LLC*, No. 16-mc-351-BAH, 2016 WL 1604976, at *2 & n.2 (D.D.C. Apr. 1, 2016) (explaining that "courts have generally precluded access to warrant materials relating to an *ongoing* investigation" and emphasizing that the request involved a "now-closed" investigation); *see Leopold*, 2018 WL 1129660, at *1, *32 (noting different treatment for "ongoing investigations"); *Pirk*, 282 F. Supp. 3d at 600 (even

---

[2] *See also Times Mirror Co. v. United States*, 873 F.2d 1210, 1221 (9th Cir. 1989) ("The public has no qualified First Amendment right of access to warrant materials during the pre-indictment stage of an ongoing criminal investigation").  Only one court of appeals has recognized a qualified right of access in an open investigation, but it went on to deny access to the search warrant materials by the related route of finding that a compelling interest in the ongoing investigation justified non-disclosure.  *See In re Search Warrant for Secretarial Area Outside Office of Thomas Gunn*, 855 F.2d 569, 573–74 (8th Cir. 1988).  As other courts have noted, *Gunn*'s holding that there is even such a right under such circumstances is "unpersuasive." *Fair Finance*, 692 F.3d at 433 n.3.

assuming that a First Amendment right would otherwise exist, no right should be found where "the Government has consistently represented that the investigation is ongoing").

In this case, although the Special Counsel has concluded his work, the Special Counsel referred a number of matters that are ongoing and are being handled by other offices and entities. Disclosure of the Warrant Materials threatens the harms that courts have catalogued in holding that the First Amendment provides no right of access to search warrant materials in ongoing investigations.

Nor would it make sense to recognize a right of access automatically once any indictment has been returned. In complex investigations, such as the Special Counsel's, where a single warrant may have relevance to interconnected lines of investigation, that test would fail to take into account tangible investigative harms from disclosure. An indictment may not end an overall investigation, for example, when a defendant is potentially involved in activities with other subjects or targets, and the warrant in question seeks evidence bearing on that joint activity, but the defendant has been charged only with a subset of his conduct under investigation. The probability of a continuing investigation post-indictment grows when the search targets are linked to other persons of interest by ties to a single organization, common associates, or coordinated activities. Disclosure of warrant materials could reveal sources, methods, factual and legal theories, and lines of investigation extending beyond the charged conduct.

## II.      Even A Qualified First Amendment Right Would Not Justify Disclosure Here

Where a First Amendment right of access exists, it is qualified and may be limited "for cause shown that outweighs the value of openness." *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 509 (1984) (*Press-Enterprise I*). The government may overcome the presumptive public

access by "proof of a compelling governmental interest" and proof that the denial of access is "narrowly tailored to serve that interest." *Goetz*, 886 F.2d at 64.

Several compelling interests apply here.  First, the government's interest in safeguarding potential and actual ongoing investigations related to the Warrant Materials should overcome any right of access to the warrant materials being sought.  *See In re Search Warrant for Secretarial Area Outside Office of Thomas Gunn*, 855 F.2d 569, 574 (8th Cir. 1988); *see also Wash. Post v. Robinson*, 935 F.2d 282, 291 (D.C. Cir. 1991) (harm to ongoing investigation justifies sealing plea agreement).  Indeed, the Fourth Circuit has recognized that a "compelling governmental interest exists in protecting the integrity of an ongoing law enforcement investigation." *Virginia Dep't of State Police v. Wash. Post*, 386 F.3d 567, 579 (4th Cir. 2004).  Where granting access will "disclose facts that are otherwise unknown to the public," the potential harm to the investigation is apparent. *Id.*  The warrant materials sought by movants could reveal "the nature, scope and direction" of government investigations.  *See Gunn*, 855 F.2d at 574.  They describe investigative sources and methods, state what has been searched (and, by implication, not discovered), identify potential subjects of the investigation, and reveal factual and legal theories.  The dates and volume of warrants also reveal the evolution and direction of investigative interests.  Making this information public while an investigation is ongoing could pose a clear threat to the investigations' integrity.

Second, a compelling interest in the fairness of the ongoing proceedings against Nader would overcome any right of access.  The Supreme Court has recognized that courts must "protect their processes from prejudicial outside interferences." *Sheppard v. Maxwell*, 384 U.S. 333, 363 (1966); *see Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1070–75 (1991). The instant case against Nader has already generated public attention.  It is, therefore, particularly important to guard both facts and theories related to the charged conduct and facts and theories related to

conduct that is not at issue in the case but that could prejudice jurors. *See United States v. Brown*, 218 F.3d 415, 428 (5th Cir. 2000); *Application of Dow Jones & Co., Inc.*, 842 F.2d 603, 611–12 (2d Cir. 1988).

Third, a compelling interest in protecting uncharged individuals from unjustified reputational harm also weighs against any right of access to search warrant materials. *See Matter of Wash. Post*, 201 F. Supp. 3d 109, 123–27 (D.D.C. 2016); *cf.* Justice Manual § 1-7.400(B) (stating Department of Justice policy against commenting on an ongoing investigation "before charges are publicly filed"). As noted, the Warrant Materials sweep more broadly than events involving only Nader. It would be unfair to release warrant materials that invade personal privacy interests or that "accuse persons of crime while affording them no forum in which to vindicate themselves," *cf. United States v. Briggs*, 514 F.2d 794, 802 (5th Cir. 1975) (criticizing the practice of naming unindicted coconspirators).

Finally, redaction is not a feasible alternative here. Movants suggest that "targeted redactions" could resolve any sensitivities stemming from the public disclosure of the Warrant Materials. Media Coalition Br. 8. This is not so. Because the Warrant Materials are replete with sensitive investigatory information, information about Nader and the conduct at issue in other potential investigations, and information about uncharged third parties, little information of public interest would remain after redactions. *See Gunn*, 855 F.2d at 574; *Matter of Wash. Post*, 201 F. Supp. 3d at 128; *see also United States v. Index Newspapers LLC*, 766 F.3d 1072, 1095 (9th Cir. 2014).

Further, given the "degree of media scrutiny," too great a risk would exist that the public would be able to decipher redactions or that unredacted material would nonetheless invite damaging conjecture and speculation about Nader or other individuals who have not yet been

11

charged. *See Matter of Wash. Post*, 201 F. Supp. 3d at 128. The burdensome task of undertaking line-by-line redactions is not a feasible alternative when it would create a significant probability of failure to protect ongoing investigations and produce so little public gain.

Moreover, denying the public's access to the Warrant Materials is narrowly tailored to serve the compelling interests described here.  Detailed information related to the Special Counsel's investigation has already been released to the public in the form of a 448-page report. Office of Special Counsel Robert S. Mueller, III, Report on the Investigation Into Russian Interference in the 2016 Presidential Election (March 2019), available at https://www.justice.gov/storage/report.pdf.

### III.   The Common Law Right Of Access Does Not Support Public Disclosure Of Search Warrant Materials Relating To A Pending Investigation

In addition to the qualified First Amendment right of access, the press and public have a rebuttable common law right to "inspect and copy judicial records and documents." *Virginia Dep't of State Police v. Wash. Post*, 386 F.3d 567 (4th Cir. 2004) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)).  The presumption of common law right of access can be "rebutted if countervailing interests heavily outweigh the public interests in access."  *Id.* (internal citation and quotation marks omitted).  In determining whether to grant or restrict access, district courts are afforded tremendous deference to exercise their judgment "in light of the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 598–99.  As discussed below, in light of the facts and circumstances surrounding the Warrant Materials, the Court should find no common law right of access to the materials.

### A.      Any Common Law Right Of Access Is Outweighed By Potential Harms

As an initial matter, it is doubtful that any common law right of access attaches to warrant materials related to open investigations.   *See United States v. Business of Custer*, 658 F.3d 1188, 1192–93 (9th Cir. 2011) (no common law right attaches to "warrant materials in the midst of a pre-indictment investigation") (internal quotation marks omitted); *Times Mirror,* 873 F.2d at 1219 (the "public need" or "ends of justice" basis for disclosure "cannot be satisfied while a pre-indictment investigation is ongoing"); *cf. Matter of Wash. Post*, 201 F. Supp. 3d at 129 & n.10 (holding that "at least where an investigation has concluded, a common law right of public access generally attaches to such materials" but reserving "whether a common law right of access attaches to warrant materials in *ongoing* criminal investigations"); *but see United States v. Sealed Search Warrants*, 868 F.3d 385, 395–96 (5th Cir. 2017) (extending "case-by-case approach" to qualified common law right of access to requests for access to pre-indictment warrant materials).

But even assuming that a common law right attaches, the presumption is overcome by the serious countervailing interests discussed previously.   While the public has an interest in understanding the facts and issues related to the Special Counsel's investigation, the government has a strong interest in preserving the integrity of the criminal proceedings against Nader, which may be harmed if prejudicial facts unrelated to the substance of the instant case becomes part of the public record, and to protect the confidentiality of information related to potentially ongoing investigations.   *See, e.g.*, *Sealed Search Warrants*, 868 F.3d at 395 ("If the unsealing of pre-indictment warrant materials would threaten an ongoing investigation, the district court has discretion . . . to leave the materials under seal"); *Pirk*, 282 F. Supp. 3d at 602.   Furthermore, the government has an interest shielding third parties, whose identities may be revealed from such a disclosure, from unjustified association with criminal conduct.   *See Matter of Wash. Post*, 201 F.

Supp. at 122–27; *cf.* Justice Manual § 1- 7.400(B) (stating Department of Justice policy against commenting on an ongoing investigation "before charges are publicly filed").

**B.      Redactions and Setting a "Sunlight Date" Are Not A Viable Alternative**

Redactions would not address the government's concerns.  As discussed, redactions could not address the publicity and potential effects on the *Nader* case.  And the Warrant Materials reflect significant investigative details and concern uncharged individuals.   Segregation of that information would not be feasible.  *See Pirk*, 282 F. Supp. 3d at 602 (redaction not feasible to address common law presumption where confidential information "encompasses a large portion of the affidavit" and redaction "would render the affidavit of little use"); *Gunn*, 855 F.2d at 574 (similar); *see also Matter of Wash. Post*, 201 . Supp. 3d at 128 (finding redactions inadequate).

Nor would setting a "sunlight date" for the public disclosure of the Warrant Materials address the concerns discussed herein.  As previously noted, it is uncertain when the potential investigations related to the events and individuals discussed in the Warrant Materials will be resolved, and the need to protect uncharged persons from reputational harm and the integrity of potentially ongoing investigations weighs in favor of the Warrant Materials' continued sealing.

## CONCLUSION

For the foregoing reasons, the Media Coalition's motion should be denied.

Respectfully submitted,

G. Zachary Terwilliger
U.S. Attorney for the
Eastern District of Virginia

By:      _/s/_____
Laura Fong
Jay Prabhu
Assistant United States Attorneys
United States Attorney's Office for the
Eastern District of Virginia

Dated: August 30, 2019

## Certificate of Service

I hereby certify that on August 30, 2019, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will send a notification of filing (NEF) to

counsel of record for the defense.

By:      _____/s_____
         Laura Fong
         Assistant United States Attorney
         United States Attorney's Office
         Eastern District of Virginia
         2100 Jamieson Avenue
         Alexandria, Virginia 22314
         (703) 299-3700
         (703) 299-3981 (fax)
         laura.fong@usdoj.gov