# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **vs.** | |
| **GEORGE AREF NADER,** | **Criminal Action No.:  1:19-cr-00201-LMB** |
| **Defendant.** | |

## REPLY IN SUPPORT OF MEDIA COALITION MOTION TO INTERVENE AND FOR ACCESS TO CERTAIN SEARCH WARRANT MATERIALS

The Media Coalition, the Government and Defendant George Nader all agree that the Special Counsel's investigation is a matter of intense public interest, that the news media perform a vital function by informing the public about it, that Nader's Sixth Amendment right to a fair trial should be safeguarded, and that any ongoing law enforcement investigations must continue unimpeded.[1]  What remains for this Court to decide, then, is how to strike the proper balance among these compelling interests.

As demonstrated in the Media Coalition's opening brief, the qualified common-law right of access to judicial records applies to the Warrant Materials at issue here: the search warrant, affidavit and related materials in case No. 1:18-sw-30. Because the Warrant Materials involve the now-closed investigation by former Special Counsel Robert S. Mueller III into Russia's interference in the 2016 election, there is a strong public interest in gaining access to them.  The Government's and Nader's invocations of ongoing investigations, third-party privacy and Sixth Amendment concerns are insufficient to bar the release of this information.

---

[1] Neither Nader nor the Government has objected to the Media Coalition's intervention in this matter or asserted that the Media Coalition does not have standing to intervene.

Continued sealing of the Warrant Materials is improper under the common law, and this Court can and should make an independent determination regarding whether the Warrant Materials should be unsealed in their entirety, or whether narrowly tailored redactions are necessary to protect any legitimate concerns raised by the Government and Nader.

## I.     The Warrant Materials Should Be Unsealed Under the Public's Common-Law Right of Access to Judicial Records

Although neither concedes that it applies in this case, both Nader and the Government recognize that the public has a common-law right of access to judicial records. *See* George Nader's Opposition to Media Coalition's Motion to Intervene and for Access to Certain Search Warrant Materials (Dkt. 106) ("Nader Resp.") at 2; Government's Response to Motion for Public Access to Certain Sealed Court Records (Dkt. 107) ("Gov't Resp.") at 12.[2]  As the Media Coalition explained in its Memorandum of Points and Authorities in support of its Motion (Dkt. 91) ("Mem."), "judicial records" subject to the common-law right of access are "documents filed with the court" that "play a role in the adjudicative process, or adjudicate substantive rights." Mem. at 4 (quoting *In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013)).

The common-law right of access to judicial documents may be overcome only in "unusual circumstances" by a showing that "countervailing interests heavily outweigh the public interests in access" and sealing is narrowly tailored to serve those interests. *Company Doe v.*

---

[2] Oddly, the majority of the Government's Response is devoted to the argument that the First Amendment right of access does not apply to the Warrant Materials. *See* Gov't Resp. at 6-12. The Media Coalition did not raise the First Amendment access right because, as it noted, the Fourth Circuit has held that the constitutional access right does not apply to search warrant materials. *See* Mem. at 5 n.1 (citing *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 62 (4th Cir. 1989)).  Because the Government argues that the common-law access right is overcome here by the same countervailing interests it cites in its First Amendment analysis, Gov't Resp. at 13, the Media Coalition addresses those arguments in the context of the common-law right.

*Pub. Citizen*, 749 F.3d 246, 265-66 (4th Cir. 2014) (citation omitted).  The Court must make specific, on-the-record findings regarding the overriding interests that would be served by sealing and the reasons for rejecting alternative methods for protecting those interests.  Mem. at 4-5 (citing *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 576 (4th Cir. 2004)).

Here, Nader argues that unsealing the Warrant Materials would prejudice his Sixth Amendment right to a fair trial by tainting the jury pool with "unproven allegations of Mr. Nader's involvement with an alleged crime that has no bearing on the facts underlying the present action."  Nader Resp. at 3-4.  The Government also asserts a "compelling interest in the fairness of the ongoing proceedings against Nader [that] would overcome any right of access."  Gov't Resp. at 10.  But, as the Media Coalition pointed out, Mem. at 7, the Fourth Circuit has firmly held that proper screening of potential jurors during *voir dire* is preferable to keeping court records sealed.  *In re Application & Affidavit for a Search Warrant* ("*In re Search Warrant*"), 923 F.2d 324, 329-30 (4th Cir. 1991).  The Media Coalition respectfully submits that, given the significant experience in the Eastern District of Virginia in general and by this Court in particular with selecting juries in high-profile cases, *voir dire* in this case will be sufficiently robust to screen out any taint that conceivably could be caused by the release of the Warrant Materials.

The Government asserts that given the degree of media scrutiny already focused on this case, the release of the Warrant Materials, even in redacted form, would "invite damaging conjecture and speculation about Nader or other individuals who have not yet been charged."  Gov't Resp. at 11-12.  Similarly, Nader complains that "[w]ith unfettered access to the Warrant Materials, the Media Coalition would be entitled to comment on the information contained therein, and speculate on Defendant's culpability in the present case and in the Special Counsel

Investigation." Nader Mem. at 4. With respect, the First Amendment already entitles the Media

Coalition and everyone else to comment on and speculate about Nader, this case, the Special

Counsel's investigation, and any other matter of public interest. More to the point, it is settled

law in this Circuit that a robust *voir dire* process, not keeping judicial records locked away from

public view, is the correct antidote to any threat to a defendant's right to a fair trial. *In re Search*

*Warrant*, 923 F.2d at 329-30 ("inconvenience" of robust *voir dire* "is a small price to pay for a

system of criminal justice which is at once open to the public and fair to the accused").

The Government also contends that the "strong public interest in protecting *potentially*

ongoing investigations against the prejudice from premature disclosure" justifies keeping the

Warrant Materials sealed. Gov't Resp. at 5 (emphasis added). Notably, the Government

observes that the Special Counsel had spun off several investigations to other law enforcement

offices, but the Government carefully avoids asserting that these Warrant Materials contain any

information relevant to any of them – the Government only asserts that release of the materials

*might* harm an investigation that *might* be ongoing. *Id.* Because this Court must make specific,

on-the-record findings justifying any continued secrecy, more than a conclusory assertion of

harm is necessary; "the inquiry must additionally focus on whether the asserted rights are

actually compromised." *In re Search Warrant*, 923 F.2d at 328. Although the Government

certainly does not have to state precisely what or who is the subject of the relevant ongoing

investigation, it should at least be able to represent that there actually is one. In short, the

Government has failed to show the harm that sealing purportedly would prevent.

Further, assuming for the sake of argument that there is at least one actual investigation to

which the Warrant Materials relate, it is far from clear that unsealing them could harm that

probe. The Special Counsel's investigation was among the most well-known criminal probes in

history during its entire existence, making it unlikely that any potential subject or target of a related investigation would first learn of prosecutors' interest in them by release now of these Warrant Materials. The Government offers only its say-so that *none* of the information in the Warrant Materials may be released without threatening "potential" ongoing investigations. But, as the Fourth Circuit observed in a case cited by the Government, "not every release of information contained in an ongoing criminal investigation file will necessarily affect the integrity of the investigation." *Va. Dep't of State Police*, 386 F.3d at 579.

To be clear, the Media Coalition does not dispute that the investigations spun off from the Special Counsel's work, to the extent ongoing, likely are complex, and may involve avenues of investigation and potential subjects or targets that, for good reason, are not public. Nor does the Coalition disagree with the Government's wholly legitimate efforts to protect the integrity of these highly politically charged probes; in fact, the Coalition agrees that fair and impartial investigations must be ensured. However, it is precisely because the Special Counsel's investigation – and the other probes it spawned – has been criticized as overbroad and illegitimate by the President and his allies that transparency about the investigation is essential to serve the public's First Amendment interests as well as those of Nader, the Government, and the criminal justice system as a whole. *See Press-Enter. Co. v. Super. Ct.*, 478 U.S. 1, 7 (1986) ("*Press-Enterprise II*") ("[O]ne of the important means of assuring a fair trial is that the process be open to neutral observers."). As this Court recently noted, "Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like a fiat and requires rigorous justification." *In re Reporters Comm. for Freedom of the Press to Unseal Criminal Prosecution of Assange*, 357 F. Supp. 3d 528, 534 (E.D. Va. 2019) (Brinkema, J.) (citation omitted).

Moreover, similar search warrant materials have been released in other cases involving the Special Counsel's investigation, and it is notable that the Government does not here contend that there was any harm to any ongoing investigations as a result.  For example, courts in the District of Columbia and the Southern District of New York unsealed search warrant materials involving Michael Cohen, the President's former personal attorney, despite the Government's initial position that doing so would jeopardize ongoing investigations.  *See In re Access to Certain Sealed Warrant Materials*, 2019 WL 2184825, at *3-4 (D.D.C. May 21, 2019); *United States v. Cohen*, 366 F. Supp. 3d 612, 634 (S.D.N.Y. 2019).  There, the Southern District of New York in February 2019 allowed materials directly related to specific, continuing investigations to remain sealed but unsealed materials involving the crimes to which Cohen pleaded guilty and his other conduct that did not result in criminal charges.  *Cohen*, 366 F. Supp. 3d at 623-26.  A few months later, the Government did not oppose releasing Cohen-related warrants issued in the District of Columbia with similar redactions.  *In re Access*, 2019 WL 2184825, at *2-3.

The cases involving the Cohen warrants also undermine the credibility of the Government's position that "redaction is not a feasible alternative" to wholesale sealing.  Gov't Resp. at 11.  The Southern District of New York was able to craft redactions sufficient to protect the legitimate interests the Government raised in *Cohen*, 366 F. Supp. 3d at 623-26, which the Government adopted for the related warrants in the District of Columbia, *In re Access*, 2019 WL 2184825, at *2-3.  The Government has not provided any concrete reason to believe that the same is not true here.

Both the Government and Nader also claim that the Warrant Materials must remain entirely sealed to protect the privacy and reputational interests of innocent third parties who may

be identified in the materials.  Gov't Resp. at 11; Nader Resp. at 3-4.[3]  But neither explains why

these interests could not adequately be protected by narrowly targeted redactions of names and

other identifying information about such third parties.  And, privacy concerns do not apply to

those persons already indicted or convicted in cases spawned by the Special Counsel's probe.  As

the Southern District of New York observed in *Cohen*, "[s]hielding third parties from unwanted

attention arising from an issue that is already public knowledge is not a sufficiently compelling

reason to justify withholding judicial documents from public scrutiny."  366 F. Supp. 3d at 625

(quoting *United States v. Basciano*, 2010 WL 1688510, at *4 (E.D.N.Y. Apr. 23, 2010)).

Where "the public has already had access to the information contained in the records,"

the justification for sealing is particularly weak.  *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th

Cir. 1984).  Here, of course, the public has access to much of the information that is likely

contained in the Warrant Materials via the cases brought by the Special Counsel and through his

public report, which includes more than 100 references to Nader and his extensive interviews

with investigators.  Office of Special Counsel Robert S. Mueller, III, Report on the Investigation

Into Russian Interference in the 2016 Presidential Election at 147-59 & n.989 (March 2019),

available at https://www.justice.gov/storage/report.pdf.   At a minimum, the information about

Nader available in the Special Counsel's Report that also appears in the Warrant Materials must

be unsealed.

The Fourth Circuit also has recognized the need for the release of information that

"would enhance the public's understanding of an important historical event."  *In re Knight*, 743

---

[3] Nader also appears to misunderstand that the Media Coalition's request for access is only for the Warrant Materials, in that he appears to assert that the "contents of [his] devices" are at issue here.  Nader Resp. at 3.  For the avoidance of doubt, the Media Coalition reiterates it here is seeking access only to search warrant records in case No. 1:18-sw-30, not to any discovery the Government has provided to Nader.

F.2d at 235.  Here, it is beyond question that the Warrant Materials contain information about an important historical event – Russia's interference in the 2016 elections.  More narrowly, the Special Counsel's investigation also undoubtedly qualifies as an important historical event. Nader attempts to cabin this principle by claiming that the Court should only consider whether the search and seizure of his phone is an important historical event.  Nader Resp. at 3.  Even taken at face value, this contention is meritless; given that Nader is a key figure in the investigation who is named over and over again in the Special Counsel's report, the search and seizure itself is indeed an important historical event.

Finally, Nader argues that, despite the fact that "[t]he Special Counsel's investigation is an issue of national importance," the Warrant Materials should remain sealed "because of the potential for promoting a public scandal surrounding Mr. Nader's involvement with the Special Counsel."  *Id.* at 2.  While it is true that the Fourth Circuit has said that, in determining whether to unseal judicial records, courts should consider "whether the records are sought for improper purposes, such as promoting public scandals," *In re Knight*, 743 F.2d at 235, that is of no relevance here.  There, the Fourth Circuit referred to "public scandal" in the sense of "impertinent and scandalous material irrelevant to the issues" in the underlying criminal case, *id.* at 233, not "scandal" in the sense of politically damaging misconduct.

For these reasons, the objections by the Government and Nader are insufficient to justify continued wholesale sealing of the Warrant Materials.  This Court should conduct an independent review to determine what, if any, targeted redactions are necessary to protect important countervailing interests.

II.     **The Court Should Set a Sunlight Date For Release of Any Portions of the Warrant Materials that Remain Under Seal**

Because the Warrant Materials cannot remain sealed forever, the Media Coalition has requested that the Court retain jurisdiction to ensure that the records are made public promptly and automatically after the justification for their sealing expires.  To apply this principle and avoid piecemeal re-litigation of these issues, the Media Coalition requested that the Court order that any remaining sealed portions of the Warrant Materials be automatically unsealed by the Clerk absent a showing by the Government or another interested party that continued sealing is justified.  Both Nader and the Government oppose this provision to varying degrees.

Nader suggests that if the Court were to set a sunlight date, it should be after the final resolution of this case by the appellate process.  Nader Resp. at 4.  As discussed *supra*, however, Nader's Sixth Amendment interest in a fair trial can be better served by robust *voir dire*, not sealing.  The Government argues that the Warrant Materials must be sealed indefinitely and in total.  Gov't Resp. at 14.  But, again as discussed *supra*, none of its claimed justifications is sufficient to prevent these judicial records from seeing the light of day.

## <u>CONCLUSION</u>

For all of the foregoing reasons, and for all of the reasons discussed in its opening Memorandum of Points and Authorities, the Media Coalition respectfully requests that the Court grant its motion and enter an order unsealing the Warrant Materials, subject to those narrowly tailored redactions that the Court specifically finds are necessary to protect the compelling interests raised by the Government and Nader, and further that, if the Court determines that any portion of the Warrant Materials may remain sealed at present, the Court enter an order setting a sunlight date three months from the date of its order.

Respectfully submitted,

Dated: September 5, 2019                    BALLARD SPAHR LLP


                                            By:  _/s/ Matthew E. Kelley_____

                                            Jay Ward Brown (Va. Bar No. 34355)
                                            brownjay@balladspahr.com
                                            Matthew E. Kelley (Va. Bar No. 84045)
                                            kelleym@ballardspahr.com
                                            BALLARD SPAHR LLP
                                            1909 K Street, NW
                                            Washington, D.C. 20006-1157
                                            T: (202) 508-1136
                                            F: (202) 661-2299

                                            *Counsel for Cable News Network, Inc.; The
                                            Associated Press; The New York Times Co.;
                                            and WP Co., LLC, d/b/a/ The Washington Post*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 5th day of September, 2019, I caused a copy of the foregoing Reply in Support of Media Coalition Motion to Intervene and for Access to Certain Search Warrant Materials to be filed electronically with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to all interested parties.

 _/s/ Matthew E. Kelley_____
Matthew E. Kelley, Va. Bar No. 84045
Ballard Spahr LLP
1909 K Street NW, 12th Floor
Washington, DC 20006
T:  (202) 508-1112
F:  (202) 661-2299
kelleym@ballardspahr.com

_Counsel for Cable News Network, Inc.; The Associated Press; The New York Times Co.; and WP Co., LLC, d/b/a/ The Washington Post_