**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

_____

**Alexandria Division**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br><br>v.<br><br><br>GEORGE A. NADER<br><br>Defendant. | Case No. 1:19-cr-00201-LMB |

**REDACTED MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS COUNT THREE OF THE INDICTMENT**

George A. Nader respectfully moves to dismiss as time-barred Count Three of the Indictment, which alleges a violation of § 2423 of Title 18 of the United States Code in 2000. *See* ECF No. 49 at 3. At that time, the operative statute of limitations permitted prosecution until the child-victim turned 25 years old, ███████████████████████████████████████. *See* 18 U.S.C. § 3283 (1994). Although Congress subsequently amended that limitations period in 2003 and 2006, and eliminated the limitations period entirely in 2006, those amendments and enactments apply on a prospective basis only. *See* 18 U.S.C. § 3283 (2003) & (2006); 18 U.S.C. § 3299 (2006). Because they do not apply to conduct that is alleged to have occurred in 2000, Count Three is time-barred.

To be clear, Mr. Nader does not contend that this claim was time-barred at the time of the amendments or that the prosecution violates his rights under the *Ex Post Facto* Clause. This motion instead presents a pure question of statutory interpretation under the framework established

in *Landgraf v. USI Film Products*, 511 U.S. 244, 265, 270 (1994), as applied in the context of a criminal statute of limitations where interests of repose are paramount, *see Toussie v. United States*, 397 U.S. 112, 115 (1970). Applying that framework, the later-enacted statutes of limitations do not apply to the alleged conduct for two reasons. *First*, Congress intended that the amendments to § 3283 and the newly enacted § 3299 would apply only to post-enactment conduct. That is clear from the text, drafting history, and other indicia of congressional intent—and that, alone, is dispositive. To the extent any ambiguity persists, the rule of lenity and principles of repose counsel in favor of prospective application. *Second*, if the normal rules of statutory interpretation were insufficient to resolve the issue (and they are not), prospective application would still be required because applying the later-enacted criminal limitations periods to Mr. Nader would have an impermissible retroactive effect and the requisite clear statement from Congress is nowhere to be found. For either or both reasons, Count Three is time-barred and should be dismissed.

## I.      FACTUAL AND LEGAL BACKGROUND

### A.      Factual Background

Mr. Nader is a naturalized United States citizen. Although Mr. Nader has a residence in the United Arab Emirates, he also has a residence in Washington, D.C., and he has lived in the United States, intermittently, for the past 30 years. *See, e.g.*, Fairfax County Speeding Ticket, Case No. 059GT0614942200 (July 18, 2006); ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Aug. 20, 2018, Ex. 2, at US-00000575 (acknowledging that Mr. Nader returned to the United States in 2009); Report on the Investigation Into Russian Interference in the 2016 Presidential Election, Special Counsel Robert S. Mueller, III, Mar. 2019, vol. i at 147-159 (describing portions of Mr. Nader's proffers to, and cooperation with, the Special Counsel's Office in 2018 in Washington, D.C.). After the time of the alleged offense, Mr. Nader advised officials in the George W. Bush White

House on matters of Middle East policy and served as a contractor with the United States Department of Defense.

The Government now contends that Mr. Nader violated § 2423 in February 2000. The Government investigated the same allegations from 2002 to 2009, declined to bring charges, destroyed or returned all the evidence, and closed the investigation in 2010.[1]

More specifically, in 2002, the Government learned that █████████████████ ████████ believed Mr. Nader and the individual who is identified in Count Three as "MINOR BOY 1" lived together in the United States in 2000. ████████████████████████, May 2, 2002, Ex. 1, at US-00000862-5.[2] The Government then investigated the allegations against Mr. Nader, and did so armed with: (i) knowledge of information █████████████ regarding conduct that was alleged to have occurred in the United States; (ii) ███████████ ██████████████████████████; and (iii) after 2003, knowledge of Mr. Nader's sentence for "sexual exploitation of minors" in the Czech Republic. *See id.* at US-00000862-5; █████████ ██████████████, Aug. 20, 2018, Ex. 2, at US-00000574-5.

The investigation was closed in 2010 after the Government declined to prosecute Mr. Nader. Ex. 2, at US-00000575 ("The USAO declined prosecution when Nader returned to the Unites States in 2009."). According to Government records from 2018, the Government declined to prosecute in 2010—████████████████████████████████████████████ *"as a result of the*

---

[1] The Government reports cited in this motion state that the Government ceased investigation of Mr. Nader in either 2009 or 2010; however, as the Government acknowledges, Mr. Nader returned to the United States in 2009. █████████████████████ Aug. 20, 2018, Ex. 2, at US-00000575.

[2] Any discussions of the Government's evidence should not be construed as Mr. Nader's acceptance of the authenticity, veracity, or admissibility of any such evidence. Mr. Nader does not hereby admit or concede that any of the facts alleged in these documents or any other related document are true or correct.

*expiration of the statute of limitations*," even though Mr. Nader had returned to the United States in 2009.  *See* Ex. 3, at US-00000001 ("From May 2002 through July 2010, George Aref Nader was investigated for child sex tourism and possession of child pornography⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛. No charges were brought as a result of the expiration of the statute of limitations directly resulting from Nader's long term residency outside the United States."); Ex. 2, at US-00000575 ("The USAO declined prosecution when Nader returned to the Unites States in 2009.").[3]  When the United States Attorney's Office declined prosecution in 2010, it "returned or destroyed" all evidence.  *See* Ex. 2, at US-00000575 ("The case was closed in 2010.  All evidence was returned or destroyed.").[4]  The Government did not otherwise seek to charge Mr. Nader based on the allegations reflected in Count Three until a grand jury returned the Indictment in July 2019.

## B.     Legal Background

The statute of limitations for child abuse crimes has evolved over the past thirty years.  The general statute of limitations for non-capital federal crimes is five years.  18 U.S.C. § 3282.  The Victims of Child Abuse Act of 1990 was enacted to exempt child-abuse crimes from that generally applicable limitations period and to instead establish a different limitations period for such crimes. *See* Pub. L. No. 101-647, § 225, 104 Stat. 4789, 4805 (1990).  Later re-codified in 18 U.S.C. § 3283, that statute provides that "[n]o statute of limitations that would otherwise preclude prosecution for an offense involving the sexual or physical abuse of a child under the age of 18

---

[3] The Government has not yet disclosed contemporaneous records regarding the closure of the 2002–2009 investigation, perhaps because the Government returned or destroyed evidence in or after 2010 when it closed the investigation.  Ex. 2, at US-00000575 ("During the investigation information was developed regarding Nader's importation of juvenile males into the United States for his sexual gratification . . . The USAO declined prosecution when Nader returned to the United States in 2009.  The case was closed in 2010.  All evidence was returned or destroyed."); Ex. 1, at US-00000862-5.

years shall preclude such prosecution before the child reaches the age of 25 years." 18 U.S.C. § 3283 (1994).[5] That is the limitations period that was in effect in 2000, when the Indictment has alleged that § 2423 was violated.

Several years later, Congress amended that limitations period. On April 30, 2003, Congress enacted the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act (the "PROTECT Act"), which provided that "[n]o statute of limitations that would otherwise preclude prosecution for an offense involving the sexual or physical abuse, or kidnapping, of a child under the age of 18 years shall preclude such prosecution during the life of the child." 18 U.S.C. § 3283 (2003). Three years later, on January 5, 2006, § 3283 was amended again to add "or for ten years after the offense, whichever is longer." 18 U.S.C. § 3283 (2006). Then, on July 27, 2006, the Adam Walsh Child Protection and Safety Act eliminated the statute of limitations for charges brought under § 2423 altogether. 18 U.S.C. § 3299 ("Notwithstanding any other law, an indictment may be found or an information instituted at any time without limitation" for charges brought under several chapters of the criminal code, such as Chapter 117, which includes § 2423.). None of these statutes include a retroactivity clause applying the extended (or eliminated) limitations period to conduct predating their enactment.

## II.    THE LATER-ENACTED STATUTES OF LIMITATIONS DO NOT APPLY TO PRE-ENACTMENT CONDUCT

The Fourth Circuit has applied a two-step approach under the Supreme Court's *Landgraf* analysis to determine whether a statute of limitations applies to pre-enactment conduct. *See Jaghoori v. Holder*, 772 F.3d 764, 770 (4th Cir. 2014).[6]    *First*, if Congress has expressly

---

[5] In 1990, the limitations period initially was codified in 18 U.S.C. § 3509(k), before being moved in 1994 to 18 U.S.C. § 3283 without any substantive changes.

[6] The Fourth Circuit has, in other cases, described *Landgraf* as a "three-step" analysis, but the substance of the inquiry is the same. *See Gordon v. Pete's Auto Service of Denbigh, Inc.*, 637 F.3d

prescribed the statute's temporal reach, the inquiry ends there. *Id.* *Second*, if not, the Court

determines whether the statute would impermissibly operate retroactively. *Id.* If so, then the

statute should not apply to pre-enactment conduct absent clear congressional intent favoring such

a result. *Id*. At bottom, the determination whether a statute applies to pre-enactment conduct is

"a question of congressional intent." *Id.*

Under both the first and second steps, the amendments to § 3283 and the newly enacted

§ 3299 do not apply to conduct preceding their enactment. The normal rules of statutory

construction make clear that Congress did not intend for the revised statutes of limitations to apply

to pre-enactment conduct—which ends the inquiry. If there were any ambiguity, the rule of lenity

(that ambiguous criminal statutes should be interpreted in the manner most favorable to the

defendant) and principles of repose (that criminal statutes of limitations are to be interpreted in

favor of the defendant if unclear) would apply and resolve the question in favor of prospective

application. But even if the analysis were to proceed to *Landgraf*'s second step, Mr. Nader should

still prevail because applying the new limitations periods here would have an impermissible

retroactive effect sufficient to trigger the presumption against retroactivity, and there is no clear

statement to overcome that presumption. *See Baldwin v. City of Greensboro*, 714 F.3d 828, 836

(4th Cir. 2013) (holding that inquiry "could end" at step one because statute suggested "it applies

*prospectively*," but even assuming "language" was "unclear," statute could not be applied

retroactively under other *Landgraf* steps).

---

454, 458 (4th Cir. 2011). Whatever the number of steps, the *Landgraf* analysis applies here
because "[s]tatutory amendments affecting statutes of limitation generally affect substantive,
rather than procedural, rights, and such substantive rights are typically protected from retroactive
application of laws." *Lewis v. Gupta*, 54 F. Supp. 2d 611, 617 (E.D. Va. 1999) (Ellis, J.) (citing
*Link v. Receivers of Seaboard Air Line Ry. Co.*, 73 F.2d 149, 151–52 (4th Cir. 1934)).

**A.** ***Landgraf* Step One:  Congress Intended Sections 3283 and 3299 To Apply Only To Post-Enactment Conduct**

The question at the first step of the *Landgraf* analysis is "whether Congress has expressly prescribed the statute's proper reach."  *Landgraf*, 511 U.S. at 280.  To determine the intent of Congress, courts must apply the "normal rules" of statutory construction.  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *see United States v. Jackson*, 480 F.3d 1014, 1018-21 (9th Cir. 2007).  This requires an examination of the text, structure, and history of the legislation to determine if Congress has clearly expressed an intent regarding the question of temporal scope.  *See Lindh*, 521 U.S. at 326-37.  Here, that intent is clear:  The newly revised statutes of limitations in § 3283 and § 3299 do not apply to conduct predating their enactment.  And that marks the end of the *Landgraf* analysis.  *See Sandoval v. Reno*, 166 F.3d 225, 240 (3d Cir. 1999) ("*Lindh* amplified the first step of the *Landgraf* analysis, making clear that if the statutory construction inquiry yields the answer that Congress intended prospectivity, the inquiry ends and the court need not engage in an analysis of whether there would be a 'retroactive effect.'").

***The Text.***  Neither § 3283 nor § 3299 includes a retroactivity provision or otherwise indicates that the newly revised statutes of limitations should apply retrospectively to pre-enactment conduct.  *See* 18 U.S.C. § 3283 (2003) ("No statute of limitations that would otherwise preclude prosecution for an offense involving the sexual or physical abuse of a child under the age of 18 years shall preclude such prosecution during the life of the child."); 18 U.S.C. § 3283 (2006) (same but adding "or for ten years after the offense, whichever is longer"); 18 U.S.C. § 3299 ("Notwithstanding any other law, an indictment may be found or an information instituted at any time without limitation. . . .").  The "otherwise preclude" language in § 3283 and the "notwithstanding any other law" language in § 3299 indicate that the generally applicable five-year statute of limitations does not apply to these crimes.  18 U.S.C. § 3282 (the general five-year

limitations period). They do not speak to the temporal scope of either statute—as the drafting history and other limitations periods set forth below confirm.

*The Drafting History.* The drafting history reveals that the absence of a retroactivity provision was intentional. Congress did *not* want the revised limitations periods to apply retrospectively.

Throughout early 2003, Congress considered the PROTECT Act. The House iteration of the bill would have eliminated the statute of limitations entirely and—critically—would have included an express retroactivity provision. *See* H.R. 1104, 108th Cong. § 202 (2003). As Associate Deputy Attorney General Daniel P. Collins explained in his testimony, "[t]he [House] proposal in section 202 [to amend § 3283] . . . parallels the USA PATRIOT ACT in providing that its statute of limitations reform will apply retroactively to offenses committed before its enactment." *Child Abduction Prevention Act and the Child Obscenity and Pornography Prevention Act of 2003, Hearing on H.R. 1104 and H.R. 1161 Before the Subcomm. on Crime, Terrorism & Homeland Sec. of the H. Comm. on the Judiciary*, 108th Cong. 28 (2003). Specifically, the House version included language "identical" to the USA PATRIOT ACT providing that the "statute of limitations reform shall apply to the prosecution of any offense committed before, on, or after the date of the enactment of this section." H.R. 1104, 108th Cong. § 202 (2003). The Department of Justice (through Mr. Collins) expressed its belief that the retroactivity provision was "important" to "ensure[] that, for example, there will be no time bar to the prosecution of rape cases which were unsolvable at the time of their commission, but which may now be solvable through the use of the DNA matching technology and databases." *Id.*

The House agreed, and passed a version of the bill that eliminated the statute of limitations entirely and included an express retroactivity clause. The House-passed version provided that:

"[n]otwithstanding any other provision of law, an indictment may be found or an information instituted at any time without limitation for any offense under section 1201 involving a minor victim, and for any felony under [various sections, including § 2423]," and that "[t]he amendments made by this section shall apply to the prosecution of any offense committed before, on, or after the date of the enactment of this section." Proposed amendment by Rep. Sensenbrenner to S. 151, 108th Cong. § 202 (2003) (proposing to add text of H.R. 1104, 108th Cong.), 149 Cong. Rec. H2417 (2003).

The Senate-passed version, in contrast, omitted any retroactivity provision, providing only that "[n]o statute of limitations that would otherwise preclude prosecution for an offense involving the sexual or physical abuse, or kidnaping, of a child under the age of 18 years shall preclude such prosecution during the life of the child." PROTECT Act, S. 151, 108th Cong. (as engrossed in the Senate, Feb. 24. 2003).

The House and Senate proceeded to conference to resolve two critical differences between the bills: (1) the Senate version did not include a retroactivity clause, and (2) the Senate version extended the limitations period to the life of the child-victim, but did not eliminate it entirely. At the conclusion of the conference, the Senate version prevailed: Congress deliberately removed the retroactivity provision and the Senate version ultimately became § 3283, as amended. *See* 18 U.S.C. § 3283 (2003). As the Ranking Member of the Senate Judiciary Committee—Senator Patrick Leahy—explained, "the conference agreed to drop language from the original House-passed bill that would have extended the limitations period retroactively." 149 Cong. Rec. S5147 (2008). To address the Department of Justice's concern regarding DNA evidence, Congress instead adopted a separate provision suspending the limitations period for certain child sex offenses so long as a "John Doe" indictment using a DNA profile is filed within the general five-

year statute of limitations.  *See* PROTECT Act, Pub. L. No. 108-21 § 610, 117 Stat. 650, 692 (2003) (codified at 18 U.S.C. § 3282(b)); *see also* H.R. Rep. No. 108-66, at 68-69 (2003) (Conf. Rep.).

The retroactivity clause that was deliberately withdrawn in 2003 has never been reinserted. The 2006 amendment contains no retroactivity clause. *See* 18 U.S.C. § 3283 (2006).  Neither does § 3299.  *See* 18 U.S.C. § 3299.  Tellingly, in enacting § 3299, Congress reverted back to the 2003 House-passed bill which, as noted above, eliminated the limitations period entirely.  The language is *identical*, with one critical difference:  *Congress did not include the retroactivity clause*. *Compare* 18 U.S.C. § 3299 ("Notwithstanding any other law, an indictment may be found or an information instituted at any time without limitation . . ."), *with* Child Abduction Prevention Act, S. 151, 108th Cong. (as an engrossed amendment in the House Mar. 27, 2003) ("Notwithstanding any other law, an indictment may be found or an information instituted at any time without limitation . . . .  The amendments made by this section shall apply to the prosecution of any offense committed before, on, or after the date of the enactment of this section.").  This directly counters any suggestion that the "[n]otwithstanding any other law" language itself denotes retroactive application.  If that were the case, there would have been no reason to include an express retroactivity clause in the 2003 House-passed bill which otherwise had identical language.

The deletion of the retroactivity clause from the 2003 House-passed bill, the Conference Committee's actions, and the exclusion of the retroactivity clause from the 2006 codification of § 3299—which otherwise employs language identical to what the House used in 2003— demonstrate that the later-enacted limitations periods were not intended to apply to pre-enactment conduct.  *See Sandoval*, 166 F.3d at 241 ("Few principles of statutory construction are more compelling than the proposition that Congress does not intend *sub silentio* to enact statutory

language that it has earlier discarded in favor of other language.") (citation omitted); *Henderson v. I.N.S.*, 157 F.3d 106, 130 (2d Cir. 1998) ("This sort of 'contrast in statutory language is "particularly telling" when it represents a decision by a conference committee to resolve a dispute in two versions of a bill, and the committee's choice is then approved by both Houses of Congress.'") (citation omitted).

*Negative Implication from Other Statutory Provisions.* As the 2003 House-passed bill demonstrates, Congress understands how to apply extended statutes of limitations to pre-enactment conduct. Mr. Collins explained as much in his testimony: Congress had adopted an "identical" retroactivity provision when eliminating the limitations period in the USA PATRIOT ACT. *See Hearing on H.R. 1104 and H.R. 1161,* 108th Cong. 28 (testimony of Daniel P. Collins); USA PATRIOT ACT of 2001, Pub. L. No. 107–56, § 809(b), 115 Stat. 272, 380 (2001) ("The amendments made by this section shall apply to the prosecution of any offense committed before, on, or after the date of the enactment of this section.").

The same Congress separately and expressly provided that a similarly worded limitations period should be applied to pre-enactment conduct. *See* Justice for All Act of 2004, Pub. L. No. 108-405, § 204, 118 Stat. 2260, 2271 (2004) (providing that "[i]n a case in which DNA testing implicates an identified person in the commission of a felony . . . no statute of limitations that would *otherwise preclude* prosecution of the offense shall preclude such prosecution until a period of time following the implication of the person by DNA testing has elapsed that is equal to the otherwise applicable limitation period" and explaining that "[t]he amendments made [to 18 U.S.C. § 3297] shall apply to the prosecution of any offense committed *before*, on, or after the date of the enactment of this section *if the applicable limitation period has not yet expired*") (emphases added). This contemporaneously enacted statute counters any suggestion that the phrase

"otherwise preclude" itself prescribes the temporal reach of the statute, and further confirms that omission of the retroactivity clause in § 3283 was a deliberate decision to apply the statute prospectively. *Cf. Henderson*, 157 F.3d at 129-30 ("Congress' use of explicitly retroactive language in that part of the bill, and its failure to employ any analogous language in the nearby and closely related § 440(d), by itself strongly indicates that Congress did not intend § 440(d) to apply retroactively."); *Sandoval*, 166 F.3d at 240 ("rule of negative implication is part of the normal rules of statutory construction" to be considered as part of *Landgraf*'s first step).[7]

*The Government's Position*. In light of all of the above, it is perhaps unsurprising that the Government itself seemed to recognize that §§ 3283 and 3299 do not apply to pre-enactment conduct. That is effectively what the Government said when it closed its investigation and destroyed or returned all the evidence in 2010 *because* the limitations period had already expired. Ex. 3, at US-00000001; Ex. 2, at US-00000575. And in at least one other case, the Government conceded that § 3299 does not appear to be retroactive. *See United States v. Schneider*, No. CRIM. A. 10-29, 2010 WL 3656027, at *1 n.1 (E.D. Pa. Sept. 15, 2010), *aff'd*, 801 F.3d 186 (3d Cir. 2015). The Government was right then and (assuming it changes its position) wrong now.

\*       \*       \*

---

[7] Many other statutes also include language virtually identical to the retroactivity clause that was rejected by Congress here. *E.g.,* Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, § 221(c), 110 Stat. 1214, 1243 (1996) ("The amendments made by this subtitle shall apply to any cause of action arising before, on, or after the date of the enactment of this Act."); Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104–134 § 802, 110 Stat. 1321 (1996) (The amendments to 18 U.S.C. § 3236 shall apply to relief granted "before, on, or after the date of the enactment of this title."); Crime Control Act of 1990, Pub L. No. 101-647, § 2505(b), 104 Stat. 4789, 4862 (1990) ("The amendments [to 18 U.S.C. § 3293] shall apply to any offense committed before the date of the enactment of this section."). Congress knows how to include a retroactivity provision, and how not to.

In sum, Congress did not intend to apply the new limitations periods to pre-enactment conduct and that marks the end of the analysis. But to the extent there is any ambiguity, the case should still be resolved in Mr. Nader's favor at *Landgraf*'s first step. This is a criminal statute of limitations that implicates principles of lenity and repose. *See United States v. Richardson*, 512 F.2d 105, 106 (3d Cir. 1975) ("Criminal statutes of limitations . . . are to be interpreted in favor of repose."); *United States v. McGoff*, 831 F.2d 1071, 1095 (D.C. Cir. 1987) (rule of lenity "has been applied not only to the interpretation of substantive criminal provisions, but to . . . statutes of limitations"); *United States v. Moazzeni*, 908 F. Supp. 2d 748, 750 (E.D. Va. 2012) (Hudson, J.) (noting that "criminal limitations statutes are to be liberally interpreted in favor of repose") (quoting *Toussie*, 397 U.S. at 115). Any ambiguity should be resolved against applying the new limitations periods to pre-enactment conduct. *Cf. Richardson*, 512 F.2d at 106 (declining to apply extended criminal limitations period to pre-enactment conduct when statute was "silent").

## B.  *Landgraf* Step Two:  The Statutes Have An Impermissible Retroactive Effect

If the Court continues to the second step of *Landgraf* (and it should not), the question then is whether the statutes have an impermissible retroactive effect by attaching new legal consequences to prior events. To determine whether the statute "would attach new legal consequences to prior events," courts look to a number of factors, including whether the statute "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *Jaghoori*, 772 F.3d at 771. "[T]he analysis prescribed by the Supreme Court in *Landgraf* is necessarily fact-dependent" when assessing the second step. *Roe v. Howard*, No. 1:16-cv-562, 2018 WL 284977, at *4 (E.D. Va. Jan. 3, 2018) (O'Grady, J.). And a statute can be impermissibly retroactive in one case but not another. *Id.*; *see Gordon*, 637 F.3d at 459 ("The

inquiry is . . . specifically 'whether applying the statute *to the person objecting* would have a retroactive consequence in the disfavored sense.'") (citation omitted).

As other circuits have recognized, it is "particularly difficult to categorize the presumptively impermissible effects of retroactively applying a statute of limitations"—especially in a criminal case. *United States v. Miller*, 911 F.3d 638, 645 (1st Cir. 2018) (quoting *Weingarten v. United States*, 865 F.3d 48, 56 (2d Cir. 2017)). If the statute of limitations had already expired at the time of the defendant's conduct, then all would agree that retroactive application of an extended limitations period would be impermissible—indeed, it would be unconstitutional under the *Ex Post Facto* Clause. *See Stogner v. California*, 539 U.S. 607, 618 (2003). So the second step of *Landgraf* (and, perhaps, the entire *Landgraf* analysis) has no work to do in that context. It is not a matter of statutory interpretation; Congress simply has no power to revive criminal claims that already expired.

The difficulty instead arises in cases like this one, *i.e.*, where a defendant's alleged unlawful conduct occurred before the old limitations period expired. In a civil case, the Fourth Circuit recognized a difference between reviving a stale claim and extending the limitations period for a live claim—and found that the latter was not impermissibly retroactive. *See Cruz v. Maypa*, 773 F.3d 138, 145 (4th Cir. 2014). But the criminal context is fundamentally different. And the Fourth Circuit has not applied *Cruz* to any criminal limitations period. To the extent an analysis under the second step of *Landgraf* is appropriate at all, it has to be undertaken with the principles of repose and lenity firmly in mind. As explained above, and as the Supreme Court made clear in *Toussie*, "criminal limitations statutes are 'to be liberally interpreted in favor of repose.'" 397 U.S. at 115; *see Miller*, 911 F.3d at 645 (discussing this important consideration); *Richardson*, 512 F.2d at 106 (same). Reading *Toussie* and *Landgraf* "in conjunction," courts "must interpret the statute

14

of limitations in a manner favoring repose for Defendant." *United States v. Gentile*, 235 F. Supp. 3d 649, 654 (D.N.J. 2017) (declining to apply extended criminal limitations period to pre-enactment conduct even if claim had not lapsed at time of extension). At the very least, then, *Toussie* "alters the second step in the *Landgraf* approach." *Miller*, 911 F.3d at 645. "In other words, when Congress has sounded an uncertain trumpet, a court ought to refrain from applying an enlarged criminal statute of limitations retrospectively." *Id.*

That conclusion is consistent with the distinct limits of the *Ex Post Facto* Clause. A criminal statute can have an impermissibly retroactive effect under the second step of *Landgraf* even if it does not amount to an *Ex Post Facto* Clause violation. As *Landgraf* itself recognized, "the antiretroactivity principle" is broader than the *Ex Post Facto* Clause. 511 U.S. at 266. It finds expression in other constitutional provisions, such as the Due Process Clause, and is a "deeply rooted" presumption based on "[e]lementary considerations" of fundamental "fairness." *Id.* at 265-66. Put another way, there is daylight between the *Ex Post Facto* Clause and the second step of *Landgraf* because the presumption against retroactivity is "triggered by statutes whose retroactive application, while not the equivalent of criminal *ex post facto*, nevertheless would run afoul of 'familiar considerations of fair notice, reasonable reliance, and settled expectations.'" *Thom v. Ashcroft*, 369 F.3d 158, 163 n.6 (2d Cir. 2004) (Calabresi, J., writing for the majority but noting he was speaking for himself).[8]

Properly understood, extending the criminal statute of limitations here upsets settled expectations and fails to protect reasonable reliance interests. *Landgraf* calls for a "commonsense,

---

[8] Although *Cruz* noted that "*Landgraf* and the *Ex Post Facto* Clause are informed by the same retroactivity concerns," 773 F.3d at 145, it did not consider the outer bounds of those retroactivity concerns in the context of a criminal limitations period or how principles of due process and fundamental fairness may impact that analysis.

functional judgment." *Jaghoori*, 772 F.3d at 771 (quoting *Martin v. Hadix*, 527 U.S. 343, 357–58 (1999)). This case is a prime example of how settled expectations can be fundamentally altered by the Government's decision to apply an extended limitations period to pre-enactment conduct. The Government was aware of and investigated the underlying factual allegations from 2002 to 2009. Ex. 3, at US-00000001. And, in 2010, it closed the investigation after deciding not to prosecute Mr. Nader. Ex. 2, at US-00000575. Why? Because the Government believed (correctly) that the statute of limitations had already run. Ex. 3, at US-00000001. That is, the Government apparently believed that the extended limitations periods in § 3283, and elimination of the limitations period in § 3299, did not apply to pre-enactment conduct. And the Government destroyed or returned all of the evidence. Ex. 2, at US-00000575. In the ensuing *nine* years, the Government did not pursue Mr. Nader, and encouraged his return to the United States on several occasions to testify to the Special Counsel concerning Russian interference in the 2016 election. Report on the Investigation Into Russian Interference in the 2016 Presidential Election, Special Counsel Robert S. Mueller, III, Mar. 2019, vol. i at 147-159.

A "criminal statute of limitations" is supposed "to protect individuals from having to defend conduct of the 'far-distant past,'" *United States v. Blizzard*, 27 F.3d 100, 102 (4th Cir. 1994), and "foreclose the potential for *inaccuracy* and *unfairness* that stale evidence and dull memories may occasion in an unduly delayed trial," *United States v. Midgley*, 142 F.3d 174, 177 (3d Cir. 1998) (citation omitted) (emphases in original). *See also United States v. Rivera-Ventura*, 72 F.3d 277, 281 (2d Cir. 1995) (statutes of limitation "applicable to criminal prosecutions are designed principally to protect individuals from having to defend themselves against charges supported by facts that are remote in time"). Those concerns are at their apex here. *Cf. United States v. Sotelo-Salgado*, 201 F. Supp. 2d 957, 966 (S.D. Iowa 2002) (noting that "the rule that

'criminal limitations statutes are to be liberally interpreted in favor of repose' . . . would be severely undermined were the Court to allow the Government, who knew of Defendant's crime for over seven years, to do virtually nothing to bring the accused to justice . . .") (citation omitted).

### C.    Out-of-Circuit Case Law Addressing The Retroactivity Of § 3283 Does Not Warrant A Different Result

The First and Second Circuits have recognized that the question of § 3283's retroactivity is at least a difficult and debatable issue—but neither has conclusively resolved the question. *See Miller*, 911 F.3d at 645 (assessing retroactivity in context of ineffective assistance of counsel claim); *Weingarten*, 865 F.3d at 56 (same). And a district court in the Third Circuit has noted the Government's concession that § 3299 does not "appear to be retroactive." *Schneider*, 2010 WL 3656027, at *1 n.1 (E.D. Pa.).

Some courts have suggested that the Eighth and Ninth Circuits have held otherwise.[9] They have not. In *United States v. Chief*, 438 F.3d 920 (9th Cir. 2006), the Ninth Circuit addressed an entirely different argument than the one Mr. Nader is making here. There, the defendant argued that when Congress extended the limitations period to the life of the child in 2003, it simultaneously reverted back to a *five-year* period for any pre-2003 offenders. 438 F.3d at 922-23. In rejecting that distinct argument, the panel concluded that retroactive application would not violate the *Ex Post Facto* Clause since the prior limitations period had not yet expired—a conclusion nobody disputes. *Id.* at 924. Similarly, in *United States v. Jeffries*, 405 F.3d 682, 684-

---

[9] *See, e.g.*, *United States v. Pittman*, No. 13-cr-4510, 2015 WL 4772731, at *3-5 (S.D. Cal. Aug. 12, 2015) (following Ninth Circuit decision as "controlling" even while admitting that the court of appeals did not "apply statutory construction principles"); *United States v. Lopez de Victoria*, 66 M.J. 67, 73 (C.A.A.F. 2008) (distinguishing decisions from the Eighth and Ninth Circuits when declining to "extend the reach" of a comparable 2003 amendment to the UCMJ "to cases which arose prior to the amendment of the statute").

85 (8th Cir. 2005), the Eighth Circuit focused primarily on the *Ex Post Facto* Clause.  The decision

makes no mention of *Landgraf* at all, and the statute at issue was the 1990 enactment of § 3283—

*not* the 2003 amendments.  405 F.3d at 683-84.  *Jeffries* thus contains no discussion of the text or

drafting history of the 2003 amendments (let alone § 3299), nor is there any discussion of the

express retroactivity provisions in contemporaneously enacted and similarly worded statutes.

## CONCLUSION

For all the reasons set forth above, the normal rules of statutory construction establish that

Congress intended for § 3283 and § 3299 to apply prospectively only.  That is clear from the text,

drafting history, and contemporaneously enacted statutes—and is reaffirmed by the Government's

concessions.  The better-reasoned judicial decisions recognize that principles of lenity and repose

bear on the *Landgraf* analysis in the context of a criminal case.  And there is no binding or even

persuasive court decision holding otherwise.  If Congress wants to extend (or, as with § 3299,

completely eliminate) a criminal statute of limitations, it is free to do so.  Congress may also

constitutionally apply that amended period to pre-enactment conduct so long as the prior

limitations period has not yet expired.  But to do so, it must speak clearly.  Here, Congress did

precisely the opposite:  it deliberately rejected retroactive application of the extended limitations

periods.  The Court should enforce Congress's intent, the presumption against retroactivity, and

principles of repose, and dismiss Count Three as time-barred.

Dated: October 18, 2019                    Respectfully submitted,


                                           LATHAM & WATKINS LLP

                                            /s/ *Timothy H. McCarten*
                                           Timothy H. McCarten (#77044)
                                           Clayton D. LaForge (#84075)
                                           Savannah K. Burgoyne (#90596)
                                           Zachary D. Williams (*pro hac vice*)
                                           Jason J. Despain (*pro hac vice*)
                                           555 Eleventh St., NW
                                           Suite 1000
                                           Washington, D.C. 20004
                                           Tel: (202) 637-2200
                                           Fax: (202) 637-2201
                                           Timothy.McCarten@lw.com
                                           Clayton.LaForge@lw.com
                                           Savannah.Burgoyne@lw.com
                                           Zachary.Williams@lw.com
                                           Jason.Despain@lw.com

                                           Christopher J. Clark (*pro hac vice*)
                                           Latham & Watkins, LLP
                                           885 Third Avenue
                                           New York, NY 10022
                                           Tel: (212) 906-2927
                                           Fax: (212) 751-4864
                                           Chris.Clark@lw.com

                                           Jonathan S. Jeffress (#42884)
                                           Emily Anne Voshell (#92997)
                                           Courtney Roberts Forrest (#76738)
                                           KaiserDillon PLLC
                                           1099 14th Street, NW
                                           8th Fl. West
                                           Washington, DC 20005
                                           Tel: (202) 640-4430
                                           Fax: (202) 280-1034
                                           jjeffress@kaiserdillon.com
                                           evoshell@kaiserdillon.com
                                           cforrest@kaiserdillon.com

                                           *Attorneys for Defendant*
                                           *George Aref Nader*