IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Alexandria Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 1:19-cr-201 |
| | ) | |
| GEORGE AREF NADER, | ) | |
| | ) | |
| Defendant. | ) | |

**Government's Response in Opposition to
Defendant's Motion to Dismiss Count 3**

The defendant has moved to dismiss Count 3 of the indictment on timeliness grounds.

(ECF No 132.)  He acknowledges that Congress has repeatedly enacted legislation to expand the

limitations period applicable to the offense charged in Count 3—namely, transportation of a

minor with intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a).  He

nonetheless asserts that, applying the relevant test from *Landgraf v. USI Film Products*, 511 U.S.

244 (1994), Congress did not intend for the expanded limitations period to apply to his pre-

enactment conduct and that, even if the statute is ambiguous on that score, applying the lengthier

limitations period here would have an impermissibly retroactive effect.

These arguments are unavailing.  The relevant statutory text supports the conclusion that

Congress intended for its expansion—and ultimate elimination—of the limitations period to

apply broadly.  Even if the Court were to conclude that evidence of congressional intent is

ambiguous, under firmly-rooted doctrine going all the way back to Justice Joseph Story,

lengthening an unexpired criminal statute of limitations is not "retroactive" at all, much less

impermissibly so.  The Court should therefore deny the motion.

## Statutory and Factual Background

Count 3 of the indictment alleges that "[i]n or about February 2000, [the defendant] knowingly transported a 14-year old boy … in interstate or foreign commerce, or in any commonwealth, territory or possession of the United States, with the intent that the boy engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempted to do so."  (ECF No. 49 at 3.)  The indictment specifies that the charged acts were unlawful under 18 U.S.C. § 2423(a) and D.C. Criminal Code §§ 22-3008 and 22-3009.[1]

The default statute of limitations for non-capital federal offenses is five years.  18 U.S.C. § 3282.  In 1990, however, Congress added a new provision to the United States Code, 18 U.S.C. § 3509(k), stating that "[n]o statute of limitation that would otherwise preclude prosecution for an offense involving the sexual or physical abuse of a child under the age of 18 years shall preclude such prosecution before the child reaches the age of 25 years."[2]  In 1994, Congress struck this language from § 3509(k) and moved it to 18 U.S.C. § 3283.[3]  Thus, at the time the defendant committed the criminal acts charged in Count 3, the limitations period would have expired when the 14-year-old victim turned 25—*i.e.*, sometime within a year of February 2011.

---

[1] Under 18 U.S.C. § 2423(a), as amended on October 30, 1998 and as effective in February 2000, "[a] person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce, or in any commonwealth, territory or possession of the United States, with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title, imprisoned not more than 15 years, or both."  D.C. Criminal Code §§ 22-3008 and 22-3009, formerly codified at §§ 22-4108 and 22-4109, are D.C.'s first- and second-degree child sexual abuse statutes, respectively.

[2] Victims of Child Abuse Act of 1990, Pub. L. No. 101-647, § 225, 104 Stat. 4789, 4805.

[3] Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103–322, § 330018(a), 108 Stat. 1796, 2148.

Before that date, Congress twice extended the relevant limitations period.  In April 2003—more than six years before the original statute of limitations expired—Congress amended 18 U.S.C. § 3283 to state that "[n]o statute of limitations that would otherwise preclude prosecution for an offense involving the sexual or physical abuse, or kidnaping, of a child under the age of 18 years shall preclude such prosecution *during the life of the child*."[4]  In January 2006—more than three years before the original statute of limitations expired—Congress again amended § 3283, this time to read:  "No statute of limitations that would otherwise preclude prosecution for an offense involving the sexual or physical abuse, or kidnaping, of a child under the age of 18 years shall preclude such prosecution during the life of the child, *or for ten years after the offense, whichever is longer*."[5]

Then, in July 2006—again, years before the original limitations period ran—Congress eliminated the applicable statute of limitations altogether.  To that end, Congress added a new Code provision, 18 U.S.C. § 3299, stating:

> Notwithstanding any other law, an indictment may be found or an information instituted at any time without limitation for any offense under section 1201 involving a minor victim, and for any felony under chapter 109A, 110 (except for section 2257 and 2257A), or 117, or section 1591.[6]

Because the statute underlying Count 3, 18 U.S.C. § 2423, appears in Chapter 117 of Title 18, it

---

[4] Prosecutorial Remedies and Tools Against the Exploitation of Children Today ("PROTECT") Act of 2003, Pub. L. No. 108–21, § 202, 117 Stat. 650, 660 (emphasis added).

[5] Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109–162, § 1182(c), 119 Stat. 2960, 3127 (emphasis added).  The government represents that the 14-year-old victim identified in Count 3 is still alive such that both amendments to § 3283 would render Count 3 timely if, under *Landgraf*, these amendments are deemed to apply to pre-enactment conduct.  The defendant does not contend otherwise.

[6] Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109–248, § 211(1), 120 Stat. 587, 616.

falls within the ambit of § 3299.

The question is thus whether any of these three provisions—the 2003 amendment to § 3283, the 2006 amendment to § 3283, or the 2006 elimination of the statute of limitations effectuated by § 3299—applies to the present prosecution, which in turn arises from conduct occurring in February 2000. The answer to that question is "yes."

## Argument

The defendant's motion to dismiss Count 3 "presents a pure question of statutory interpretation under" *Landgraf*. (ECF No. 133 at 1.) The Supreme Court there addressed the question of when and under what circumstances district courts should apply statutory provisions passed by Congress after the conduct giving rise to pending litigation had occurred. *Landgraf* itself involved a claim of employment discrimination under Title VII of the Civil Rights Act. Before 1991, Title VII authorized only equitable remedies, including backpay, for successful plaintiffs. In 1991, however, Congress amended Title VII to permit both jury trials and claims for compensatory and punitive damages. 511 U.S. at 249–50. The Supreme Court "granted certiorari to decide whether these provisions appl[ied] to a Title VII case that was pending on appeal when the statute was enacted." *Id.* at 247.

After discussing the myriad doctrinal considerations applicable to statutory retroactivity, *Landgraf* announced a two-part test:

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

4

*Id.* at 280; *accord Matherly v. Andrews*, 817 F.3d 115, 119 (4th Cir. 2016) (outlining the relevant test); *Tasios v. Reno*, 204 F.3d 544, 547–48 (4th Cir. 2000) (same).

The defendant asserts both that "Congress intended that the amendments to § 3283 and the newly enacted § 3299 would apply only to post-enactment conduct," and that applying these provisions to Count 3 "would have an impermissible retroactive effect." (ECF No. 133 at 2.) Because neither contention is persuasive, the Court should deny the motion.

**I.      Congress intended for its expansions (and ultimate elimination) of the statute of limitations to apply to pre-enactment conduct.**

The defendant begins by asserting that Congress intended that its amendments to § 3283 and its passage of § 3299 would apply only to post-enactment conduct. But neither the text of these provisions, nor the legislative history, nor the defendant's reliance on other statutory provisions gets the defendant to his desired destination.

**A.      The statutory text does not help the defendant.**

The text of the three key provisions at issue in this case is set out below, with the key language regarding scope appearing in italics:

| Extensions of the Limitations Period | Repeal of the Limitations Period |
| --- | --- |
| **2003 Amendment to § 3283:** <br> *No statute of limitations that would otherwise preclude prosecution* for an offense involving the sexual or physical abuse, or kidnaping, of a child under the age of 18 years shall preclude such prosecution during the life of the child. <br><br> **2006 Amendment to § 3283:** <br> *No statute of limitations that would otherwise preclude prosecution* for an offense involving the sexual or physical abuse, or kidnaping, of a child under the age of 18 years shall preclude such prosecution during the life of the child, or for ten years after the offense, whichever is longer. | **2006 Repeal in § 3299:** <br> *Notwithstanding any other law*, an indictment may be found or an information instituted *at any time without limitation* for any offense under section 1201 involving a minor victim, and for any felony under chapter 109A, 110 (except for section 2257 and 2257A), or 117, or section 1591. |

In responding to the defendant's textual arguments, it is helpful to start with two preliminary points.  First, these provisions, taken as a group, speak to a clear congressional policy between 2003 and 2006 of seeking to extend (and then eliminate) the limitations period applicable to offenses involving sexual abuse of children.  Given this one-way ratcheting, all of the scope-related language in italics strengthens the government's position rather than the defendant's.  Second, because the original statute of limitations applicable to Count 3 had not expired by 2006, the Court need only conclude that one of these three provisions applies to pre-enactment conduct in order to deny the motion to dismiss Count 3.

The government thus begins with § 3299, which eliminated the statute of limitations altogether.  The language of § 3299 is expansive and clear:  "[n]otwithstanding any other law, an indictment may be found … at any time without limitation."  The Supreme Court has explained that "the use of such a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section." *Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993).  Indeed, "[a] clearer statement is difficult to imagine."  *Id.* (quoting *Liberty Mar. Corp. v. United States*, 928 F.2d 413, 416 (D.C. Cir. 1991)) (brackets in original).  *See also Castro v. Sec'y of Homeland Sec.*, 472 F.3d 1334, 1337 (11th Cir. 2006) ("We read the phrase 'notwithstanding any other provision of law' as Congress's indication that the statute containing that language is 'intended ... to take precedence over any preexisting or subsequently-enacted ... legislation [on the same subject]." (quoting *United States v. McLymont*, 45 F.3d 400, 401 (11th Cir. 1995))) (alterations in original). For this reason, the Eighth Circuit has concluded that where the applicable statute of limitations had not run by 2006, "§ 3299 had the effect of modifying the limitations period that applied to that conduct."  *United States v. Coutentos*, 651 F.3d 809, 817–18 (8th Cir. 2011).  The logic of

6

the Eighth Circuit's decision in *Coutentos* is sufficient to defeat the defendant's motion.

Moreover, both the Eighth and the Ninth Circuits have concluded that, in addition to

§ 3299, congressional provisions extending the applicable limitations period *also* apply to pre-

enactment conduct.  The Eighth Circuit first addressed this issue in relation to § 3509(k),

§ 3283's predecessor.  It held "that both the title and the wording of § 3509(k) indicate that

Congress intended by it to extend the general statute of limitations."  *United States v. Jeffries*,

405 F.3d 682, 684 (8th Cir. 2005).  The Eighth Circuit reasoned that "[w]hen enacted in 1990,

[§ 3509(k)] was entitled 'Extension of child statute of limitations' and it stated that no statute of

limitations that would otherwise preclude prosecution should act as a bar before the victim

reaches the age of twenty five."  *Id.*  *Jeffries* thus rejected the argument that "§ 3509(k) was [not]

intended to be applied" to pre-enactment conduct.  *Id.*  *See also United States v. Johns*, 15 F.3d

740, 743 (8th Cir. 1994) (concluding that § 3509(k) "extended the limitation period for child

sexual abuse prosecutions that were not already time-barred").

The Ninth Circuit later applied the logic of *Jeffries* to the 2003 amendment to § 3283.

*See United States v. Leo Sure Chief*, 438 F.3d 920, 924 (9th Cir. 2006) ("Because Congress

evinced a clear intent to extend, rather than shorten, the statute of limitations applicable to sexual

abuse crimes, and because there is no *ex post facto* problem here, the prosecution was timely."

(citing *Jeffries*, 405 F.3d at 685)).  The logic of these decisions applies *a fortiorari* to the repeal

provision enacted in § 3299, which uses language even broader and more sweeping in scope than

the amendments to § 3283.  The weight of appellate authority thus supports the conclusion that

Congress intended for these three provisions to apply to pre-enactment conduct.

In short, the defendant's textual arguments are not persuasive.  The defendant's narrow

reading of § 3283 has been rejected by both the Eighth and the Ninth Circuits.  Moreover, while

Congress did not explicitly state that § 3299's repeal of the statute of limitations should apply to pre-enactment conduct, its use of the phrases "[n]otwithstanding any other law" and "at any time without limitation" indicates that courts should apply § 3299 broadly.  Because the original statute of limitations governing Count 3 had not run when Congress enacted § 3299 in July 2006, that provision's maximalist language tilts the scales in favor of application to the defendant's conduct.

### B.   The relevant legislative history does not help the defendant.

The defendant's argument based on legislative history is equally unpersuasive.  In substance, that argument proceeds as follows:

- The House-passed bill that preceded the passage of the 2003 amendment to § 3283 had an explicit retroactivity clause, but the final version of the enacted legislation that emerged from the conference committee did not.[7]

- Therefore, Congress clearly intended that the lengthened statute of limitations in § 3283 should not apply to pre-enactment conduct.

- Because neither the January 2006 amendment to § 3283 nor the July 2006 legislation that enacted § 3299 had an explicit retroactivity clause, Congress in 2006 was adhering to its prior determination in 2003 that these provisions should not apply to pre-enactment conduct.

This argument is both factually misleading and unavailing on the merits.

To begin, the argument is misleading.  The defendant quotes Senator Patrick Leahy's comments on the 2003 conference committee report to the effect that "the conference agreed to drop language from the original House-passed bill that would have extended the limitations period retroactively."  (ECF No. 133 at 9.)  But the defendant quotes Senator Leahy only

---

[7] *See* Child Abduction Prevention Act, H.R. 1104, 108th Cong. § 202 (as passed by House, Mar. 27, 2003).  The Senate counterpart had no statute-of-limitations provision at all.  *See* Prosecutorial Remedies and Other Tools To End the Exploitation of Children Today Act of 2003, S. 151, 108th Cong. (as passed by Senate, Feb. 24, 2003).

selectively.  Senator Leahy's full comments on the statute-of-limitations provision are as

follows:

> A final point on section 202:  I am pleased that the conference agreed to drop
> language from the original House-passed bill that would have extended the
> limitations period retroactively.  That language, *which would have revived the
> government's authority to prosecute crimes that were previously time-barred*, is of
> doubtful constitutionality.  We are already pushing the constitutional envelope with
> respect to several of the "virtual porn" provisions in this bill.  I am pleased that we
> are not doing so in section 202 as well.

149 Cong. Rec. S 5137, 5147 (Apr. 10, 2003) (statement of Sen. Leahy) (emphasis added).

As the full quotation makes clear, the legislative history does *not* support the conclusion

that when Congress amended § 3283, it declined to adopt the House-passed language because it

wanted the lengthened statute of limitations to apply only to post-enactment conduct.  Instead,

Senator Leahy's comments indicate that Congress dropped the House-passed language because

at least some members were concerned about constitutional issues under the *Ex Post Facto*

Clause arising from the resurrection of time-barred prosecutions.  But—critically—the statute of

limitations applicable to Count 3 *had not run* when Congress expanded the limitations period in

2003 and 2006.  There is thus no *Ex Post Facto* issue in this case at all, as the defendant himself

acknowledges.  (*See* ECF No. 133 at 1 ("To be clear, Mr. Nader does not contend that this claim

was time-barred at the time of the amendments or that the prosecution violates his rights under

the *Ex Post Facto* Clause.").)  What's more, the defendant fails to grapple with other aspects of

the legislative history relating to the passage of § 3299 which suggest that Congress intended for

that statute to apply as broadly as possible.  *See, e.g.*, 149 Cong. Rec. S 8012, 8025 (July 20,

2006) ("Section 211 *suspends* the statute of limitations *for all Federal felony offenses* of sexual

abuse, sex trafficking, or child pornography.") (statement of Sen. Kyl) (emphasis added).

Second, the defendant's legislative-history argument is unavailing on its terms.  The

gravamen of that argument is that when Congress considers incorporating an explicit retroactivity clause into a statute and ultimately does not, courts should draw the negative inference that Congress intended for the statute not to apply to pre-enactment conduct. But *Landgraf* itself rejected this view. As *Landgraf* explained, the 1991 statute at issue in that case had a predecessor:

> In 1990, a comprehensive civil rights bill passed both Houses of Congress. Although similar to the 1991 Act in many other respects, the 1990 bill differed in that it contained language expressly calling for application of many of its provisions, including the section providing for damages in cases of intentional employment discrimination, to cases arising before its (expected) enactment. The President vetoed the 1990 legislation, however, citing the bill's "unfair retroactivity rules" as one reason for his disapproval.

511 U.S. at 255–56. Based on the absence of clear retroactivity language in the 1991 statute, the defendants in *Landgraf* argued that Congress had expressed its intent that the new provisions of Title VII should not apply to pre-enactment conduct. The Supreme Court disagreed. As *Landgraf* put it, "[t]he omission of the elaborate retroactivity provision of the 1990 bill—which was by no means the only source of political controversy over that legislation—is not dispositive because it does not tell us precisely where the compromise was struck in the 1991 Act." *Id.* at 256. Indeed, "[i]t [was] entirely possible—indeed, highly probable—that, because it was unable to resolve the retroactivity issue with the clarity of the 1990 legislation, Congress viewed the matter as an open issue to be resolved by the courts." *Id.* at 261.

The defendant here thus relies on the same species of argument from legislative history that *Landgraf* rejected. If the presence of explicit retroactivity language in an earlier bill evinced clear congressional intent that a later-passed bill without such language should not apply to pre-enactment conduct, *Landgraf* would have been a much shorter opinion. But instead, the *Landgraf* Court concluded that there was an "absence of guiding instructions from Congress,"

*id.* at 280, and proceeded to the second step of its analysis.  This Court should do the same.
Whatever the content of a prior House-passed bill, *Landgraf* teaches that the absence of explicit
retroactivity language in §§ 3283 and 3299 is simply not dispositive.

>        **C.     Other statutory provisions do not help the defendant.**

For similar reasons, the defendant's reliance on other statutory provisions is also
unpersuasive.  The defendant first points to 18 U.S.C. § 3286(b), which echoes § 3299 in stating
that "[n]otwithstanding any other law, an indictment may be found or an information instituted at
any time without limitation for [certain terrorism offenses], if the commission of such offense
resulted in, or created a for[e]seeable risk of, death or serious bodily injury to another person."
When Congress enacted this provision, it included an application note directing that "[t]he
amendments made by this section shall apply to the prosecution of any offense committed
before, on, or after the date of the enactment of this section."[8]  The defendant also points to
18 U.S.C. § 3297, which states that "[i]n a case in which DNA testing implicates an identified
person in the commission of a felony, no statute of limitations that would otherwise preclude
prosecution of the offense shall preclude such prosecution until a period of time following the
implication of the person by DNA testing has elapsed that is equal to the otherwise applicable
limitation period."  Here, too, Congress included an application note regarding retroactivity.[9]
The defendant uses the presence of these express retroactivity provisions to argue that the
absence of similar language in §§ 3283 and 3299 means that these provisions do not apply to
pre-enactment conduct.

---

[8] Uniting and Strengthening America by Providing Appropriate Tools Required To Intercept and Obstruct Terrorism (USA PATRIOT Act) Act of 2001, Pub. L. 107-56, § 809, 115 Stat. 272, 379.

[9] Justice for All Act of 2004, Pub. L. No. 108-405, § 204, 118 Stat. 2260, 2271.

This argument fails for the same reason that the defendant's reliance on language in the prior House bill fails:  as *Landgraf* explains, congressional intent is not inferable merely from the presence or absence of language in *other* bills or statutes.  The question, rather, is what Congress intended to accomplish in passing §§ 3283 and 3299.  Indeed, the Supreme Court has cautioned that a "negative inference" arising from legislative history may have little weight when comparing different statutory provisions that address "wholly distinct subject matters."  *Martin v. Hadix*, 527 U.S. 343, 356 (1999).

Rather than follow *Landgraf*, the defendant urges this Court to adopt the position articulated by the Third Circuit in *United States v. Richardson*, 512 F.2d 105 (3d Cir. 1975) (per curiam), a pre-*Landgraf* case which he cites repeatedly.  (*See* ECF No. 133 at 13–14.)  There, the Third Circuit acknowledged that "Congress … has the power to extend the period of limitations without running afoul of the ex post facto clause, provided the period has not already run." *Id.* at 106.  Even so, *Richardson* stated that "[c]riminal statutes of limitations … are to be interpreted in favor of repose" and "a law is presumed to operate prospectively in the absence of a clear expression to the contrary."  *Id.*  Applying these principles, the Third Circuit held that it would "decline to hold that Congress in fact has exercised its power to extend the limitations period in the instant case, unless [it could] discern a clear intention on the part of Congress that [a statute] should apply to offenses committed before [its] enactment date."  *Id.*

The Court should reject the defendant's reliance on *Richardson* because it establishes a clear-statement rule that is flatly incompatible with *Landgraf*.  The Supreme Court certainly could have held that a statute will not apply to pre-enactment conduct absent a clear statement of congressional intent—but it did not.  Instead, *Landgraf* held that where a statute "does not evince any clear expression of intent on [its] application to cases arising before [its] enactment"

12

(*Landgraf* step one), courts should proceed to "determine whether the new statute would have retroactive effect" (*Landgraf* step two). *Id.* at 264, 280. Only if the answer to that second question is "yes" should a court decline to apply a statute to pre-enactment conduct. In short, the defendant purports to be conducting a *Landgraf* analysis but is in fact seeking to import pre-*Landgraf* doctrinal modalities into the analysis that are incompatible with *Landgraf* itself. In reality, there are no presumptions at step one of a *Landgraf* analysis.[10] If congressional intent is clear, that ends the inquiry. If it is unclear, courts proceed to consider whether application of the statute would have an impermissible retroactive effect.

Because evidence of congressional intent as to application of §§ 3283 and 3299 to pre-enactment conduct either supports the government or is, at best, ambiguous, the Court should proceed to *Landgraf* step two.

## II.     Extension of an unexpired statute of limitations does not have any retroactive effect.

At step two of the *Landgraf* analysis, a court "must determine whether the new statute would have retroactive effect." 511 U.S. at 280. Critically, "retroactive effect" is a term of art. It means, among other things, that the statute "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* Thus, "[a] statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment." *Tasios v. Reno*, 204 F.3d 544, 550 (4th Cir. 2000) (quoting *Landgraf*, 511 U.S. at 269). Instead, "[t]he inquiry into whether a statute operates retroactively demands a commonsense, functional

---

[10] *But see United States v. Lopez de Victoria*, 66 M.J. 67, 74 (C.A.A.F. 2008) (effectively adopting the *Richardson* rule by emphasizing "the lack of any indication of congressional intent to apply [a limitations extension] retrospectively" to hold that an extension to a statute of limitations did not apply to pre-enactment conduct).

judgment about 'whether the new provision attaches new legal consequences to events completed before its enactment.'"  *Hadix*, 527 U.S. at 357–58 (quoting *Landgraf*, 511 U.S. at 270).  The assessment is one in which "familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance."  *Landgraf*, 511 U.S. at 270.  As *Landgraf* itself explained, several types of statutes, including those providing for equitable relief, "intervening statutes conferring or ousting jurisdiction," and "[c]hanges in procedural rules" do not have a recognizably retroactive effect.  *Id.* at 273–75.  Applying these principles, extension of an unexpired criminal statute of limitations is not meaningfully "retroactive" at all.

The canonical description of what constitutes impermissible statutory retroactivity comes from Justice Joseph Story, sitting as a Circuit Judge in New Hampshire.  *See Soc'y for the Propagation of the Gospel v. Wheeler*, 22 F. Cas. 756 (C.C.D.N.H. 1814).  As Justice Story there explained:

> What is a retrospective law, within the true intent and meaning of this article?  Is it confined to statutes, which are enacted to take effect from a time anterior to their passage?  or does it embrace all statutes, which, though operating only from their passage, affect vested rights and past transactions?
>
>       \*      \*      \*
>
> Upon principle, every statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective; and this doctrine seems fully supported by authorities.

*Id.* at 767.  In *Landgraf* itself, the Supreme Court described Justice Story's formulation as especially "influential," 511 U.S. at 268, and it has continued to treat Justice Story's definition as a touchstone, *see I.N.S. v. St. Cyr*, 533 U.S. 289, 321 (2001), even as it has cautioned "that Justice Story's formulation [is not] the exclusive definition of presumptively impermissible retroactive legislation," *Hughes Aircraft Co. v. U.S. ex rel. Schumer*, 520 U.S. 939, 947 (1997).

14

The Fourth Circuit, too, has relied on Justice Story's retroactivity analysis, *see, e.g.*, *Jaghoori v. Holder*, 772 F.3d 764, 770–71 (4th Cir. 2014), while recognizing that the formulation is not exhaustive, *see Chambers v. Reno*, 307 F.3d 284, 292 (4th Cir. 2002).

It is thus appropriate to begin with the observation that extension of an unexpired criminal statute of limitations crosses none of the red lines laid down by Justice Story. As the Fifth Circuit has explained, "extension of the limitations period neither criminalizes previously innocent conduct nor enhances the punishment for an existing crime." *United States v. Brechtel*, 997 F.2d 1108, 1113 (5th Cir. 1993). Nor does such an extension "alter either party's liability or impose new duties with respect to transactions already completed." *St. Louis v. Tex. Worker's Comp. Comm'n*, 65 F.3d 43, 46 (5th Cir. 1995) (holding that extension of an unexpired civil statute of limitations is not retroactive under *Landgraf*). Extending a criminal limitations period also does not contravene a "vested right," as there is "[t]here is no such thing as a vested right in a wrong-doer to evade the exercise of judicial power." *Freeborn v. Smith*, 69 U.S. 160, 170 (1864). At most, a person in the position of the defendant might have had something like an expectation interest in the belief that, were he able to evade law enforcement until his victim reached the age of 25, he would be able to escape punishment for his alleged sexual abuse. "[B]ut the Court in *Landgraf* emphasized that a statute does not operate retroactively merely because it 'upsets expectations based in prior law.'" *Appiah v. U.S. I.N.S.*, 202 F.3d 704, 709 (4th Cir. 2000) (quoting *Landgraf*, 511 U.S. at 269).

Instead, extension of an unexpired limitations period preserves the *status quo* by continuing to subject the defendant to potential prosecution if his unlawful conduct comes to light. Judge Learned Hand penned the most influential articulation of this principle in 1928:

> Certainly it is one thing to revive a prosecution already dead, and another to give it a longer lease of life. The question turns upon how much violence is done to our instinctive feelings of justice and fair play. For the state to assure a man that he has become safe from its pursuit, and thereafter to withdraw its assurance, seems to most of us unfair and dishonest. But, while the chase is on, it does not shock us to have it extended beyond the time first set, or, if it does, the stake forgives it.

*Falter v. United States*, 23 F.2d 420, 425–26 (2nd Cir. 1928).[11] The Supreme Court itself has favorably cited Judge Hand's analysis. In *Stogner v. California*, 539 U.S. 607 (2003), the Court held that a law which "reviv[es] time-barred prosecutions" violates the *Ex Post Facto* Clause. *Id.* at 617, 621. Responding to the dissent in that case, the *Stogner* majority cited Judge Hand's *Falter* opinion, stating that "Judge Hand's comments had support in pre-existing case law, commentary, and published legislative debates." *Id.* at 629. While *Stogner* dealt with the unfairness of resurrecting untimely cases, it would be odd for the Supreme Court to have heaped praise on Judge Hand if the second half of his *Falter* discussion—regarding the permissibility of extending an unexpired limitations period—somehow violated basic notions "of fair notice, reasonable reliance, and settled expectations." *Landgraf*, 511 U.S. at 270. And indeed, several courts have adopted a default rule that extensions of unexpired limitations periods generally apply to pre-enactment conduct. *See, e.g.*, *State v. Skakel*, 888 A.2d 985, 1024–25 (Conn. 2006) ("[O]ur conclusion that an amendment to a criminal statute of limitations is presumptively applicable to crimes not previously barred by the original limitation period is supported by the considerable weight of authority." (citing cases)).

The defendant's position also contravenes the most applicable Circuit precedent, *Cruz v. Maypa*, 773 F.3d 138 (4th Cir. 2014). The plaintiff there brought civil claims under the Victims

---

[11] In *Falter*, the "stake" at issue was the ability to punish a defendant for conspiring to defraud the United States. *See* 23 F.2d at 422. The "stake" here, of course, is the ability to punish the defendant for the far more heinous offense of sexually abusing a minor victim.

of Trafficking and Violence Protection Act, 18 U.S.C. §§ 1589, 1590, and 1595.  At the time her

claims accrued, they were governed by a four-year statute of limitations, but Congress extended

that limitations period to ten years before the original four-year period expired.  *See Cruz*, 773

F.3d at 144.  The defendants argued that applying the longer limitations period to the plaintiff's

claims would be impermissibly retroactive under *Landgraf*, but the Fourth Circuit disagreed.

*Cruz* began its analysis this way:

> [A]pplying a new limitations period to unexpired claims does not "attach[] new
> legal consequences to events completed before its enactment."  *Landgraf*, 511 U.S.
> at 270.  As long as the claims were alive at enactment, extending a statute of
> limitations does not "increase a party's liability for past conduct," *id.* at 280,
> because the party already faced liability under the shorter limitations period.  Such
> an extension does not introduce new legal consequences, but rather merely prolongs
> the time during which legal consequences can occur.

*Id.* at 145.  In short, *Cruz* held that extending an unexpired statute of limitations is not retroactive

within the meaning of *Landgraf*.  This alone is completely fatal to the defendant's argument.

But *Cruz* went further still.  It noted the longstanding appellate consensus that extending

an unexpired statute of limitations does not violate the *Ex Post Facto* Clause in a criminal case.

*See id.* (citing *United States v. Jeffries*, 405 F.3d 682, 685 (8th Cir. 2005); *United States v.

Grimes*, 142 F.3d 1342, 1351 (11th Cir. 1998); *United States v. Brechtel*, 997 F.2d 1108, 1113

(5th Cir. 1993); *United States v. Taliaferro*, 979 F.2d 1399, 1402 (10th Cir. 1992)).[12]  It

explained that this was so because "a defendant facing unexpired claims has never been 'safe

from ... pursuit,' and has always had incentive to preserve exculpatory evidence."  *Id.* (quoting

---

[12] *See also United States v. Knipp*, 963 F.2d 839, 844 (6th Cir. 1992) ("[T]he courts of
appeals considering this issue have held that the extension of a limitations period before that
period has run does not violate the Ex Post Facto Clause." (citing *United States ex rel.
Massarella v. Elrod*, 682 F.2d 688, 689 (7th Cir. 1982); *Clements v. United States*, 266 F.2d 397,
399 (9th Cir. 1959); *Falter*, 23 F.2d at 425)).

*Stogner*, 539 U.S. at 611).  While *Cruz* attributed the "safe from pursuit" language to *Stogner*, that formulation is in fact Judge Hand's turn of phrase from *Falter*—effectively incorporating Judge Hand's discussion of unexpired criminal statutes of limitations into Fourth Circuit law. *Cruz* concluded its discussion by explaining that "*Landgraf* and the *Ex Post Facto* Clause are informed by the same retroactivity concerns," such that "it makes sense to apply these considerations in the civil context."  *Id.*

  *Cruz* is thus devastating to the defendant's position.  Because the defendant concedes that extending an unexpired limitations period does not violate the *Ex Post Facto* Clause, his argument at *Landgraf* step two depends on the proposition that "there is daylight between the *Ex Post Facto* Clause and the second step of *Landgraf*."  (ECF No. 133 at 15.)  *Cruz* effectively says:  no, there is not.  While *Cruz* arose from a civil rather than a criminal case, it reasoned *backwards* from the criminal context to explain why extending an unexpired limitations period is permissible in a civil case.  Once one accepts, as did *Cruz*, that a defendant facing an unexpired limitations period is not "safe from [the state's] pursuit," *Falter*, 23 F.2d at 426, then it becomes clear that application of §§ 3283 and 3299 to Count 3 is not truly "retroactive" at all.

  Nor do out-of-circuit cases help the defendant.  In two cases involving sex offenses with minor victims, the Ninth and Eighth Circuits have upheld application of §§ 3509(k) and 3283 to prosecutions involving pre-enactment conduct.  *See Leo Sure Chief*, 438 F.3d at 924–25; *Jeffries*, 405 F.3d at 685.  Several district court decisions are in accord.  *See United States v. Pittman*, No. 13-cr-4510 (JAH), 2015 WL 4772731, at *3 (S.D. Cal. Aug. 12, 2015); *United States v. Vickers*, No. 13-cr-128 (RJA), 2014 WL 1838255, at *7–9 (W.D.N.Y. May 8, 2014); *United States v. Sensi*, No. 3:08-cr-253 (WWE), 2010 WL 2351484, at *2 (D. Conn. June 7, 2010) ("Congress may extend the statute of limitations on a criminal statute, and the government may

bring charges under such extension provided that the original statute of limitations had not yet lapsed when the extension when into effect."); *United States v. Shepard*, No. 4:10-cr-415 (DDD), 2011 WL 3648065, at *2–3 (N.D. Ohio Aug. 18, 2011); *United States v. Jackson*, No. 08-cr-225 (KKD), 2008 WL 11339647, at *3 (S.D. Ala. Sept. 11, 2008).[13]

In two other cases, the Second and First Circuits have been more circumspect.  In *Weingarten v. United States*, 865 F.3d 48 (2d  Cir. 2017), *cert. denied*, 138 S. Ct. 1309 (2018), the Second Circuit rejected an ineffective-assistance-of-counsel claim arising from a defense lawyer's failure to raise a timeliness challenge to a child-sex-crime prosecution on *Landgraf* grounds.  *Weingarten* stated that application of *Landgraf* to the 2003 amendment to § 3283 was a "difficult issue" and therefore concluded that the defendant could not succeed on his habeas claim because his "retroactivity argument was not so obvious that it was objectively unreasonable for his trial counsel to forgo it in favor of others." *Id.* at 58.  In *United States v. Miller*, 911 F.3d 638 (1st Cir. 2018), the First Circuit rejected a similar ineffectiveness claim brought on direct appeal.  *Miller* stated "that a *Landgraf* analysis of the 2003 amendment [does not] yield[] a readily discernable result," *id.* at 644, and declined to resolve the issue one way or another.

Importantly for present purposes, the Second Circuit underscored that the defendant's position here would break new ground.  *Weingarten* noted that "[h]ad [the defendant] prevailed on this retroactivity theory, the District Court would have been the first court to hold that retroactively extending a filing period for live charges is a presumptively impermissible retroactive effect under *Landgraf*."  865 F.3d at 58.  *Weingarten* also explained that such a

---

[13] *But see United States v. Schneider*, No. 10-29, 2010 WL 3656027, at *1 n.1 (E.D. Pa. Sep. 15, 2010) (noting the prosecutor's statement that § 3299 "does not appear to be retroactive," but not addressing the issue or reaching any related holding).

"novel holding would have been in direct conflict with" the Ninth Circuit's decision in *Leo Sure Chief*, *id.*, thus undercutting the defendant's argument that "the Ninth Circuit addressed an entirely different argument than the one [he] is making here."  (ECF No. 133 at 17.)  In reality, the defendant's proffered application of *Landgraf* is doctrinally innovative and incompatible with the weight of precedent.

**III.     Neither the rule of lenity nor the presumption in favor of repose can salvage the defendant's *Landgraf* claim.**

The defendant nonetheless argues that the Court should grant his motion to dismiss Count 3 under the rule of lenity.  He also relies heavily on *Toussie v. United States*, 397 U.S. 112 (1970), where the Supreme Court re-affirmed "the principle that criminal limitations statutes are 'to be liberally interpreted in favor of repose.'"  *Id.* at 115 (quoting *United States v. Scharton*, 285 U.S. 518, 522 (1932)).  Neither doctrine applies on the present facts.

To begin, the rule of lenity is a poor fit within the framework of *Landgraf*.  The rule is a tool of statutory construction which "comes into operation at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers."  *Chapman v. United States*, 500 U.S. 453, 463 (1991) (quoting *Callanan v. United States*, 364 U.S. 587, 596 (1961)).  But here, *Landgraf* itself tell us what to do if congressional intent is unclear:  we proceed to *Landgraf* step two in order to "determine whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed."  511 U.S. at 280.  Consistent with Justice Story, Judge Hand, and other longstanding authorities, the analysis at *Landgraf* step two in this case reveals that extending an unexpired statute of limitations is not truly retroactive at all.  The defendant's approach, by contrast, would entirely re-write *Landgraf* in its application to criminal

20

cases.  But the Supreme Court has indicated that "*Landgraf* analysis applies to both civil and criminal statutes."  *Weingarten*, 865 F.3d at 55 n.6 (citing *Johnson v. United States*, 529 U.S. 694, 701 (2000), and other circuit-level cases)).

The presumption in favor of repose is also ill-suited to this scenario.  The Supreme Court has invoked that presumption when assessing whether the *underlying conduct* is time-barred. *See, e.g.*, *Toussie*, 397 at 115 (cautioning that "the doctrine of continuing offenses should be applied in only limited circumstances"); *Scharton*, 285 U.S. at 522 (declining to categorize tax evasion as a species of criminal fraud subject to a longer limitations fraud).  Courts have also invoked the rule when confronting ambiguity about when a limitations period begins to run at all. *See United States v. McGoff*, 831 F.2d 1071, 1095 (D.C. Cir. 1987).  But here, the dispute involves the higher-level question of whether an extension of an unexpired limitations period is retroactive—and the answer to that question is "no."  Whatever the force of the rule of lenity, it does not "automatically permit[] a defendant to win."  *Muscarello v. United States*, 524 U.S. 125, 139 (1998).  The defendant tries to reach such a result by insisting on a clear-statement rule governing congressional intent.  Again, *Landgraf* assuredly could have adopted such a rule—but it did not.

Seeking to resist this logic, the defendant points to *United States v. Gentile*, 235 F. Supp. 3d 649, 655 (D.N.J. 2017) ("[W]hen *Toussie*, *Hughes* and *Landgraf* are read in conjunction it is apparent to this Court that it must interpret the statute of limitations in a manner favoring repose for Defendant.").  *Gentile*, however, is not persuasive here for several reasons.  In addition to the points articulated above about *Toussie*'s proper scope, the district court in *Gentile* was obligated to follow the Third Circuit's precedent in *Richardson*.  *See id.* (stating that the issue in *Richardson* was "identical to the matter *sub judice*").  But again, *Richardson* adopted a clear-

statement rule is that is incompatible with *Landgraf*.  By contrast, the most applicable Fourth Circuit precedent, *Cruz*, clarifies that expansions of limitations periods are not meaningfully retroactive at all.

The distinction between substantive and procedural rules may also be helpful.  A statute that would have the effect of reviving a time-barred prosecution as to which the limitations period has already run would clearly be substantive.  This is so because such a statute "works retroactive harm—a circumstance relevant to the applicability of a constitutional provision aimed at preventing unfair retroactive laws."  *Stogner*, 539 U.S. at 627.  Thus, the Supreme Court has "strictly construed the *Ex Post Facto* Clause to prohibit application of new statutes creating or increasing punishments after the fact."  *Landgraf*, 511 U.S. at 275 n.28.  But as several courts have reasoned, a statute that extends an *unexpired* limitations period is more like a procedural rule.  *See Texas Worker's Comp. Comm'n*, 65 F.3d at 46 (reasoning that a statute limitations is a procedural rule governing the initiation of an action, not the defendant's underlying conduct); *Knipp*, 963 F.2d at 844 ("[T]he defensive use of a statute of limitations is merely a procedural matter, and it follows that Congress' extension of the statute of limitations in this case did not violate the Ex Post Facto Clause.").  *Landgraf* was careful to note that the Supreme Court has "upheld intervening procedural changes even if application of the new rule operated to a defendant's disadvantage in the particular case."  511 U.S. at 275 n.28 (citing cases).  The same logic applies here.  Even if the extension of an unexpired limitations period could be said to "disadvantage" the defendant, that disadvantage is akin to a procedural rule change that has not traditionally been deemed impermissibly retroactive.

Finally, the defendant argues that even if the extension of a limitations period does not generally cause prejudice, it has prejudiced *him* because the government previously investigated

his conduct and declined to prosecute him.  The defendant does not, however, bring a free-standing due-process claim or estoppel challenge to the pending indictment.[14]  Nor has he made any allegation of governmental bad-faith or evidentiary spoliation that might warrant court intervention.  *Cf. United States v. Chandler*, 66 F.3d 1460, 1468 (8th Cir. 1995) (rejecting the argument "that the extension of the statute of limitations [was] … unconstitutional … as it exacerbated the difficulty in obtaining documents," where the defendant had made "no showing any document would have been more accessible had the limitations period not been extended").  As one court has held in a case where charges involving child exploitation were filed against a defendant but then dismissed for lack of evidence, "it [would] be proper for the Government to bring a subsequent indictment against him, if it is supported, as [§§ 3283 and 3299] reflect the public policy of allowing more time to prosecute those charged with offenses against children."  *United States v. Shaw*, No. 5:04-cr-14 (TBR), 2008 WL 65390, at *3 (W.D. Ky. Jan. 4, 2008).

Irrespective of this case's prior history, the defendant frames his motion as "present[ing] a pure question of statutory interpretation under the framework established in *Landgraf*."  (ECF No. 133 at 1–2.)  On those grounds, the defendant's motion is unavailing.

## Conclusion

The defendant advances the novel assertion that extension of an unexpired criminal statute of limitations is impermissible absent a clear statement of congressional intent.  That argument fails under *Landgraf*.  It is entirely possible to read the relevant statutes and conclude,

---

[14] Indeed, while the defendant asserts that the government closed a prior investigation, he never claims that he was *told* about that happening at the time.  Accordingly, it is difficult to understand how the prior (undisclosed) history of this case could have disadvantaged him.  What's more, the government represents that the prior investigation into the defendant's conduct related to matters different in kind from the sort of child abuse alleged in Count 3.

as have the Eighth and Ninth Circuits, that Congress did intend for them to apply to pre-enactment conduct.  Moreover, even if the Court were to conclude that evidence of intent is ambiguous, longstanding doctrine establishes that the extension of an unexpired limitations period is not impermissibly retroactive.  For these reasons, the Court should deny the defendant's motion to dismiss Count 3 of the indictment.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By: _____/s/_____

Jay V. Prabhu
Daniel T. Young
Assistant United States Attorneys
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Office:   (703) 299-3700
Fax:      (703) 299-3980
Email:   jay.prabhu@usdoj.gov
          daniel.young@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on October 21, 2019, I electronically filed a copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

By: _____/s/_____

Daniel T. Young
Assistant United States Attorney
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Office:   (757) 441-6331
Fax:      (757) 441-6689
E-mail:  daniel.young@usdoj.gov