## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
____
## Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    v.<br><br>GEORGE A. NADER<br><br>        Defendant. | Case No. 1:19-cr-00201-LMB |

## REPLY IN SUPPORT OF MOTION TO DISMISS
## COUNT THREE OF THE INDICTMENT

In Count Three of the Indictment, the Government seeks to prosecute Mr. Nader for alleged conduct that occurred in 2000, nearly twenty years ago. The Government investigated these allegations between 2002 and 2009 and ultimately declined to prosecute, correctly concluding that the applicable statute of limitations had expired. ECF No. 133 at 3-4. The Government closed the case in 2010 and returned or destroyed the evidence. *Id.* Now the Government seeks to revisit these old allegations, arguing that its previous position was incorrect, the statute of limitations never expired, and that the closed case should be reopened despite evidence destruction. None of the Government's arguments are availing. Count Three is time-barred, and must be dismissed.[1]

### I.    ARGUMENT

The inquiry into whether the 2003 and 2006 amendments to the limitations periods in 18 U.S.C. § 3283 and 18 U.S.C. § 3299 apply to pre-enactment conduct is governed by *Landgraf v.*

---

[1] Mr. Nader files this reply pursuant to Local Criminal Rule 47(F)(1).

*USI Film Products*, 511 U.S. 244 (1994), as applied in the context of a criminal statute of limitations, *Toussie v. United States*, 397 U.S. 112, 115 (1970).  *See* ECF No. 133 at 1-2; ECF No. 138 at 4 (agreeing that *Landgraf* applies).  Under *Landgraf*, these amendments cannot apply to the conduct alleged in the Indictment to have taken place in 2000.  Both the statutory text and legislative history of the amendments make clear that they were not intended to reach pre-enactment conduct: the amendments do not state that they apply retroactively; and indeed, Congress considered, and then removed, a retroactivity clause from the 2003 amendment, and the text that would ultimately become the 2006 law.  Congress thus spoke clearly: the amendments do not apply to pre-enactment conduct, nor should they.  Even assuming *arguendo* that the amendments are ambiguous on this point, they cannot be applied to the conduct alleged here without impermissible retroactive effects.

Nevertheless, the Government continues to insist that these amendments apply to the alleged 2000 conduct, basing this argument on what it states was a "clear congressional policy" from 2003 to 2006 to increase and ultimately eliminate the statute of limitations for certain offenses involving children.  ECF No. 138 at 6.  But the Government fails to reconcile this argument with the fact that, while the amendments consistently extended the limitations periods *prospectively*, none of the amendments indicate that they apply to *pre-enactment* conduct; in fact, legislative action decisively indicates that they do not.  The Government also fails to recognize the case-specific problems arising from retroactive application of these amendments.  As explained below, the Government's arguments must therefore fail.

### A.      *Landgraf* Step One: Statutory Interpretation

*The Text.*  Despite acknowledging that Congress removed retroactivity clauses from both § 3283 and the text that would become § 3299, the Government does not explain how the "scope-related" language from the statutes—"No statute of limitations that would otherwise preclude

prosecution . . ." and "Notwithstanding any other law . . . at any time without limitation . . ."—demonstrates legislative intent to apply these provisions to pre-enactment conduct.  ECF No. 138 at 5-6.  The Government simply relies on the text of the statutes—which it acknowledges do not include an express retroactivity clause.  ECF No. 138 at 5-6.  The Government's argument conflates Congress' intent to extend the limitations period (by overruling prior limitations periods) on the one hand with its intent to *exclude* pre-enactment conduct on the other hand, particularly when considering the importance of the rule of lenity in the context of analyzing criminal statutes of limitations.  *See United States v. McGoff*, 831 F.2d 1071, 1095 (D.C. Cir. 1987) (rule of lenity "has been applied not only to the interpretation of substantive criminal provisions, but to . . . statutes of limitations"); *United States v. Moazzeni*, 908 F. Supp. 2d 748, 750 (E.D. Va. 2012) (Hudson, J.) (noting that "criminal limitations statutes are to be liberally interpreted in favor of repose") (quoting *Toussie v. United States*, 397 U.S. 112, 115 (1970)).

The cases the Government relies upon do not support its position, or reconcile the fact that, under its interpretation of the statute, the removed retroactivity clause would have been superfluous.  Indeed, the cases the Government depends on largely fail to address Mr. Nader's arguments.  *United States v. Coutentos* was an ineffective-assistance-of-counsel case, and the court assessed neither *Landgraf* nor legislative intent in holding that § 3299 applied to pre-enactment conduct because the claim was not time-barred when it was enacted.  651 F.3d 809, 817-18 (8th Cir. 2011) ("At that time S.Z. and K.C. were ten and eleven years old respectively, *thus* the limitations period found in § 3283 governing the count for producing child pornography had not run, and § 3299 had the effect of modifying the limitations period that applied to that conduct.") (emphasis added).  Such conclusory language from an out-of-circuit opinion does not constitute "logic" that is "sufficient to defeat [Mr. Nader's] motion."  ECF No. 138 at 6-7.  Because the

important questions in this matter were neither raised nor explored in *Coutentos*, the case does not provide meaningful insight on the issue.

Notably, the Government declined to address *United States v. Schneider* beyond providing the Court with a citation in a footnote. In *Schneider*, as discussed in Mr. Nader's opening brief, the Government actually conceded that § 3299 "does not appear to be retroactive." No. CRIM. A. 10-29, 2010 WL 3656027, at *1 n.1 (E.D. Pa. Sept. 15, 2010), *aff'd*, 801 F.3d 186 (3d Cir. 2015). True, the analysis in *Schneider* was not a robust *Landgraf* assessment—but the Government did not call for it and conceded that § 3299 does not appear to be retroactive based on the principle discussed in *United States v. Richardson* that statutes of limitation are "presumed to operate prospectively in the absence of a clear expression to the contrary." 512 F.2d 105, 106 (3d Cir. 1975) (per curiam). Moreover, *Landgraf* was decided over fifteen years before *Schneider*. The Government would naturally have raised any perceived conflict between *Landgraf* and *Richardson* at that point.

The Government attempts to distinguish or minimize *Richardson*'s impact on this matter by contending that this principle is incorrect. It is correct, and Mr. Nader explains why below, but even if it is not, Count Three should be dismissed because the "clear expression," *id.*, is that neither § 3283 nor § 3299 are supposed to apply retroactively. *Compare* H.R. 1104, 108th Cong. § 202 (2003) (including an express retroactivity clause that would eventually be removed in addition to the "no statute of limitations" language) *with* 18 U.S.C. § 3283 (without the retroactivity clause) *and* 18 U.S.C. § 3299 (similar "scope-related language," but without the retroactivity clause).

The Government seeks further support in other out-of-circuit cases Mr. Nader addressed in his opening brief, but it declines to address the shortcomings Mr. Nader identified. *See* ECF No. 133 at 17-18. Principally, the Government fails to discuss the fact that these cases focus on a

4

distinct and irrelevant issue—the applicability of the *Ex Post Facto* Clause—and do not engage in a *Landgraf* analysis. *E.g., United States v. Jeffries*, 405 F.3d 682, 683-84 (8th Cir. 2005). The Government further neglects to explain *Jeffries*'s persuasive value in this case, given that the Eighth Circuit analyzed the 1990 enactment of § 3283, and thus could not consider the text or drafting history of the 2003 amendments (let alone § 3299). *Id.*

The Government also points to the *Jeffries* court's reliance on the title of § 3283. *See* ECF No. 138 at 7. But a statute's title cannot surmount legislative ambiguity in the statute itself. *See INS v. St. Cyr*, 533 U.S. 289, 308-09 (2001) ("While the title of § 401(e) . . . would seem to support the INS' submission, the actual text of that provision does not. As we have previously noted, a title alone is not controlling."); *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) ("[T]he title of a statute . . . cannot limit the plain meaning of the text."). The *Gentile* court found "unpersuasive" the Government's contention that titling a law as an "Extension of Statute of Limitations" sufficiently expressed legislative intent to apply the limitations period retroactively, noting that although "Section 3301 is entitled '*Extension* of Statute of Limitations for Securities Fraud Violations,'" it should not be applied retroactively because it  "contains no language that could possibly be construed to mean Congress clearly intended [it] to be applied retroactively." *United States v. Gentile*, 235 F. Supp. 3d 649, 655-56 (D.N.J. 2017) (emphasis in original); *see O'Hara v. Nika Techs., Inc.*, 878 F.3d 470, 475 (4th Cir. 2017) ("Courts are not free to read into the language [of a statute] what is not there, but rather should apply the statute as written.").

Similarly, the Government relies on *United States v. Leo Sure Chief*, but again, declines to address Mr. Nader's discussion of how the Ninth Circuit addressed a different argument from the one at issue. 438 F.3d 920, 922-23 (9th Cir. 2006). There, the defendant argued that when Congress extended the limitations period to the life of the child in 2003, the five-year limitations

period in § 3282 applied to any pre-2003 conduct. *Id.* at 922-23. In rejecting that distinct argument, the panel concluded that retroactive application would not violate the *Ex Post Facto* Clause because the prior limitations period had not yet expired—a conclusion neither party disputes. *Id.* at 924.

Like *Chief*, *United States v. Johns* concerned distinct legal arguments: whether a prosecution was time-barred by § 3282 (the general five-year limitations period) and whether "Congress can[] extend the limitation period for bringing prosecutions under repealed statutes." 15 F.3d 740, 743-44 (8th Cir. 1994). The court held that "[p]rosecutions may be brought under a repealed statute unless the repealing act expressly provides to the contrary" without violating the *Ex Post Facto* Clause. *Id.* Further, *Johns* was decided before *Landgraf*, so it could not and did not analyze the issue using the *Landgraf* framework. *Compare id.* (decided Jan. 25, 1994) *with Landgraf*, 511 U.S. 244 (decided Apr. 26, 1994). These critical shortcomings distinguish both *Chief* and *Johns* from this case.

The district court cases the Government cites (at 18-19) are likewise distinguishable. *Pittman* relied on the Ninth Circuit's decision in *Chief* as controlling authority, and did not discuss either *Landgraf* or the legislative history raised here; neither did *Vickers*, *Sensi*, or *Shepard*. *See United States v. Pittman*, No. 13-cr-4510-JAH, 2015 WL 4772731, at *2-4 (S.D. Cal. Aug. 12, 2015); *see generally United States v. Vickers*, No. 13-cr-128-A, 2014 WL 1838255 (W.D.N.Y. May 8, 2014); *United States v. Shepard*, No. 4:10-cr-415, 2011 WL 3648065 (N.D. Ohio Aug. 18, 2011); *United States v. Sensi*, No. 3:08-cr-253 (WWE), 2010 WL 2351484 (D. Conn. June 7, 2010). *Sensi* relied on *Chief* as well. 2010 WL 2351484, at *1-2. Finally, *Jackson* addressed arguments based on the *Ex Post Facto* Clause, and similarly does not address *Landgraf* or the statutory interpretation issues Mr. Nader has raised. *See United States v. Jackson*, No. 08-cr-

00225-KD-C, 2008 WL 11339647, at *2-4 (S.D. Ala. Sept. 11, 2008).  The Government's lead

cases are unpersuasive and it has not refuted these deficiencies, nor can it.

   ***Legislative Intent and History.***  With respect to legislative history, the Court here has the

benefit of extensive and clear history that requires neither inference nor speculation.  As the

Government acknowledges:  "The question . . . is **what Congress intended** to accomplish in

passing §§ 3283 and 3299."  ECF No. 138 at 12 (emphasis added).  The Government correctly

recognizes: "Congress did not explicitly state that § 3299's repeal of the statute of limitations

should apply to pre-enactment conduct."  *Id.* at 8.  Furthermore, Congress expressly declined to

include a retroactivity clause in the 2003 PROTECT Act, even when one was included in the House

version of the bill—that later became § 3299—*without* the retroactivity clause.  *See* Pub. L. No.

108-21, § 202, 117 Stat. 650, 660 (2003); 18 U.S.C. § 3283 (2003); Proposed amendment by Rep.

Sensenbrenner to S. 151, 108th Cong. § 202 (2003) (proposing to add text of H.R. 1104, 108th

Cong.), 149 Cong. Rec. H2405, H2417 (Mar. 27, 2003)18 U.S.C. § 3299 (2006).

   Both Mr. Nader and the Government rely on statements of Senator Patrick Leahy, the then-

Judiciary Committee Ranking Member, who spoke on behalf of the conference committee that

resolved conflicts between the House and Senate versions of the PROTECT Act.  Senator Leahy's

statements reflect the collaborative efforts of the House and Senate to reconcile differences in the

legislation resulting from, among other considerations, the testimony of representatives from the

Department of Justice about the permissibility of applying these laws to pre-enactment conduct.

*See Child Abduction Prevention Act and the Child Obscenity and Pornography Prevention Act of*

*2003, Hearing on H.R. 1104 and H.R. 1161 Before the Subcomm. on Crime, Terrorism &*

*Homeland Sec. of the H. Comm. on the Judiciary*, 108th Cong. 28 (2003) (testimony of Associate

Deputy Attorney General Daniel P. Collins stating that "[t]he [House] proposal in section 202 [to

7

amend § 3283] . . . parallels the USA PATRIOT ACT in providing that its statute of limitations reform will apply retroactively to offenses committed before its enactment").

Mr. Nader quoted remarks from Senator Leahy in his opening brief.  ECF No. 133 at 9. The Government contends these quotations are "factually misleading" because Senator Leahy stated:

> A final point on section 202:  I am pleased that the conference agreed to drop language from the original House-passed bill that would have extended the limitations period retroactively.  That language, *which would have revived the government's authority to prosecute crimes that were previously time-barred*, is of doubtful constitutionality.  We are already pushing the constitutional envelope with respect to several of the "virtual porn" provisions in this bill.  I am pleased that we are not doing so in section 202 as well.

ECF No. 138 at 8-9 (emphasis in original) (citing 149 Cong. Rec. S5137, S5147 (Apr. 10, 2003) (statement of Sen. Leahy)).  The Government's argument is effectively that, because *Stogner v. California*, 539 U.S. 607 (2003), alleviated Senator Leahy's concern that retroactive application was "of doubtful constitutionality," then the intent that the law should not be applied to pre-enactment conduct should be disregarded.  Not so.

First, Senator Leahy expressed additional concerns for not applying the statute of limitations boundlessly—which the Government did not provide in its opposition—and which show that Congress also codified § 3283 without a retroactivity provision because it was concerned about the speed with which law enforcement responded to claims of child abuse:

> During the conference, I expressed concern that section 202's lifetime extension of the limitations period would **reduce law enforcement's incentive to move quickly and aggressively** to solve these very serious crimes.  I therefore proposed a modification . . . that a 3 or 5 year limitations period should exist, and start to run, **once the facts constituting the offense were known,** or reasonably should have been known, by Federal law enforcement authorities. This modification would have benefitted victims by requiring authorities to focus on their case, **and to take immediate steps to bring the perpetrator to justice, as soon as the crime was brought to their attention.**

149 Cong. Rec. S5137, S5147 (Apr. 10, 2003) (statement of Sen. Leahy) (emphases added)).

Second, whether the legislature's intention behind enacting the law materialized is irrelevant to understanding and respecting that intention. Neither § 3283 nor § 3299 were supposed to apply retroactively. Whether it was because law enforcement needed to investigate more quickly, *Ex Post Facto* Clause concerns, or because Congress initially wanted to make the law apply to pre-enactment conduct and then decided against it (as it did in 2003), it is unnecessary for the Court to attempt to glean what Congress *would have* done with the benefit of *Stogner*. Rather, it is necessary to determine *what Congress did*, which was adopt laws that intentionally excluded a retroactivity clause.

Regarding § 3299, the Government's opposition does not address the legislature's removal of the retroactivity provision from the 2003 House version of the PROTECT Act (whose language is otherwise identical to § 3299). *See* Proposed amendment by Rep. Sensenbrenner to S. 151, 108th Cong. § 202 (2003) (proposing to add text of H.R. 1104, 108th Cong.), 149 Cong. Rec. H2405, H2417 (Mar. 27, 2003). The retroactivity clause was intentionally dropped before § 3283 was passed into law. The House thought that a retroactivity clause needed to be attached to the language that would later become § 3299, but the Senate did not want the law to apply retroactively, so the conference committee did not adopt the House version, and the version enacted in 2006 did not include the retroactivity clause that was in the 2003 House-passed version of the PROTECT Act. 18 U.S.C. § 3299. Mr. Nader raised this argument in his opening brief but the Government's opposition confronts neither this key removal nor the Government's concession in *Schneider* that § 3299 does not appear to apply retroactively.

Instead, the Government offers only one sentence from thousands of pages of legislative history. ECF No. 138 at 9 (Statement of Sen. Kyl, 152 Cong. Rec. S8012, S8025 (July 20, 2006)

("Section 211 suspends the statute of limitations for all Federal felony offenses of sexual abuse, sex trafficking, or child pornography.").[2]  This argument disregards what actually happens when Congress wants to apply laws retroactively—which Mr. Nader described in his opening brief: Congress includes, *and knows how to include*, retroactivity clauses.[3]  *See Liberty Univ., Inc. v. Geithner*, 671 F.3d 391, 411 n.12 (4th Cir. 2011)[4] ("The Supreme Court has long held that such statements are of little assistance in ascertaining congressional intent."); *Muffley ex rel. NLRB v. Spartan Mining Co.*, 570 F.3d 534, 540 n.2 (4th Cir. 2009) ("[E]ven if" floor statements supported a certain position, "these fragments of legislative history could not undermine" a court's "duty to enforce the unambiguous language . . . ."); *Runnebaum v. NationsBank of Md., N.A.*, 123 F.3d 156, 169 n.7 (4th Cir. 1997) ("[W]e find it unfathomable that the [floor] statements of one Senator and

---

[2] The Government cites this as 149 Cong. Rec. S8012, rather than 152 Cong. Rec. S8012.  ECF No. 138 at 9.

[3] As discussed, many other statutes also include language virtually identical to the retroactivity clause that was rejected by Congress here.  *See, e.g.,* Justice for All Act of 2004, Pub. L. No. 108-405, § 204, 118 Stat. 2260, 2271 (2004) (providing that "[i]n a case in which DNA testing implicates an identified person in the commission of a felony . . . no statute of limitations that would *otherwise preclude* prosecution of the offense shall preclude such prosecution until a period of time following the implication of the person by DNA testing has elapsed that is equal to the otherwise applicable limitation period" and explaining that "[t]he amendments made [to 18 U.S.C. § 3297] shall apply to the prosecution of any offense committed *before*, on, or after the date of the enactment of this section *if the applicable limitation period has not yet expired*") (emphases added); USA PATRIOT ACT of 2001, Pub. L. No. 107–56, § 809(b), 115 Stat. 272, 380 (2001) ("The amendments made by this section shall apply to the prosecution of any offense committed before, on, or after the date of the enactment of this section."); Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, § 221(c), 110 Stat. 1214, 1243 (1996) ("The amendments made by this subtitle shall apply to any cause of action arising before, on, or after the date of the enactment of this Act."); Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104–134, § 802, 110 Stat. 1321 (1996) (The amendments to 18 U.S.C. § 3236 shall apply to relief granted "before, on, or after the date of the enactment of this title."); Crime Control Act of 1990, Pub. L. No. 101-647, § 2505(b), 104 Stat. 4789, 4862 (1990) ("The amendments [to 18 U.S.C. § 3293] shall apply to any offense committed before the date of the enactment of this section.").

[4] The judgment was abrogated on other grounds by *National Federation of Independent Businesses v. Sebelius*, 567 U.S. 519 (2012).

three Congressmen could serve as the expression of [Congress'] collective intent."); Patricia M.

Wald, *Some Observations on the Use of Legislative History in the 1981 Supreme Court Term*, 68

IOWA L. REV. 195, 214 (1983) (using legislative history in this way can be similar to "looking over

a crowd and picking out your friends").   Not one of the other 20 senators who commented on the

bill remarked on this purported retroactive effect.   *See* 152 Cong. Rec. S8012 (July 20, 2006).

Indeed, Senator Grassley stated that the Adam Walsh Act (the 2006 law codifying § 3299) was a

continuation of the 2003 PROTECT Act, further strengthening the ties between the two pieces of

legislation, and thus increasing the importance of the negative implication from the House-passed

bill.   *See id.* at S8021 ("Three years ago, we passed the PROTECT Act . . . .   This bill complements

the process we started with the PROTECT Act, and adds much needed additional protections for

children and for our communities.").   And certainly the Government would have been aware of

this statement when conceding in *Schneider* that § 3299 appears not to apply retroactively.

   **Landgraf *Promotes the Use of Legislative Intent*.**   The Government further argues that

*Landgraf* rejects negative implication.   ECF No. 138 at 9-10.   *Landgraf* does not preclude looking

to negative implication as a tool for statutory understanding; indeed, the Supreme Court in other

instances has recognized its usefulness.   *Martin v. Hadix*, 527 U.S. 343, 356 (1999); *see* ECF No.

133 at 12.   Rather, *Landgraf* ruled on the persuasiveness of a negative implication argument *in

that particular instance*.   511 U.S. at 261.   As the Government notes, the Supreme Court stated:

"[t]he omission of the elaborate retroactivity provision *of the 1990 bill*—which was by no means

the only source of political controversy over *that* legislation—is not dispositive because it does

not tell us precisely where the compromise was struck *in the 1991 Act*."   *Id.* at 256 (emphases

added).   The Court continued: "[i]t [was] entirely possible—indeed, highly probable—that,

because it was unable to resolve the retroactivity issue with the clarity of the 1990 legislation,

Congress viewed the matter as an open issue to be resolved by the courts." *Id.* at 261.  This is a specific ruling in light of the legislative history at issue in *Landgraf*.

Mr. Nader is not arguing that negative implication is always persuasive.  Rather, he argues that it is a viable method of statutory interpretation, and fully persuasive here, where the House included in its version of the PROTECT Act a retroactivity clause "identical" to the retroactivity provision included in the USA PATRIOT Act, after which the bill was modeled.  *See* H.R. 1104, 108th Cong. § 202 (2003); ECF No. 133 at 8-10 (discussing this history in detail); *see also, e.g.*, *Lindh v. Murphy*, 521 U.S. 320, 327 (1997) (noting that a simultaneously enacted provision on capital cases expressly required application to then-pending cases, and reasoning that this express requirement, by negative implication, showed that the amendments pertinent to non-capital cases were meant to apply only to cases filed after the amendments' enactment).  This retroactivity clause was removed before the 2003 amendment to § 3283 was enacted, and likewise was not included in the 2006 amendment.  *See* 18 U.S.C. § 3283 (2003); 18 U.S.C. § 3283 (2006).  The 2006 amendment to § 3299, moreover, modeled the language of the House bill proposed in 2003—but again, specifically omitted the retroactivity clause.  *Compare* 18 U.S.C. § 3299 *with* Child Abduction Prevention Act, S. 151, 108th Cong. (as an engrossed amendment in the House Mar. 27, 2003); *see also* ECF No. 133 at 10.  Here, unlike in *Landgraf*, the legislative history of these amendments provides valuable insight into Congress' intent: Congress deliberately chose not to include a retroactivity provision.

**Richardson *Informs Step One of* Landgraf.**  The Government contends that Mr. Nader's reliance on *United States v. Richardson*, 512 F.2d 105 (3d Cir. 1975) (per curiam), is misplaced because it is incompatible with *Landgraf*.  ECF No. 138 at 12.  However, rather than contradicting the first step of *Landgraf* (whether a statute "evince[s] any clear expression of intent on [its]

application to cases arising before [its] enactment," 511 U.S. at 264), *Richardson informs* the analysis of step one. *See Gentile*, 235 F. Supp. 3d at 654-56 (favorably citing *Richardson* in a *Landgraf* analysis). *Richardson*'s statement that "a law is presumed to operate prospectively in the absence of a clear expression to the contrary" reflects the principle that "[c]riminal statutes of limitations . . . are to be interpreted in favor of repose." 512 F.2d at 106; *see* ECF No. 138 at 12. That principle (and resulting presumption) is not distinct and incompatible from *Landgraf*'s instruction to proceed to step two if Congress does not speak clearly; instead, it informs the meaning of a "clear expression" from Congress, by instructing that the presumption of prospective operation is part of the calculus when determining Congress' meaning in the first instance. *See Richardson*, 512 F.2d at 106; *see also Gentile*, 235 F. Supp. 3d at 654.

### B. *Landgraf* Step Two: Retroactive Effect

The Government concedes that the second step of the *Landgraf* inquiry requires a "commonsense, functional judgment" in which "familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance." ECF No. 138 at 13-14 (quoting *Hadix*, 527 U.S. at 357-58, and *Landgraf*, 511 U.S. at 270). As Mr. Nader explained in his opening brief, if the Court continues to the second step of *Landgraf*, this stage of the analysis must likewise take into account other principles unique to the criminal context, such as the rule of lenity and principles of repose. *See* ECF No. 133 at 14-15. These considerations are likewise rooted in principles of fairness and settled expectations, and are thus entirely consistent with—and applicable to—the *Landgraf* analysis, as other courts have previously held. *See United States v. Miller*, 911 F.3d 638, 645 (1st Cir. 2018); *Gentile*, 235 F. Supp. 3d at 654; *see also Toussie*, 397 U.S. at 115.

The Government expresses concern that Mr. Nader's "proffered application of *Landgraf* is doctrinally innovative and incompatible with the weight of precedent." ECF No. 138 at 20. It is neither. *Miller* and *Gentile* explored the differences between civil and criminal statutes at the

second step of *Landgraf*, appropriately factoring in considerations of lenity and repose that simply do not exist in the civil context.  The "weight of precedent" the Government contends inures to its benefit concerns *Ex Post Facto* Clause analysis, which is not at issue.

The Government's analysis fails to apply those principles here.  It argues that there is no impermissible retroactive effect in applying the 2003 or 2006 statutes of limitations to pre-enactment conduct because the extensions "preserve[] the *status quo* by continuing to subject the defendant to potential prosecution *if his unlawful conduct comes to light*."  ECF No. 138 at 15 (emphasis added).  The unlawful conduct here had already come to light.  The status quo was the return of the evidence and a vested interest in repose.  The Federal Bureau of Investigation and the United States Attorney's Office for the Eastern District of Virginia investigated Mr. Nader for eight years between 2002 and 2009.  ECF No. 133 at 3-4.  They declined to prosecute, destroyed the evidence or returned it to Mr. Nader at his home in Washington, D.C., and closed the case in 2010.  *Id.*  Then, for almost a decade, the United States Attorney's Office did nothing.  The Federal Bureau of Investigation did nothing.  The *status quo* in this case was the Government's decision not to pursue charges, to destroy or return evidence, and to allow Mr. Nader to testify about Russian interference in the 2016 presidential election.  Indeed, the allegedly unlawful conduct came fully into the light and the case was cast aside, left to linger for eight years after it was closed.

This case exemplifies the kind of reliance interests and settled expectations that principles of lenity and repose are intended to protect, and which *Landgraf* requires courts to consider in determining whether applying a statute to pre-enactment conduct will have an impermissible retroactive effect.

The Government relies heavily on *Cruz v. Maypa*, 773 F.3d 138, 145 (4th Cir. 2014), but *Cruz* is distinguishable.  First, *Cruz* addresses a statute of limitations in a civil case, as the

Government concedes.  ECF No. 138 at 18.  *Cruz* therefore does not explore the unique protections afforded in the criminal context, which must be considered in analyzing a criminal statute of limitations under *Landgraf*.  *Cruz*, 773 F.3d at 145; ECF No. 133 at 14-15.

Second, while *Cruz* noted that *Landgraf* and the *Ex Post Facto* Clause are informed by the same retroactivity concerns, *Cruz* did not consider the extent to which the broader "antiretroactivity principle" differs from the *Ex Post Facto* Clause.  The Government argues that, by quoting *Stogner* (a case solely focused on *Ex Post Facto*), the Fourth Circuit "effectively incorporate[ed] Judge Hand's discussion of unexpired criminal statutes of limitations into Fourth Circuit law."  ECF No. 138 at 18.  But such a transitive argument is tenuous at best, as it reads an unstated principle into the case.  Even if the Court did intend this, it would only be *dicta*, and would address only the body of law surrounding the Constitution and the *Ex Post Facto* clause.  Thus, *Cruz* does not dictate the result here.  Nor should it.  Neither party briefed the question in the context of a criminal statute of limitations, the district court did not have the opportunity to review the question in that light, and nor did the Fourth Circuit.

Finally, the Government attempts to discount Mr. Nader's arguments regarding the longstanding principles of repose and the rule of lenity and their importance in the *Landgraf* analysis by arguing that Mr. Nader has not filed separate claims for due-process or estoppel.  ECF No. 138 at 22-23.  It is unclear why this is relevant, and the Government cites no case in support of its bizarre proposition that, by declining to bring such claims, Mr. Nader is somehow barred from arguing that the current statute of limitations is inapplicable to any pre-enactment conduct alleged in this case.  Rather, as discussed above, and as explained at length in Mr. Nader's opening brief, Mr. Nader's settled expectations are relevant to determining whether the statute of limitations has impermissible retroactive effect.  *See Gordon v. Pete's Auto Service of Denbigh,*

*Inc.*, 637 F.3d 454, 459 (4th Cir. 2011) ("The inquiry is . . . specifically 'whether applying the statute *to the person objecting* would have a retroactive consequence in the disfavored sense.'"); *Roe v. Howard*, No. 1:16-cv-562, 2018 WL 284977, at *4 (E.D. Va. Jan. 3, 2018); ECF No. 133 at 13-16. Each of the cases on which the Government relies for support in this context concern *Ex Post Facto* Clause analysis, not the important and distinct considerations of repose that *Landgraf* separately and distinctly discusses.   *See* ECF No. 138 at 18-19.   The Court should not be misdirected by the body of cases holding that no impermissible retroactive effect occurs from an *Ex Post Facto* Clause violation when a new limitations period applies to a pre-enactment, live claim.  That is neither the question presented nor briefed.  Accordingly, the Court should grant the motion to dismiss Count Three.

## II.      CONCLUSION

For the reasons discussed above, Mr. Nader respectfully requests that the Court grant the motion to dismiss Count Three of the Indictment.

Dated: October 28, 2019                    Respectfully submitted,


KAISERDILLON PLLC

/s/ *Jonathan S. Jeffress*
Jonathan S. Jeffress (#42884)
Emily Anne Voshell (#92997)
Courtney Roberts Forrest (#76738)
1099 14th Street, NW
8th Fl. West
Washington, D.C. 20005
Tel: (202) 640-4430
Fax: (202) 280-1034
jjeffress@kaiserdillon.com
evoshell@kaiserdillon.com
cforrest@kaiserdillon.com

Timothy H. McCarten (#77044)
Clayton D. LaForge (#84075)
Savannah K. Burgoyne (#90596)
Zachary D. Williams (*pro hac vice*)
Jason J. Despain (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh St., NW
Suite 1000
Washington, D.C. 20004
Tel: (202) 637-2200
Fax: (202) 637-2201
Timothy.McCarten@lw.com
Clayton.LaForge@lw.com
Savannah.Burgoyne@lw.com
Zachary.Williams@lw.com
Jason.Despain@lw.com

Christopher J. Clark (*pro hac vice*)
LATHAM & WATKINS, LLP
885 Third Avenue
New York, NY 10022
Tel: (212) 906-2927
Fax: (212) 751-4864
Chris.Clark@lw.com

*Attorneys for Defendant*
*George Aref Nader*