IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) |
| GEORGE AREF NADER, | ) 1:19-cr-201 (LMB) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION

Before the Court is defendant George Nader's ("defendant" or "Nader") Motion to Dismiss Count Three of the Indictment, which alleges that defendant transported a minor with the intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a). Defendant moves for the dismissal of Count III on the ground that it is time-barred pursuant to 18 U.S.C. § 3283 (1994). For the reasons that follow, defendant's motion will be denied.

## I. BACKGROUND

### A. **Factual Background**

On July 3, 2019, a federal grand jury returned a three-count indictment charging defendant with one count of transportation of visual depictions of minors, in violation of 18 U.S.C. § 2252(a)(1) (Count I), one count of importation or transportation of obscene matters, in violation of 18 U.S.C. § 1462 (Count II), and one count of transportation of a minor with intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a) (Count III).[1] [Dkt 49, at

---

[1] 18 U.S.C. § 2423(a) states: "A person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce, or in any commonwealth, territory or possession of the United States, with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined under this title and imprisoned not less than 10 years or for life."

1–3]. Specifically, Count III alleges that "[i]n or about February 2000, [defendant] knowingly transported a 14-year old boy . . . from Europe to Washington-Dulles International Airport . . . and engaged in sexual acts with [him] . . . [at] [defendant's] residence in Washington, D.C." Id. at 3. The applicable statute of limitations at that time was 18 U.S.C. § 3283 (1994), which stated: "No statute of limitations that would otherwise preclude prosecution for an offense involving the sexual or physical abuse of a child under the age of 18 years shall preclude such prosecution before the child reaches the age of 25 years." It is undisputed that the alleged victim reached the age of 25 sometime in 2010 or 2011, and is still alive today.

B. **Statutory Background**

Over the last 30 years, several statutes of limitations, including multiple iterations of a single statute of limitations, have governed the timeliness of prosecutions for child sexual abuse offenses. Before 1990, the general, five-year statute of limitations for non-capital offenses applied to such offenses. See 18 U.S.C. § 3282.[2] In 1990, Congress enacted the Victims of Child Abuse Act, which included a specific statute of limitations for child abuse offenses under which a prosecution could be brought until the victim became 25 years old. See 18 U.S.C. § 3509(k).[3] In 1994, section 3509(k) was recodified without change as 18 U.S.C. § 3283. See 18 U.S.C. § 3283 (1994). This was the statute of limitations in effect at the time defendant allegedly committed the offense charged in Count III.

---

[2] 18 U.S.C. § 3282 states: "Except as otherwise provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed."

[3] 18 U.S.C. § 3509(k) (1990) stated: "No statute of limitations that would otherwise preclude prosecution for an offense involving the sexual or physical abuse of a child under the age of 18 years shall preclude such prosecution before the child reaches the age of 25 years."

In 2003, Congress enacted the Prosecutorial Remedies and Tools Against Exploitation of Children Today Act, which amended § 3283 and extended the time in which a prosecution could be brought to within the life of the victim. See 18 U.S.C. § 3283 (2003).[4] In January 2006, Congress enacted the Violence Against Women and Department of Justice Reauthorization Act, which again amended § 3283 and extended the time in which a prosecution could be brought to within the life of the victim or ten years after the offense, whichever was longer. See 18 U.S.C. § 3283.[5] Finally, in July 2006, Congress enacted the Adam Walsh Child Protection and Safety Act, which eliminated any time limit for prosecuting certain offenses involving minor victims. See 18 U.S.C. § 3299.[6] One such offense is the transportation of a minor with intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a), which is the statute that Count III alleges defendant violated. See id.

## II. DISCUSSION

### A. Standard of Review

"A motion to dismiss the indictment 'tests whether the indictment sufficiently charges the offense set forth against the defendant.'" United States v. Habteyes, 356 F. Supp. 3d 555, 557–58 (E.D. Va. 2018) (quotation omitted). "In this respect, the standard an indictment must meet is

---

[4] 18 U.S.C. § 3283 (2003) stated: "No statute of limitations that would otherwise preclude prosecution for an offense involving the sexual or physical abuse, or kidnapping, of a child under the age of 18 years shall preclude such prosecution during the life of the child."

[5] 18 U.S.C. § 3283 states: "No statute of limitations that would otherwise preclude prosecution for an offense involving the sexual or physical abuse, or kidnapping, of a child under the age of 18 years shall preclude such prosecution during the life of the child, or for ten years after the offense, whichever is longer."

[6] 18 U.S.C. § 3299 states: "Notwithstanding any other law, an indictment may be found or an information instituted at any time without limitation for any offense under section 1201 involving a minor victim, and for any felony under chapter 109A, 110 (except for section[s] 2257 and 2257A), or 117, or section 1591."

3

found in [Federal Rule of Criminal Procedure 7(c)(1)], which provides that an indictment need only contain 'a plain, concise, and definite written statement of the essential facts constituting the offense charged.'" Id. at 558 (quotation omitted). "It is well-settled that under this standard, an indictment is sufficient '(1) if it alleges the essential elements of the offense, that is, it fairly informs the accused of what he is to defend; and (2) if the allegations will enable the accused to plead an acquittal or conviction to bar a future prosecution for the same offense.'" Id. (quotation omitted). When a defendant seeks to dismiss one or multiple counts of a multi-count indictment, "each count is viewed as a separate indictment for purposes of determining its sufficiency." Id. (quotation omitted).

A motion to dismiss that asserts a "failure to comport with the applicable statute of limitations" asserts a failure to allege the essential elements of the offense. United States v. Magalnik, 160 F. Supp. 3d 909, 913 (W.D. Va. 2015). "When considering such a motion, the court must accept all allegations in the indictment as true." Id. at 914. "The statute of limitations is an affirmative defense that must be raised by a defendant;" however, once raised, "[t]he government bears the burden of proving that it began its prosecution within the statute of limitations period." Id. at 915 (quotation omitted) (alteration in original).

B. **Analysis**

The sole issue in this motion to dismiss is which statute of limitations governs the timeliness of defendant's prosecution under Count III. It is undisputed that if Count III is governed by 18 U.S.C. § 3283 (1994), which was the statute of limitations in effect when the charged conduct occurred in February 2000, then Count III must be dismissed because the victim reached the age of 25 sometime in 2010 or 2011, approximately eight years before the indictment was returned in July 2019. As previously discussed, before the alleged victim reached the age of 25, Congress enacted three statutes that either expanded the statute of limitations set out in 18

4

U.S.C. § 3283 (1994) or eliminated the applicability of that statute of limitations altogether for the offense charged in Count III. See 18 U.S.C. §§ 3283 (2003), 3283, 3299. It is also undisputed that if the timeliness of defendant's prosecution under Count III is governed by any one of these three statutes, then Count III is not time-barred because, with regard to §§ 3283 (2003) and 3283, the victim is still alive, and with regard to § 3299, the transportation of a minor with intent to engage in criminal sexual activity in violation of 18 U.S.C. § 2423(a) is one of the offenses for which there is no statute of limitations. Accordingly, the question before the Court is whether any one of these three statutes can be applied retroactively to defendant's conduct such that his prosecution under Count III is timely. Whether §§ 3283 (2003), 3283, or 3299 can be applied retroactively are issues of first impression in the Fourth Circuit.

The parties' positions can be summarized as follows. Defendant argues that Congress intended these statutes to apply only prospectively, or at least did not express a contrary intent sufficient to overcome the longstanding presumption against retroactivity. The government argues that the presumption against retroactivity has not been triggered in this case because application of these statutes to defendant's conduct would not have an impermissible retroactive effect. The government has the better argument.

"[T]he principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal." United States ex rel. May v. Purdue Pharma L.P., 737 F.3d 908, 915 (4th Cir. 2013) (quotation omitted) (alteration in original). Accordingly, "[r]etroactivity is not favored in the law." Frontier-Kemper Constructors, Inc. v. Dir., Office of Workers' Comp. Programs, 876 F.3d 683, 688 (4th Cir. 2017) (quotation omitted) (alteration in original). "This maxim is reflected in a presumption against statutory retroactivity that is 'deeply rooted in our jurisprudence[] and embodies a legal

doctrine centuries older than our Republic.'" Gordon v. Pete's Auto Serv. of Denbigh, Inc., 637 F.3d 454, 458 (4th Cir. 2011) (quotation omitted). "When triggered, the presumption against retroactivity instructs courts not to apply a statute to conduct that took place before the statute went into effect" unless "there is 'clear congressional intent favoring such a result.'" Id. (quotation omitted).

"The framework for determining whether a statute applies retrospectively to pre-enactment conduct is set forth in Landgraf v. USI Film Products, 511 U.S. 244 (1994)." Cruz v. Maypa, 773 F.3d 138, 144 (4th Cir. 2014). "Landgraf requires a three-step analysis." Id. "First, [the court] must ask 'whether Congress has expressly prescribed the statute's proper reach.'" Baldwin v. City of Greensboro, 714 F.3d 828, 836 (4th Cir. 2013) (quotation omitted). If so, "'there is no need to resort to judicial default rules,' and hence, the presumption against retroactivity does not apply;" rather, the court must heed Congress's express command, and the inquiry ends at step one. Ward v. Dixie Nat. Life Ins. Co., 595 F.3d 164, 172 (4th Cir. 2010) (quotation omitted). "Second, if 'the statute contains no such express command,'" then the court must ask "whether the new statute would have [a] retroactive effect as applied to the particular case" before it. Baldwin, 714 F.3d at 836 (quotation omitted). If not, "then the presumption against retroactivity is not triggered;" rather, "the court must 'give effect to Congress's latest enactment,'" and the inquiry ends at step two. Gordon, 637 F.3d at 458 (quotation omitted). Third, if the new statute would have a retroactive effect, "the presumption [against retroactivity] is triggered, and the court must then inquire . . . whether the presumption is overcome with 'clear congressional intent' in favor of retroactivity." Ward, 595 F.3d at 172 (quotation omitted). If not, "then the statute must be construed not to apply to pre-enactment conduct." Baldwin, 714 F.3d at 836 (quotation omitted).

6

At Landgraf's first step, Congress can expressly prescribe that a statute apply retroactively, or it can expressly prescribe that a statute apply only prospectively. See Velasquez-Gabriel v. Crocetti, 263 F.3d 102, 106 (4th Cir. 2001). The standard for express prescription "is a 'demanding' one"—"[t]he prescriptive language in the statute must be . . . unequivocal." Jaghoori v. Holder, 772 F.3d 764, 770 (4th Cir. 2014) (quotation omitted). For example, it is not enough that Congress "appl[ied] the statute to an expansive category of cases," because the prescriptive language must specify the statute's "temporal reach, not merely its substantive reach." Ward, 595 F.3d at 173. In other words, the statute must contain language unequivocally "delineating the time period to which [it] applies." Id.

Accordingly, courts rarely dispose of the Landgraf analysis at step one. Indeed, courts often conclude, with little if any discussion of the matter, that Congress did not expressly prescribe the statute's temporal reach. See, e.g., Frontier-Kemper, 876 F.3d at 688 ("Congress has not expressly prescribed the temporal reach of [the statute]. Accordingly we consider [Landgraf's second step] . . . ."); Cruz, 773 F.3d at 144 ("Because Congress has not expressly indicated the [statute's] proper temporal scope, we proceed to the second Landgraf step."); Jaghoori, 772 F.3d at 770 ("We are satisfied that Congress did not expressly and unambiguously prescribe the proper reach of the [statute], and we proceed, accordingly, to Landgraf's second step."). Nevertheless, at step one, the court "of course begin[s] with the language of the statute, using the normal rules of statutory construction." Tasios v. Reno, 204 F.3d 544, 547 (4th Cir. 2000).

Here, neither § 3283 (2003), § 3283, nor § 3299 satisfy the demanding standard for express prescription because none of these statutes contains language unequivocally delineating the time period to which they apply. See supra nn. 4–6. Despite this self-evident conclusion, the

7

government argues that two phrases in these statutes mandate retroactive application: the phrase "[n]o statute of limitations that would otherwise preclude prosecution . . . shall preclude such prosecution" in §§ 3283 (2003) and 3283, and the phrase "[n]otwithstanding any other law, an indictment may be found or an information issued at any time without limitation" in § 3299. The cases cited by the government belie this argument by suggesting that both phrases merely "signal the drafter's intention that the provisions . . . override conflicting provisions of any other section." Cisneros v. Alpine Ridge Grp., 508 U.S. 10, 18 (1993); see, e.g., United States v. Miller, 911 F.3d 638, 644–45 (1st Cir. 2018) (acknowledging as much with regard to § 3283 (2003)). In other words, both phrases specify only the statutes' "substantive reach," and not the requisite "temporal reach." Ward, 595 F.3d at 173. That both phrases can reasonably be construed in this way is sufficient to defeat the government's argument, because it demonstrates that they fall short of language "unequivocally" delineating the time period to which these statutes apply. Jaghoori, 772 F.3d at 770 (quotation omitted).

On the other side, defendant argues that the legislative history of §§ 3283 (2003), 3283, and 3299, as well as negative inferences that can be drawn from the text of other statutes, demonstrate congressional intent that these statutes apply only prospectively. With regard to legislative history, there are two parts to defendant's argument. First, he cites to the House of Representatives' proposed version of § 3283 (2003), which included an explicit retroactivity provision,[7] and the Senate's proposed version of § 3283 (2003), which did not. Because the

---

[7] See 149 Cong. Rec. H2405-05 (2003) ("Notwithstanding any other provision of law, an indictment may be found or an information instituted at any time without limitation for any offense under section 1201 involving a minor victim, and for any felony under section 1591, 2241, 2242, 2244(a)(1), 2244(a)(2), 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, 2423, or 2425... The amendments made by this section shall apply to the prosecution of any offense committed before, on, or after the date of the enactment of this section.").

8

Senate's proposed version prevailed at conference, defendant maintains that "Congress deliberately removed the retroactivity provision." Defendant's Memorandum in Support at 9. In support of this argument, defendant emphasizes that Senator Patrick Leahy, then-Ranking Member of the Senate Judiciary Committee, explained that "the conference agreed to drop language from the original House-passed bill that would have extended the limitations period retroactively." See 149 Cong. Rec. S5137 (2008). Second, defendant argues that because a retroactivity provision was never "reinserted" in either §§ 3283 or 3299, Congress in each instance reaffirmed the prospective intent expressed in § 3283 (2003). Defendant's Memorandum in Support at 10. In support of this argument, defendant emphasizes that § 3283 merely amended § 3283 (2003), and that § 3299 essentially mirrors the House-passed version of § 3283 (2003), with the only exception being the absence of the retroactivity provision.

With regard to other statutes, defendant asserts that "Congress understands how to apply extended statutes of limitations to pre-enactment conduct," as evidenced by the numerous statutes in which Congress has included express retroactivity provisions. Defendant's Memorandum in Support at 11. For example, defendant cites to the USA PATRIOT Act, Pub. L. No. 107-56, § 809(b), 115 Stat. 272, 380 (2001), the Justice for All Act, Pub. L. No. 108-405, § 204, 118 Stat. 2260, 2271 (2004), and the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, § 221(c), 110 Stat. 1214, 1243 (1996), each of which contains an express retroactivity provision. Defendant argues that the Court should draw a "negative i[nference]" from the inclusion of express retroactivity provisions in these and other statutes that Congress, by omitting an express retroactivity provision from §§ 3283 (2003), 3283, and 3299, intended that they apply only prospectively. Defendant's Memorandum in Support at 11.

Whatever the merits of these arguments, they are fundamentally misplaced within the first step of the Landgraf analysis, which asks only whether the statute at issue contains an express prescription as to its temporal reach, i.e., language unequivocally delineating the time period to which it applies. Jaghoori, 772 F.3d at 770. By placing these arguments within step one, defendant argues that congressional silence should constitute an express prescription; however, that argument simply ignores the well-established meaning of the word "express." See, e.g., Gordon, 637 F.3d at 459 ("The standard for expressly prescribing the temporal reach of a statute . . . require[es] [a] prescription that is truly express. . . ."). Because the texts of § 3283 (2003), § 3283, and § 3299 do not contain an express prescription as to their temporal reach, the Landgraf analysis cannot be resolved at step one, and must proceed to step two.

At Landgraf's second step, the court must evaluate whether the statute "would have [a] genuinely 'retroactive' effect" as applied to the particular case before it. May, 737 F.3d at 915 (quotation omitted). Importantly, "[a] statute 'does not operate retrospectively merely because it is applied in a case arising from conduct antedating the statute's enactment.'" Frontier-Kemper, 876 F.3d at 688 (quotation omitted). "Instead, [the court] must examine 'whether the new [statute] attaches new legal consequences to events completed before its enactment' in a way that offends 'familiar considerations of fair notice, reasonable reliance, and settled expectations.'" Id. (quotation omitted). A statute operates retroactively if it "would impair the rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." Cruz, 773 F.3d at 144 (quotation omitted). "This analysis 'is narrow, for it asks not whether the statute may possibly have an impermissible retroactive effect in any case, but specifically whether applying the statute to the person objecting would have a[n] [impermissible] retroactive [effect].'" Baldwin, 714 F.3d at 836

(emphasis in original). If the statute does not have a retroactive effect, "then the presumption against retroactivity is not triggered;" rather, "the court must 'give effect to Congress's latest enactment,'" and the inquiry ends at step two. Gordon, 637 F.3d at 458 (quotation omitted). If it does have a retroactive effect, then the court must proceed to Landgraf's third step. Id.

The Fourth Circuit has twice applied Landgraf's second step to a statute of limitations, and both cases are instructive here. In Baldwin, the Fourth Circuit considered the timeliness of the plaintiff's Uniform Services Employment and Reemployment Rights Act ("USERRA") claims against his former employer, who he claimed had failed to retain and reemploy him on the basis of his membership in the United States Coast Guard. 714 F.3d at 831–32. Baldwin's USERRA claims had accrued on January 23, 2003, and at that time, they were subject to the four-year statute of limitations set out in 28 U.S.C. § 1658(a). Id. at 831, 839. Accordingly, Baldwin's claims were set to expire on January 23, 2007, a deadline that was later tolled until March 24, 2008. Id. at 839–40. On October 10, 2008, more than six months after Baldwin's claims expired, Congress enacted the Veterans' Benefit and Improvement Act ("VBIA"), which provided that "there shall be no limit on the period for filing [USERRA claims]." Id. at 835 (quoting 38 U.S.C. § 4327(b)). Baldwin filed his USERRA claims on September 29, 2009, and asserted that they were timely pursuant to the VBIA's elimination of any statute of limitations for such claims. Id. at 839.

At Landgraf's second step, the Fourth Circuit held that the VBIA would have an impermissible retroactive effect as applied to the plaintiff's claims. Id. at 837. The court reasoned that "Baldwin's claims expired on March 24, 2008, more than six months before the VBIA was enacted on October 10, 2008," and that as a result, "applying § 4327(b) retroactively would attach a new legal consequence to the expiration of Baldwin's claims" in that his claims

"would be allowed to proceed rather than be barred." Id. at 836. Accordingly, the court proceeded to Landgraf's third step, where it held that the presumption against retroactivity had not been overcome because nothing "indicate[ed] 'clear congressional intent' that [the VBIA] should apply to claims already barred by an unambiguous statute of limitations." Id. at 837 (quotation omitted).

Subsequently, in Cruz, the Fourth Circuit considered the timeliness of the plaintiff's Victims of Trafficking and Violence Protection Act ("TVPA") claims against her former employers, whom she claimed had obtained her labor through involuntary servitude. 773 F.3d at 143. Cruz's TVPA claims had accrued sometime between March 17, 2002 and January 17, 2008, and at that time, they were subject to the four-year statute of limitations set out in 28 U.S.C. § 1658(a). Id. at 144, 148. Accordingly, Cruz's claims were set to expire sometime between March 17, 2006 and January 17, 2012. Id. at 146. On December 23, 2008, Congress enacted the Trafficking Victims Protection Reauthorization Act ("TVPRA"), which provided that TVPA claims must be brought within 10 years after the cause of action accrues. Id. at 144 (citing 18 U.S.C. § 1595(c)). Cruz filed her TVPA claims on July 16, 2013, and asserted that they were timely pursuant to the TVPRA's extension of the statute of limitations for such claims. Id.

At Landgraf's second step, the Fourth Circuit held that the TVPRA would not have an impermissible retroactive effect as applied to the plaintiff's claims to the extent that the claims "were unexpired at the time of its enactment." Id. at 145. The court reasoned that Baldwin "suggested a distinction between expired claims and claims that were alive when the new limitations period was enacted," and that such a distinction "ma[de] sense for two reasons." Id. First, "[a]s long as the claims were alive at enactment, extending a statute of limitations . . . does not introduce new legal consequences" because "the party already faced [legal consequences]

12

under the shorter limitations period;" rather, it "merely prolongs the time during which legal consequences can occur." Id. Second, "in the criminal context, there is a consensus that extending a limitations period before prosecution is time-barred does not run afoul of the Ex Post Facto Clause of the Constitution"—which is "informed by the same retroactivity concerns" as Landgraf—"because a defendant facing unexpired claims has never been 'safe from . . . pursuit,' and has always had incentive to preserve exculpatory evidence." Id. (quotation omitted) (last alteration in original). Accordingly, the court remanded Cruz's TVPA claims to the district court to determine exactly when they expired vis à vis the enactment of the TVPRA. Id. at 146.

Applying the reasoning of Baldwin and Cruz to defendant's case, it is clear that the application of §§ 3283 (2003), 3283, or 3299 to Count III would not have an impermissible retractive effect because each statute was enacted before the statute of limitations set out in 18 U.S.C. § 3283 (1994) had expired, i.e., before the victim reached the age of 25. As Cruz made clear, "applying [an] extended limitations period to claims that were unexpired at the time of its enactment does not give rise to an impermissible retroactive effect under Landgraf." 773 F.3d at 145. Accordingly, "the presumption against retroactivity is not triggered," and the inquiry ends at step two; the court "must 'give effect to Congress's latest enactment,'" § 3299, which, as previously discussed, renders defendant's prosecution under Count III timely. Gordon, 637 F.3d at 458 (quotation omitted).

This result is in accord with virtually all of the out-of-circuit cases that have addressed the retroactivity of §§ 3283 (2003), 3283, and 3299. For instance, in Weingarten v. United States, the Second Circuit considered the retroactivity of § 3283 (2003) in the context of an ineffective assistance of counsel claim. 865 F.3d 48, 58 (2d Cir. 2017). In holding that the habeas petitioner was "not entitled to relief under § 2255 because . . . [his] retroactivity argument was

not so obvious that it was objectively unreasonable for his trial counsel to forgo it," the court explained that "had [the petitioner] prevailed on []his retroactivity theory, the District Court would have been the first court to hold that retroactively extending a filing period for live charges is a presumptively impermissible retroactive effect under Landgraf." Id. The court recognized that "[t]he vast weight of retroactivity decisions" support the view that "retroactively revoking a vested statute of limitations defense is different from retroactively extending the filing period for a still viable claim." Id. at 57.

Defendant tries to overcome the impact of Baldwin and Cruz by arguing that both decisions involved civil statutes of limitations, as did most of the cases cited in Weingarten, and that "the criminal context is fundamentally different." Defendant's Memorandum in Support at 14. Many decisions analyzing the same criminal statutes at issue here cast doubt on that argument. See, e.g., Weingarten, 865 F.3d at 58; see also United States v. Leo Sure Chief, 438 F.3d 920, 924 (9th Cir. 2006) (analyzing § 2383 (2003)); United States v. Jeffries, 405 F.3d 682, 685 (8th Cir. 2005) (analyzing 18 U.S.C. § 3509(k), which was recodified without change as § 2383 (2003)); United States v. Vickers, 2014 WL 1838255, at *9 (W.D.N.Y. May 8, 2014) (analyzing § 3299); United States v. Shepard, 2011 WL 3648065, at *3 (N.D. Ohio Aug. 18, 2011) (analyzing § 3299); United States v. Sensi, 2010 WL 2351484, at *2 (D. Conn. June 7, 2010) (analyzing §§ 3293 (2003), 3283, and 3299) ("Congress may extend the statute of limitations on a criminal statute, and the government may bring charges under such extension, provided that the original statute of limitations had not yet lapsed when the extension went into effect.").

Moreover, as previously discussed, the Fourth Circuit acknowledged in Cruz that, "in the criminal context, there is a consensus that extending a limitations period before prosecution is

time-barred does not run afoul of the Ex Post Facto Clause of the Constitution." See 773 F.3d at 145 ("All of the circuits that have addressed the issue . . . have uniformly held that extending a limitations period before the prosecution is barred does not violate the Ex Post Facto Clause." (quotation omitted)). Accordingly, the case law strongly supports the proposition that the distinction between applying a statute that extends or eliminates a statute of limitations period to claims that were expired at the time of its enactment, and applying it to claims that were unexpired at the time of its enactment, is applicable to both civil and criminal statutes of limitations.

This analysis notwithstanding, defendant argues that the cases applying this distinction to both civil and criminal statutes of limitations fail to recognize "the principle that criminal limitations statutes are to be liberally interpreted in favor of repose." Toussie v. United States, 397 U.S. 112, 115 (1970) (quotation omitted). The First Circuit recently acknowledged the potential merit of this argument in United States v. Miller, 911 F.3d 638, 645 (1st Cir. 2018). There, the court considered the retroactivity of § 3283 (2003) in the context of an ineffective assistance of counsel claim. Although the court chose not to adjudicate the defendant's claim because it was raised on direct appeal, it noted that in the criminal context, Landgraf's second step "becomes dicier because 'criminal limitations statutes are to be liberally interpreted in favor of repose.'" Id. (quoting Toussie, 397 U.S. at 115). The court also discussed "[t]he lone decision to analyze the interplay between Landgraf and Toussie with respect to an extension of a statute of limitations," United States v. Gentile, 235 F. Supp. 3d 649 (D.N.J. 2017), which "determined that when these cases 'are read in conjunction,' a court 'must interpret the statute of limitations in a manner favoring repose for [the] [d]efendant.'" Miller, 911 F.3d at 645 (quotation omitted). "In other words," that decision held that "when Congress has sounded an uncertain trumpet, a

15

court ought to refrain from applying an enlarged criminal statute of limitations retrospectively." Id. The Miller court observed that "[s]een in this light, Toussie potentially alters the second step in the Landgraf [analysis]." Id.

The court in Gentile held that Dodd-Frank's statute of limitations, set out in 18 U.S.C. § 3301, did not apply retroactively to the defendant's conduct. 235 F. Supp. 3d at 649. In doing so, the court cited extensively to United States v. Richardson, 512 F.2d 105 (3d Cir. 1975), which held that the Selective Service Act's statute of limitations, set out in 50 U.S.C. App. § 453, did not apply retroactively to the defendant's conduct. Defendant relies heavily on Gentile and Richardson, emphasizing that both cases refused to apply extended statutes of limitations retroactively even though they were enacted before the otherwise applicable statute of limitations had expired; however, the government correctly, and persuasively, emphasizes that Richardson was decided before Landgraf, and that both Gentile and Richardson appear to be inconsistent with Landgraf. Specifically, both cases focused on whether the presumption against retroactivity had been overcome by clear congressional intent in favor of retroactivity, i.e., Landgraf's third step, without first determining whether the presumption had actually been triggered, i.e., Landgraf's second step. See, e.g., Gentile, 235 F. Supp. 3d at 656 ("[C]onsistent with Richardson, this Court finds that Section 3301 should not be applied retroactively as it does not contain the requisite language indicating clear Congressional intent to do so."). Accordingly, the Court finds that neither Gentile nor Richardson provide any basis to accept defendant's argument.

Defendant also argues that the cases applying this distinction between expired and unexpired claims to both civil and criminal statutes of limitations fail to engage in a Landgraf analysis, and instead rely on Ex Post Facto Clause jurisprudence. This argument depends on

whether there is "daylight" between the Ex Post Facto Clause and Landgraf's second step, i.e., on whether a statute can have an impermissible retroactive effect under the latter even if it does not amount to a violation of the former. See Defendant's Memorandum in Support at 15. Defendant has identified no persuasive authority to support this argument. To be sure, the presumption against retroactivity "finds expression in several provisions of our Constitution" such that the Ex Post Facto Clause is "only one aspect of the broader constitutional protection against arbitrary changes in the law," Lynce v. Mathis, 519 U.S. 433, 439–40 (1997); however, at least in the Fourth Circuit, the standards for an Ex Post Facto Clause violation and for an impermissible retroactive effect under Landgraf's second step are essentially identical. The former requires "a law that 'changes the legal consequences of acts completed before its effective date,'" United States v. Heater, 63 F.3d 311, 332 (4th Cir. 1995) (quotation omitted), and the latter requires a law that "attaches new legal consequences to events completed before its enactment," Frontier-Kemper, 876 F.3d at 688 (quotation omitted).

Moreover, the rationale behind this distinction, at least in the criminal context—that "a defendant facing unexpired claims has never been safe from . . . pursuit, and has always had incentive to preserve exculpatory evidence"—is equally applicable to both general presumption against retroactivity challenges and specific Ex Post Facto Clause challenges. Cruz, 773 F.3d at 145 (quotation omitted) (alteration in original). Defendant cites to only one judge in one Second Circuit case who stated that Landgraf's presumption against retroactivity "is triggered by statutes whose retroactive application, while not the equivalent of criminal ex post facto, nevertheless would run afoul of [Landgraf's second step]" by running afoul of "familiar considerations of fair notice, reasonable reliance, and settled expectations." See Thom v. Ashcroft, 369 F.3d 158, 163 n.6 (2d Cir. 2004) (Calabresi, J., writing for himself) (quotation omitted). That judge

17

hypothesized "that the Supreme Court's future decisions in this field w[ould] confirm" his view; however, in the 15 years since Thom, the Supreme Court does not appear to have done so. Id. Accordingly, neither of defendant's final arguments is meritorious.[8]

At bottom, "applying [an] extended limitations period to claims that were unexpired at the time of its enactment does not give rise to an impermissible retroactive effect under Landgraf." Cruz, 773 F.3d at 145. Accordingly, "the presumption against retroactivity is not triggered," and the inquiry ends at step two. Because the Court "must 'give effect to Congress's latest enactment,'" which in this case is § 3299, defendant's prosecution under Count III is timely. Gordon, 637 F.3d at 458 (quotation omitted).

### III. CONCLUSION

For the reasons stated above, defendant's Motion to Dismiss Count Three of the Indictment [Dkt. 132] will be denied by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 26th day of November, 2019.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge

---

[8] There is also some discussion in the parties' memoranda as to whether statutes of limitations are either substantive or procedural and whether that affects this retroactivity analysis; however, after Landgraf, "[t]here is nothing talismanic about identifying a rule as procedural if its application results in genuinely retroactive effects," and vice versa. Brown v. Angelone, 150 F.3d 370, 373–74 (4th Cir. 1998).