# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br> v.<br><br>GEORGE AREF NADER,<br><br>       Defendant. | Case No. 1:19-CR-201<br><br>The Honorable Judge Brinkema |

**CONSENT MOTION TO CONTINUE SENTENCING**

  Defendant George A. Nader, through undersigned counsel, respectfully submits this Motion to Continue his Sentencing, currently set for April 10, 2020, to a date that is convenient for the Court in May 2020. The government does not oppose this Motion.

  Mr. Nader respectfully—and reluctantly—submits that a continuance of the sentencing is necessary based on several recent developments. First, Mr. Nader is unable meaningfully to review the lengthy draft Presentence Report ("draft PSR") (ECF 178) with undersigned counsel. Since at least Friday, March 13, 2020, the Alexandria Detention Center, where Mr. Nader is detained, has suspended all in-person contact attorney visitation due to the COVID-19 outbreak.[1] The only visitation option that remains is through thick glass on a recorded phone line—in the same manner that the general public may visit. Undersigned counsel has no way consistent with the attorney-client privilege to review the draft PSR with Mr. Nader—counsel cannot even

---

[1] *See* Alexandria Detention Center Website, indicating that in-person professional visits are suspended: https://www.alexandriava.gov/sheriff/default.aspx?id=114154 (last visited March 20, 2020).

access Mr. Nader to hand him a copy of the draft report.  Mr. Nader has not yet seen the draft report and counsel is uncertain when he will be able to do so under current conditions.

As this Court is well aware, the Presentence Report is a critical document, to which Mr. Nader has a right to access and to review with counsel.  *See* Fed. R. Crim. P. 32 (e) (requiring the defendant and the defendant's attorney to be given a copy of the PSR); *see Veal v. United States*, 486 F. Supp. 2d 564, 572 (N.D.W. Va. 2007) ("It would appear that it is mandatory in this circuit that the presentence investigation report be reviewed by counsel with the defendant.") (citing *United States v. McManus,* 23 F.3d 878 (4th Cir.1994); *United States v. Miller,* 849 F.2d 896 (4th Cir.1988)).  Further, Mr. Nader has the right to lodge objections to the PSR.  If he is unable to review the PSR with counsel and object to each inaccuracy, he risks having this Court accept the entire report as fact and using those facts in determining his sentence.  *See United States v. Revels*, 455 F.3d 448, 451 (4th Cir. 2006) (nothing that district courts may use "undisputed (though not affirmatively admitted) facts in calculating an advisory Guidelines range" and, "[w]here silence may not suffice to render a fact admitted for *Booker* purposes, it will suffice to render a fact undisputed.") (internal quotations and citations omitted).

The current deadline for Mr. Nader's response to the draft PSR is March 27, 2020.  Given Mr. Nader's continued inability to consult with counsel, the length of the draft PSR (45 pages, including a lengthy victim impact statement, and other allegations well outside the factual proffer to which Mr. Nader agreed as part of this plea), and the fast-approaching objection deadline and sentencing date, Mr. Nader respectfully submits that both fundamental fairness and the Sixth Amendment require a continuance of the sentencing so that counsel may adequately assist him in reviewing and responding to the draft PSR.  With the uncertainty surrounding the COVID-19 pandemic, it is unclear when in-person visitation for attorneys will resume.  However, Mr. Nader

suggests that his sentencing be continued to May 2020, in hopes that attorney visitation has resumed such that Mr. Nader has sufficient time to review and object to the draft PSR by then, or that some alternative for reviewing the draft PSR has by then been put in place.

Second, and moreover, Mr. Nader suffers from underlying health conditions that put him in a high-risk category for severe illness and possibly death, should he contract COVID-19, and transportation to and from court increases his risk of exposure. As this Court is aware, Mr. Nader is nearly 61 years old and underwent open heart surgery on April 15, 2019, in Hamburg, Germany, and spent several days in the ICU immediately following his surgery. He suffers from coronary disease. *See* ECF 58, Exs. 1 (Mr. Nader's Hamburg hospitalization medical records), 3 (Declaration by Dr. Matthew Hulse regarding Mr. Nader's medical condition). He was arrested when traveling to New York to seek post-operative rehabilitative treatment at Mount Sinai. *See id.*

Mr. Nader's heart disease and health problems have only persisted since he has been incarcerated at the Alexandria Detention Center. He has been told that he is pre-diabetic and he continues to be treated for his heart disease and for high blood pressure. He is currently being prescribed Atorvastatin (a medication to treat high cholesterol), Metformin (to treat diabetes), Bisoprolol (to treat high blood pressure), Clopidogrel (a blood thinner used to treat heart problems), Low-Dose Aspirin (used to treat heart problems), Ramipril (to treat high blood pressure and cardiac disease), and Pantoprazole (to treat heartburn). *See* ECF 178 at ¶¶ 134-35.

The Center for Disease Control ("CDC") identifies the following groups as "at higher risk for severe illness [from COVID-19 infection]: Older adults; People who have serious underlying

medical conditions like: heart disease; diabetes; lung disease."[2]  Mr. Nader falls into nearly every one of these categories.  The *Wall Street Journal* reports that

> death rates that are startlingly higher than the average for people age 60 and over, as well as for people with high blood pressure, diabetes, asthma and other chronic conditions. In one large study by the Chinese Center for Disease Control and Prevention, 14.8% of people 80 and older and 8% of people 70 to 79 died. For people with cardiovascular disease, the mortality rate was 10.5%, and 7.3% for those with diabetes. Those rates compared with a 2.3% mortality rate in the overall population of 44,672 patients studied through Feb. 11, China's CDC says.[3]

The CDC recommends that people who are "at a higher risk of getting sick," like Mr. Nader, put distance between themselves and other people if COVID-19 is spreading in their communities.[4]  There are now 114 COVID-19 cases reported in Virginia, with many of those concentrated in Northern Virginia.[5]

Further, as this Court is likely aware, COVID-19 is highly communicable and presents an especially high risk of spreading in jail settings, where individuals are unable to "socially distance," much less isolate; have no choice about contact with others, such as jail officials and U.S. Marshals, and have only limited access to hand sanitizer and soap.  Most jails are not fully prepared to handle the outbreak.[6]  Without conceding that Mr. Nader is in any way safe at the Alexandria Detention Center, it is clear that transporting Mr. Nader to and from court for

---

[2] CDC website at https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/high-risk-complications.html (last visited March 20, 2020).
[3] Betsy McKay, *Who's Most at Risk From the Coronavirus*, THE WALL STREET JOURNAL (Updated March 14, 2020), https://www.wsj.com/articles/whos-most-at-risk-from-the-coronavirus-11584048476 (last visited March 20, 2020).
[4] CDC website at https://www.cdc.gov/coronavirus/2019-ncov/prepare/prevention.html (last visited March 20, 2020).
[5] https://www.nbc12.com/2020/03/20/health-officials-confirm-cases-coronavirus-now-virginia/ (last visited March 20, 2020).
[6] *See* German Lopez, *A coronavirus outbreak in jails and prisons could turn into a nightmare*, SLATE (March 17, 2020), https://www.vox.com/policy-and-politics/2020/3/17/21181515/coronavirus-covid-19-jails-prisons-mass-incarceration (last visited March 20, 2020).

sentencing will only put him into contact with additional individuals during transport, detention in the courthouse, and in the courtroom, and only increase his risk for exposure to a disease for which he is at an especially high risk for serious illness, or even death. The same is true for Mr. Nader's transportation to a Bureau of Prisons facility, were he to be sentenced to one and transported there. Mr. Nader thus respectfully request that the spread of COVID-19 and his particular risk to it is an additional reason to continue his sentencing.

Third, Mr. Nader's inability to access counsel further impacts his ability to prepare for sentencing, beyond the review and discussion of the draft PSR. Mr. Nader has a right under the Sixth Amendment to have meaningful, confidential access to counsel as he prepares for sentencing. He is unable to do that until he can have an in-person meeting with counsel.

Fourth, Mr. Nader has notified the government that he does not have certain items of discovery that are relevant to his potential objections and requests for clarification in the draft PSR. The government has agreed to work with Mr. Nader to make these items available. However, once those items are available (and it is still unclear when that will be), counsel must have the ability to review meaningfully and discuss the PSR with Mr. Nader in relation to those items and make any necessary objections.

Fifth, counsel for the complainant J.B. has informed Mr. Nader that the complainant will be seeking approximately $6.4 million in restitution from Mr. Nader. Though Mr. Nader has been promised documentation, including an expert report, to support that request, Mr. Nader has yet to receive anything from the complainant's counsel.[7] Judging from the sheer amount of money J.B.

---

[7] Counsel for Mr. Nader initially reached out to counsel for J.B. to begin discussing restitution on January 14, 2020, the day after Mr. Nader entered his plea. Counsel for J.B. did not provide the amount of restitution J.B. was requesting until March 12, 2020; and has not yet provided documents supporting this request.

has requested, Mr. Nader expects that the documentation supporting that request may be voluminous and, depending on what J.B.'s expert opines, Mr. Nader may need to seek the assistance of his own expert. Mr. Nader respectfully requests a continuance of the sentencing for at least these five reasons.

## CONCLUSION

Mr. Nader respectfully requests that this Court continue his sentencing until May 2020; though it is unclear when the Alexandria Detention Center will resume in-person visitation, counsel is hopeful that this will be sufficient time for in-person visitation to resume so that Mr. Nader can review the PSR, as well as prepare in the additional ways stated above. The government does not oppose this motion.

Dated: March 20, 2020                                             Respectfully submitted,

/s/ Jonathan S. Jeffress
Jonathan S. Jeffress (#42884)
Emily Anne Voshell (#92997)
Courtney Roberts Forrest (#76738)
KaiserDillon PLLC
1099 14th Street, NW
8th Fl. West
Washington, DC 20005
Tel: (202) 640-4430
Fax: (202) 280-1034
jjeffress@kaiserdillon.com
evoshell@kaiserdillon.com
cforrest@kaiserdillon.com

John N. Nassikas III (#24077)
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., NW
Washington, DC 20001
Tel: (202) 942-5000
Fax: (202) 942-5999
John.Nassikas@arnoldporter.com

*Attorneys for Defendant
George Aref Nader*

7

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>GEORGE AREF NADER,<br><br>　　　　　　　　Defendant. | Case No. 1:19-CR-201 |

**[Proposed] ORDER**

This matter is before the Court on Mr. Nader's Motion to Continue Sentencing.

Accordingly, for good cause shown, the Motion to Continue Sentencing, Mr. Nader's sentencing, currently set for April 10, 2020, is hereby continued until: _____, 2020.

It is so ORDERED.

_____

UNITED STATES DISTRICT COURT JUDGE

Date: _____

　　Alexandria, Virginia