IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 1:19-CR-201-LMB |
| ) | |
| GEORGE AREF NADER, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING

The United States hereby submits its position on the sentencing of the defendant GEORGE AREF NADER ("defendant" or "NADER") in accordance with U.S.S.G. §6A1.2 and the policy of this Court. As explained below, the government believes that the Sentencing Guidelines are properly calculated at a total offense level of 40 (292 to 365 months) with a criminal history category of I and a fine in the range of $25,000 to $250,000.[1] Taking into account the factors set forth in 18 U.S.C. § 3553(a), the government makes a final sentencing recommendation for each of the two counts of conviction of: 10 years of imprisonment, a lifetime of supervised release, a fine in the Court's discretion, and a $100 special assessment. In addition, the government asks that the Court further order the payment of restitution of $150,000 to MINOR BOY 1, as well as the forfeiture agreed to in the plea agreement. The government further recommends that the sentences for the two counts be run concurrently.

---

[1] In the event that the Court determines it will follow the "one-book" rule, the government believes that the Sentencing Guidelines are properly calculated at a total offense level of 42 (360 to 600 months) with the same criminal history category and fine range.

I.  **Background**

Sixty-one-year-old GEORGE AREF NADER has repeatedly engaged in the sexual abuse of minors and has demonstrated interest in images of child sexual abuse and children for decades. The defendant's first known encounter with federal law enforcement occurred in 1984 when he was allegedly involved with child pornography sent to him through the mail. Even 36 years ago, when the defendant was about 25 years of age, he showed his sexual interest in boys. But a court in Washington, D.C. ruled that the evidence was improperly obtained and the defendant escaped responsibility then.

In 1991, NADER, at age 31, was caught by customs officials when he knowingly transported two films of minor boys into the country. He pled guilty in this very Court and received a sentence far below what would be expected of such a crime today – six months of imprisonment.

Less than a decade later, NADER in his late 30's/early 40's had broadened his horizons by exploiting troubled teenage boys for his own sexual gratification, primarily targeting minor prostitutes overseas. One of these boys, MINOR BOY 1, a 14 year old, is the subject of one of the counts of conviction. Having enjoyed MINOR BOY 1's paid company in Prague, the defendant paid for him to travel alone from the Czech Republic to the United States, where the defendant continued committing his child exploitations in the comfort of his U.S. residence. The Court should remember that this 14-year old boy was by himself in a strange country where he had no connections, spoke little English, and relied completely on Mr. NADER. The boy says that he was taken advantage of sexually over and over again by the defendant; the defendant has admitted it happened once. Rather than detailing it further here, MINOR BOY 1 has submitted an extensive statement and would like the opportunity to address the Court before the defendant is sentenced.

Mr. NADER's comeuppance for abuse of multiple minors in Prague came after he brought MINOR BOY 1 to the United States. NADER was convicted in the Czech Republic for having paid sex with troubled teen boys in the early part of the decade. The defendant ended up serving approximately a year in a foreign jail for his conduct. His paid sexual activities in that period in Prague with MINOR BOY 1 was part of his charged conduct in the Czech Republic but MINOR BOY 1 did not testify in the Czech proceedings and the defendant was not convicted for his conduct with him.

NADER came across the radar of the federal authorities again later that decade, when a minor boy from another country who had stayed at NADER's residence in Washington, D.C. reported that Mr. NADER had shown him child pornography. That case was never charged and NADER has spent the majority of his time since then overseas.

Over the course of 35 years, NADER has left a number of known and unknown minor victims in his wake, traveling around the world, with limited periods of time in the United States. As his reputation grew within the international community, so did his sexual desire for underaged boys. Through email and text exchanges with other pedophiles, the defendant had access to images and videos of child sexual abuse and made requests for certain kinds of child pornography to satisfy his sexual attraction to boys.

**II.     Guidelines Calculation**

To determine the appropriate sentence, the Court must consult both the United States Sentencing Guidelines (the "Guidelines") and the factors set forth in 18 U.S.C. § 3553(a). Although they are advisory, "a sentencing court is still required to 'consult [the] Guidelines and take them into account when sentencing.'" United States v. Clark, 434 F.3d 684, 685 (4th Cir. 2006) (quoting United States v. Booker, 542 U.S. 220, 264 (2005)). Thus, a sentencing court must

first calculate the applicable Guidelines range after making the appropriate findings of fact. United States v. Hughes, 401 F.3d 540, 546 (4th Cir. 2005). Relying on that range as "the starting point and the initial benchmark," the sentencing court must then "consider all of the § 3553(a) factors" before imposing a sentence. Gall v. United States, 552 U.S. 38, 49–50 (2007).

    a. **The 2018 Sentencing Guidelines for Counts One and Two**

Using the 2018 Sentencing Guidelines for Count One, the U.S. Probation Office calculated the total offense as follows:[2]

| **Guideline**[3] | |
|---|---|
| Base offense level (U.S.S.G. § 2G2.2(a)(1)) | 18 |
| The material involved a prepubescent minor or a minor who had not attained the age of twelve years (U.S.S.G. § 2G2.2(b)(2)) | +2 |
| The defendant knowingly engaged in distribution other than distribution described in subdivisions (A) through (F) (U.S.S.G. § 2G2.2(b)(3)(F)) | +2 |
| The offense involved material that portrays (A) sadistic or masochistic conduct or other depictions of violence; and/or (B) sexual abuse or exploitation of an infant or toddler (U.S.S.G. § 2G2.2(b)(4)) | +4 |
| The defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor (U.S.S.G. § 2G2.2(b)(5)) | +5 |
| The defendant used a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material or for accessing with intent to view the material (U.S.S.G. § 2G2.2(b)(6)) | +2 |
| The offense involved more than 600 images (at least 18 videos = 1,350 images) (U.S.S.G. § 2G2.2(b)(7)(D)) | +5 |
| **ADJUSTED OFFENSE LEVEL** | **38** |

---

[2] Notwithstanding the agreement between the United States and the defendant to apply the 2011 Sentencing Guidelines in Count One, U.S. Probation Office notes that the 2018 Sentencing Guidelines were in effect in 2011, and the same calculations would apply. PSR ¶ 68 n.3.

[3] Pursuant to the plea agreement, there was no agreement between the parties on whether any additional enhancements could be applied to the defendant's conduct. As the plea agreement states, "The United States and the defendant have not agreed on any further sentencing issues, whether related to the Sentencing Guidelines or otherwise, . . ." ECF No. 171 at 5.

PSR ¶¶ 69-79.

Using the 2018 Sentencing Guidelines for Count Two, the U.S. Probation Office calculated the total offense as follows: [4]

| Guideline | |
|---|---|
| Base offense level (U.S.S.G. § 2G1.3(a)(3)) | 28 |
| The minor was otherwise in the custody, care, or supervisory control of the defendant (U.S.S.G. § 2G1.3(b)(1)(B)) | +2 |
| The participant otherwise unduly influenced a minor to engage in prohibited sexual conduct (U.S.S.G. § 2G1.3(b)(2)(B)) | +2 |
| The offense involved the commission of a sex act or sexual contact (U.S.S.G. § 2G1.3(b)(4)(A)) | +2 |
| **ADJUSTED OFFENSE LEVEL** | **34** |

PSR ¶¶ 80-87.

Each count was assigned one unit for a total of two units, and when applied to the greater offense level, the combined adjusted offense level is 40 under U.S.S.G. § 3D1.4. Id. ¶¶ 88-91. The PSR also enhances the defendant's offense level by 5 points under U.S.S.G. § 4B1.5(b)(1), which applies when a defendant convicted of certain sex crimes has engaged in a pattern of activity involving prohibited sexual conduct, for an adjusted offense level of 45. Id. ¶ 92. The PSR reduces the defendant's total offense level by 2 point for acceptance of responsibility and, after the expected motion by the government, reduces it again by 1 point for assisting authorities in the investigation or prosecution of his own misconduct for a total offense level of 42. Id. ¶¶ 93-94.

---

[4] Notwithstanding the agreement between the United States and the defendant to apply the 1998 Sentencing Guidelines, U.S. Probation Office notes that it applied the 2018 Guidelines in accordance with U.S.S.G. § 1B1.11(b)(2). PSR ¶ 68 n.3.

With the defendant's criminal history category of I, the advisory Guidelines range calculated by the probation officer with respect to incarceration is 360 to 600 months. Id. ¶ 156.

### b. The 1998 Sentencing Guidelines for Count Two Pursuant to the Plea Agreement

With respect to the plea agreement, the United States and the defendant agreed to recommend the following provisions under 18 U.S.C. § 2423(a) using the 1998 Sentencing Guidelines:

| Guideline | |
|---|---|
| Base offense level (U.S.S.G. § 2G1.1(a)) | 14 |
| The offense involved a victim who had attained the age of 12 years, but not attained the age of 16 years (U.S.S.G. § 2G2.1(b)(2)(B)) | +7 |
| The victim was otherwise in the custody, care, or supervisory control of the defendant (U.S.S.G. § 2G2.1(b)(3)) | +2 |
| **ADJUSTED OFFENSE LEVEL** | **23** |

ECF No. 171 at 4.

If the Court were to adopt the parties' recommendation to apply the 1998 Guidelines for Count Two, with all other levels remaining, the total offense level would be 40.

### III. Section 3553(a) Sentencing Factors

As always, after calculating the applicable Guidelines range, a sentencing court must consider that range, as well as the sentencing factors set forth in 18 U.S.C. § 3553(a), and determine an appropriate and reasonable sentence. *Nelson v. United States*, 555 U.S. 350, 351 (2009). These factors include the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence imposed to reflect the seriousness of the offense, provide just punishment, and avoid unwarranted sentencing disparities. *See* 18 U.S.C. § 3553(a). Proper consideration of these factors requires acknowledgment of the many aggravating circumstances in

this case, including the particularly predatory nature of the defendant's offense conduct, the youth and vulnerability of his victims, and his efforts to contribute to a community of other child sex offenders. In light of these circumstances, and given the sentences imposed for similar defendants, the United States requests that the Court impose a significant sentence of imprisonment on Mr. NADER.

### A. Nature and Circumstance of the Offenses

The defendant has pleaded guilty to possession of child pornography and transportation of a minor with intent to engage in criminal sexual activity. It is beyond dispute that crimes against children like these are grievous offenses that warrant significant sanctions. *See United States v. Morace*, 594 F.3d 340, 350 (4th Cir. 2010) (citing a 2003 legislative enactment as "ample evidence of Congress's intent that offenses involving child pornography be treated severely" (internal quotations and citation omitted)). The possession of child pornography alone inherently involves the sexual abuse and exploitation of children, even if no new child pornography is produced. Far from being victimless, distribution of child pornography results in perpetual harm to victims who have already endured childhood sexual abuse. *See, e.g.*, *Paroline v. United States*, 572 U.S. 434, 440 (2014). As the Fourth Circuit has observed, "[i]t is well established that children featured in child pornography are harmed by the continuing dissemination and possession of that pornography. Such images are 'a permanent record of the children's participation and the harm to the child is exacerbated by their circulation.'" *United States v. Burgess*, 684 F.3d 445, 459 (4th Cir. 2012) (quoting *New York v. Ferber*, 458 U.S. 747, 759 (1982))); *see also United States v. Accardi*, 669 F.3d 340, 345 (D.C. Cir. 2012) ("[C]hild pornography creates an indelible record of the children's participation in a traumatizing activity, and the harm to the child is only exacerbated by the circulation of the materials.") The victims of the defendant's conduct are no different, and

the defendant's active participation further fuels the market for the creation of more child pornography.

### B. The History and Characteristics of the Defendant

The defendant's conduct here indicates that he is an online member of a community of child sex offenders. In December 2012, the Sentencing Commission issued a report to Congress on child pornography offenses that in part addresses this very issue of online communities of child pornographers. See United States Sentencing Commission, Report to the Congress: Federal Child Pornography Offenses (Dec. 2012) ("U.S.S.C. Report").[5] In the report, the Commission delineated three general categories of child pornography distribution that occur in light of the proliferation of internet-accessible technology. See, e.g., United States v. Klear, 3 F. Supp. 3d 1298, 1304 (M.D. Ala. 2014). Of the particular categories, the online child-pornography communities are the most applicable to this defendant. Id. (citing U.S.S.C. Report at 92–99). The emergence of this category is particularly concerning because it is in these online communities where offenders normalize, validate, and encourage their sexual interest in children "so that actual sexual contact with a child no longer seems as wrong" and more offenders feel emboldened to take the step from possession to production of child pornography. Id.

Over decades, the defendant's conduct here shows the evolution of his child pornographic behavior through his documented encounters with law enforcement. It also shows his increased sophistication as he interacted with like-minded pedophiles. Beginning in 1984, his first contact with law enforcement was through the mail he ordered to obtain child pornography and letters sent boys in another state under an alias to mask his detection. PSR ¶¶ 97-100. Then in 1998, he was

---

[5] The U.S.S.C. Report is available online at https://www.ussc.gov/research/congressional-reports/2012-report-congress-federal-child-pornography-offenses.

again under investigation for the same kind of offense. Id. ¶¶ 102-108. In 1991, he was convicted of transportation of child pornography when authorities seized videos surreptitiously hidden in candy tins. Id. ¶ 119. Abroad, the defendant expanded his horizon through direct sexual contact with minors, including contact with the victim in this case leading to the present offense of transportation of a minor, and in 2003, the defendant was convicted in the Czech Republic for offenses related to sexual contact with minors. Id. ¶¶ 27-34, 54-62, 123-126. By 2009, he was corresponding with pedophiles through electronic means, and by 2012, through social media apps leading to the current offense. Id. ¶¶ 17-26, 110-117. The most recent benchmarks were in 2018 and 2019 when the defendant was again was found to possess mobile devices containing chats, videos, and internet searches clearly demonstrating his continual interest in child pornography and the sexual and physical abuse of children. Id. 34-54. This timeline outlines the defendant's purposeful, calculative efforts, but more alarming is his lack of deterrence despite the number of times he encountered law enforcement and two separate sessions of incarceration.

That the defendant's behavior gradually shifted from child pornography to hands-on sexual contact with minors is not surprising. In 2005, researchers at the Federal Correctional Institution in Butner, North Carolina conducted a study of 155 inmates over an 18-month period who were convicted solely of child pornography offenses (possession, receipt, and distribution) where there was no evidence of hands-on sexual abuse of children. As the study notes, these inmates had no incentive to falsify their answers. Of this group, 85% admitted to having sexually molested a child at some point in the past. This study is generally regarded as the foremost study in the internet age of convicted child pornographers and their tendencies toward hands-on sexual abuse. While there have been various critiques of the study since its publication, researchers revisited the study and addressed the specific issues it has since raised, all while presenting the findings of the initial study

in a 2009 publication entitled, "The 'Butner Study' Redux: A Report of the Incidence of Hands-On Child Victimization by Child Pornography Offenders," Journal of Family Violence, Vol. 24, pp. 182-191 (2009).

Here, the correlation between child pornographers and hands-on offenders has been demonstrated through this defendant. In one elaborate instance, the defendant spent two months orchestrating efforts to bring one of his sexual exploits, a vulnerable teenager whose native language was not English, from his home country into the United States with the promise of an education. PSR ¶¶ 27-32. The defendant used his contacts and his wealth to accomplish this task, which allowed him to continue his sexual exploitation of this victim in the United States. Only years later, this now-adult victim understands the permanent psychological (and physical) damage the defendant caused him through the defendant's manipulative tactics. Id. ¶¶ 57-62, Victim Letter to the Court.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Provide Just Punishment, and Avoid Unwarranted Sentencing Disparities

Undoubtedly, the defendant's conduct is grave and dangerous. His actions do not reflect a simply isolated incident, but rather a persistent, intentional, pervasive, and multi-jurisdictional effort to exploit children. As a decades-long repeat offender against minors, the defendant's acceptance of responsibility statement to probation for conduct "occur[ing] some time ago" and "actions in the past" does not truly reflect the defendant's acceptance of his full responsibility for similar conduct occurring as recently as last year. PSR ¶ 67. As the defendant's past behavior suggests and deflection of his most recent encounters with law enforcement, there exists a potential for future recidivism if he does not receive a significant penalty for his highly evasive and criminal conduct. His actions to avoid detection are rendered all the more inexcusable given that the defendant had the age, background, and life experiences to make lawful, responsible choices.

Also, if the defendant can be deterred from seeking and collecting child pornography and sexual abusing minors, the best means of deterrence would be a significant sentence in light of the defendant's history.  A significant sentence is necessary to properly account for the defendant's personal history and characteristics, as well as to impress upon him and other offenders that his decades-long, international effort to avoid justice for his criminal conduct will not be tolerated.  It also accounts for the statutory and Guidelines provisions and does not create an unwarranted sentence disparity.

## IV.     Restitution

Pursuant to the plea agreement, see PSR ¶ 8, and 18 U.S.C. § 2259, the defendant must pay restitution in the "full amount" of losses caused to the victim in this case.  Here, the defendant and MINOR BOY 1 have agreed upon $150,000 as the appropriate restitution.  The government fully supports MINOR BOY 1's efforts and thanks the Court for appointing counsel to represent his interests.

## V. Conclusion

For the reasons above, the United States respectfully requests that the Court impose a term of imprisonment of 120 months, a lifetime of supervised release, a fine in the Court's discretion, and a $100 special assessment on <u>each</u> of the two counts of conviction to be served concurrently.

Respectfully Submitted,

G. Zachary Terwilliger
United States Attorne

By: _____
Jay V. Prabhu
Assistant United States Attorney
Melissa L. Chong
Special Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314
Phone: (703) 299-3700
Fax: (703) 299-3981
Email: jay.prabhu@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on June 22, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing ("NEF") to counsel of record in this case.

                              Respectfully submitted,

                              G. Zachary Terwilliger
                              United States Attorney

By: _____

                              Jay V. Prabhu
                              Assistant United States Attorney
                              United States Attorney's Office
                              Eastern District of Virginia
                              2100 Jamieson Avenue
                              Alexandria, VA 22314
                              Phone: (703) 299-3700
                              Fax: (703) 299-3981
                              Email: jay.prabhu@usdoj.gov