1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

UNITED STATES OF AMERICA      .      Criminal No. 1:19cr201
                              .
      vs.                     .      Alexandria, Virginia
                              .      January 13, 2020
GEORGE AREF NADER,            .      2:00 p.m.
                              .
            Defendant.        .
                              .
. . . . . . . . . .           .

TRANSCRIPT OF PRE-INDICTMENT PLEA
BEFORE THE HONORABLE LEONIE M. BRINKEMA
UNITED STATES DISTRICT JUDGE

<u>APPEARANCES</u>:

FOR THE GOVERNMENT:          JAY V. PRABHU, AUSA
                             United States Attorney's Office
                             2100 Jamieson Avenue
                             Alexandria, VA 22314


FOR THE DEFENDANT:           JONATHAN S. JEFFRESS, ESQ.
                             EMILY A. VOSHELL, ESQ.
                             KaiserDillon PLLC
                             1099 14th Street, N.W.
                             8th Floor West
                             Washington, D.C. 20005
                               and
                             JOHN N. NASSIKAS, III, ESQ.
                             ANDREW E. TALBOT, ESQ.
                             Arnold & Porter Kaye Scholer LLP
                             601 Massachusetts Avenue, N.W.
                             Washington, D.C. 20001-3743


OFFICIAL COURT REPORTER:     ANNELIESE J. THOMSON, RDR, CRR
                             (703)299-8595


(Pages 1 - 52)


COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

2

```
1                    P R O C E E D I N G S

2                    (Defendant present.)

3          THE CLERK:  Criminal Case 19-201, United States of

4   America v. George Aref Nader.  Would counsel please note their

5   appearances for the record.

6          MR. PRABHU:  Jay Prabhu for the government, Your

7   Honor.  Good afternoon.

8          THE COURT:  Good afternoon.

9          MR. JEFFRESS:  Good afternoon, Your Honor.  John

10  Jeffress and Emily Voshell from KaiserDillon on behalf of

11  Mr. Nader.

12         MR. NASSIKAS:  Good afternoon, Your Honor.  It's John

13  Nassikas from Arnold & Porter on behalf of George Nader.  I do

14  have my colleague, Andrew Talbot, in the courtroom; and there

15  are a couple papers in front of the Court, if the Court's

16  willing to hear them, to have him admitted into the Eastern

17  District of Virginia.  He's a member of the Virginia Bar.  And

18  we also have a notice of appearance or appearance of counsel

19  form if possible, Your Honor.

20         I'm happy to describe his credentials, if it's

21  appropriate.

22         THE COURT:  Well, I understand that Mr. Talbot

23  clerked for Judge Ellis.  That's the sufficient credential,

24  but, Mr. Talbot, come on up to the lectern.

25         MR. NASSIKAS:  Thank you, Your Honor.
```

3

1          THE COURT:  Now, Mr. Talbot, one of the things that I

2  do with my law clerks when they want to be admitted is I like

3  to make sure that you really have read the rules and that you

4  were listening during your clerkship years, so I'm going to

5  impose on you the same thing I do on my clerks.

6          So let me ask you, from your work with Judge Ellis or

7  from your work with Mr. Nassikas, do you remember how many

8  people are needed to make up a grand jury?  Were you ever

9  involved in a grand jury impanelment?

10          MR. TALBOT:  I was not, no.

11          THE COURT:  All right.  Well, how many grand jurors

12  does it take to return an indictment?  I'm not trying to

13  embarrass you.

14          MR. TALBOT:  I'm sorry, I don't know that.

15          THE COURT:  All right.  Mr. Nassikas, how about you?

16          MR. NASSIKAS:  Your Honor, I thought Mr. Talbot knew

17  the rules better than I, but normally it would be, as I recall,

18  23.

19          THE COURT:  For a grand jury, that's correct.

20          MR. NASSIKAS:  For a grand jury, yes.

21          THE COURT:  And how many to return an indictment?

22          MR. NASSIKAS:  The majority -- a majority of the

23  grand jurors.

24          THE COURT:  Which is?

25          MR. NASSIKAS:  Would be, I guess, 12.

4

1                   THE COURT:  Good guess.  It's 12.

2                   MR. NASSIKAS:  It's not a guess, Your Honor.  It's an

3      informed statement.

4                   THE COURT:  All right.  And, Mr. Talbot, the last one

5      I'll ask you is can you tell the Court your understanding of

6      the Rule of 95?  Judge Ellis never mentioned that to you?

7                   MR. TALBOT:  No.

8                   THE COURT:  That's all right.

9                   Mr. Prabhu, do you know the Rule of 95?

10                  MR. PRABHU:  I actually don't, Your Honor.

11                  THE COURT:  Mr. Nassikas?

12                  MR. NASSIKAS:  No, Your Honor.  You've stumped me on

13     that one.

14                  THE COURT:  That's the old joke around here that if a

15     lawyer was unhappy with a ruling of the court, they just got on

16     the highway and went down 95 to Richmond.

17                            (Laughter.)

18                  THE COURT:  That was the old Rule of 95, all right.

19                  Well, Mr. Talbot, I've put you through it and you

20     held up nicely.  You know when you're being badgered by a

21     judge, the best thing that a good lawyer can do is smile and

22     just take it.

23                  But anyway, I'm pleased to grant your motion to

24     become admitted to the court, and I'll have the clerk

25     administer the oath to you at this time.

1                    (Attorney oath administered.)

2            THE COURT:  All right, Mr. Talbot, congratulations.

3    If you take your paperwork down to the Clerk's Office, they'll

4    arrange for your certificate, and we look forward to seeing you

5    in court in the future.

6            MR. TALBOT:  Thank you, Your Honor.

7            THE COURT:  Now, Mr. Nassikas, I think we have

8    entered your appearance in this case.  I mean, you're one of

9    several attorneys now representing Mr. Nader.  Are you now lead

10   counsel, or what's your --

11           MR. NASSIKAS:  Cocounsel with Mr. Jeffress, Your

12   Honor.

13           THE COURT:  All right.

14           MR. NASSIKAS:  I think the Latham lawyers are no

15   longer involved in the case.

16           THE COURT:  Right.

17           MR. NASSIKAS:  So it's the, it's the two firms,

18   KaiserDillon and Arnold & Porter.

19           THE COURT:  All right.  Now, this matter was set for

20   status, but my understanding is it's going to be a plea.  Is

21   that correct?

22           MR. NASSIKAS:  Yes, Your Honor.

23           THE COURT:  All right, that's fine.  Now, are all the

24   original plea papers signed?

25           MR. PRABHU:  Yes, Your Honor.

6

1        THE COURT:  We have them up here?

2        MR. PRABHU:  Yes.

3        THE COURT:  All right.  Is this a waiver of

4   indictment among these papers?

5        MR. PRABHU:  I believe not, Your Honor.

6        THE COURT:  Well, we need a waiver of indictment.

7        MR. PRABHU:  That's true.

8        THE COURT:  I can do it -- I think we have a form

9   here.  If not, I can do it verbally.  I'll do it both ways.

10  All right.

11       MR. PRABHU:  Thank you.

12       MR. JEFFRESS:  Thank you.

13       THE COURT:  All right.  Mr. Nader, come up to the

14  lectern.  The clerk is going to place you under an affirmation

15  to tell the truth.

16           GEORGE AREF NADER, DEFENDANT, AFFIRMED

17       THE COURT:  All right, Mr. Nader, you have just taken

18  a promise to tell the truth in answering all of the Court's

19  questions.  That means that if you should lie in answering any

20  question, the government could prosecute you for a new and

21  separate crime called perjury.

22       Do you understand that?

23       THE DEFENDANT:  Yes.

24       THE COURT:  For the record, what is your full name?

25       THE DEFENDANT:  George Aref Nader.

7

1           THE COURT:  How old are you?

2           THE DEFENDANT:  Sixty.

3           THE COURT:  How many years of schooling have you

4   completed?

5           THE DEFENDANT:  Fifteen years, I think.

6           THE COURT:  Did you graduate from high school?

7           THE DEFENDANT:  Yes.

8           THE COURT:  Did you graduate from college?

9           THE DEFENDANT:  No, just --

10          THE COURT:  But you have a couple of --

11          THE DEFENDANT:  Three years, about three years.

12          THE COURT:  All right.  Do you have any problem

13  reading, writing, understanding, or speaking English?

14          THE DEFENDANT:  No, Your Honor.

15          THE COURT:  Are you a United States citizen?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Are you presently on probation, parole,

18  or supervised release from any other criminal case?

19          THE DEFENDANT:  No.

20          THE COURT:  And, counsel, is that correct?

21          MR. JEFFRESS:  That's right, Your Honor.

22          THE COURT:  At this time, are you under the care of a

23  doctor for any physical or mental condition?

24          THE DEFENDANT:  Physical, for the upper, you know,

25  but no mental.

8

```
 1                THE COURT:  All right.  But I need for the record
 2    during this proceeding what physical conditions are you being
 3    treated for?
 4                THE DEFENDANT:  The open heart.  I had an open heart
 5    surgery a few months ago, so occasionally they just
 6    double-check to make sure I'm in good shape.
 7                THE COURT:  All right.  Are you currently taking any
 8    medications for any physical or mental condition?
 9                THE DEFENDANT:  Medication related to the heart, yes.
10                THE COURT:  For the heart, all right.  Have you taken
11    those medicines on schedule today?
12                THE DEFENDANT:  Yes.
13                THE COURT:  In any respect, does either your heart
14    condition or the medications you take for it make it difficult
15    for you to focus or concentrate?
16                THE DEFENDANT:  No, Your Honor.
17                THE COURT:  Counsel, have you had any difficulty in
18    dealing with your client or communicating with him because of
19    his heart condition or the medications that he takes?
20                MR. JEFFRESS:  No, Your Honor.
21                MR. NASSIKAS:  No, Your Honor.
22                THE COURT:  Are you at this time under the influence
23    of any alcohol or drugs?
24                THE DEFENDANT:  No.
25                THE COURT:  Are you a United States citizen?
```

1           THE DEFENDANT:  Yes.

2           THE COURT:  Now, we have several documents that have

3   been filed in court today, and the first one is the waiver of

4   indictment, which you have just signed.  Now, I don't know

5   whether your lawyers talked with you about this or not, so I

6   want to make sure that you understand that under the laws and

7   Constitution of the United States, you have an absolute right

8   to require that a federal prosecutor like Mr. Prabhu go before

9   a group of people called a federal grand jury with the evidence

10  the government has developed concerning your being involved in

11  possessing visual depictions of minors and transporting a minor

12  with the intent to engage in criminal sexual activity.

13          So you have a right before having to face those

14  charges to require the prosecutor to go before a group of

15  people called a federal grand jury with the evidence concerning

16  those two cases.  Do you understand that?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Now, a grand jury is made up of anywhere

19  from 16 to 23 people.  Sixteen is the minimum quorum needed for

20  business; 23 is the maximum number.  And these are ordinary

21  citizens who are brought together to consider possible federal

22  criminal cases, and what happens in the grand jury process,

23  which is a secret process, is a prosecutor goes into the room,

24  advises the grand jurors that he or she believes a person has

25  violated one or multiple federal criminal statutes, and then

1   the prosecutor presents evidence to the grand jurors supporting

2   that position.

3          Now, the evidence could be the testimony of

4   witnesses.  It could be photographs, bank records, whatever

5   evidence the prosecutor feels is needed.

6          Then the prosecutor leaves the room, so just the

7   grand jurors are alone together, and if at least 12 of the

8   grand jurors are satisfied that the evidence presented

9   establishes probable cause to believe that the person has

10  committed the one or multiple crimes, then the grand jury will

11  return a document called an indictment, and that is normally

12  how a felony-level criminal case begins in federal court.

13         Do you understand that?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Now -- and that is considered to be a way

16  of protecting a person's rights because it exists to make sure

17  that a person is not publicly charged with serious criminal

18  activity without there being some factual basis to support the

19  charge or charges.

20         Do you understand that?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Now, a person can give up his right to

23  that review process by a grand jury, and that would be done by

24  signing a waiver of indictment such as the one that you have

25  signed today.  When a person waives indictment, that means he's

1   giving up his right to have the grand jury consider the case,

2   and instead, he's authorizing the federal prosecutor to come to

3   court and file serious criminal charges against him using a

4   document called a criminal information, which will not have

5   been tested by a grand jury.

6          Do you understand that?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Now, even though you had not signed the

9   waiver before, have you and your lawyers basically discussed

10  what I've just discussed with you before you came to court

11  today?  In other words, have they explained to you that, that

12  you're going to be pleading guilty to an information that would

13  not have been presented to the grand jury?

14         Have you had that kind of discussion?

15         THE DEFENDANT:  Yes, Your Honor.

16         THE COURT:  Do you believe in any respect that

17  anybody has promised or -- and this is outside of your plea

18  agreement, so putting the plea agreement aside -- do you

19  believe that anybody has promised or suggested to you that by

20  waiving indictment, you would somehow get a lighter sentence or

21  more favorable treatment by the Court?

22         THE DEFENDANT:  No, Your Honor.

23         THE COURT:  Has anyone put any force or pressure on

24  you to waive indictment today?

25         THE DEFENDANT:  No, Your Honor.

1          THE COURT:  All right.  And who will be the

2   spokesperson here today for the defendant?

3          MR. NASSIKAS:  Mr. Jeffress, and I will pipe up.

4          THE COURT:  All right.  Mr. Jeffress, do you feel

5   that in your multiple discussions with your client, because we

6   know this has been percolating for a while, that he has been

7   given sufficient advice about the waiver?

8          MR. JEFFRESS:  Yes, Your Honor.

9          THE COURT:  And are you satisfied the waiver has been

10  entered in a knowing and voluntary fashion?

11         MR. JEFFRESS:  Yes, Your Honor.

12         THE COURT:  All right.  Then based on these answers,

13  I'm satisfied the defendant has entered his waiver of

14  indictment with the advice of counsel and has done so in a

15  knowing and voluntary fashion.  So the waiver has been

16  accepted, and that allows the United States to file the

17  following two-count criminal information.

18         And I assume you've had a copy of that at least since

19  January 8; is that correct?

20         MR. JEFFRESS:  Correct.  That's correct, Your Honor.

21         THE COURT:  All right.  So Count 1 charges that on a

22  date between September 20, 2012, and October 1, 2012, within

23  this -- I'm sorry, within the Southern District of New York and

24  elsewhere, that the defendant, having been previously convicted

25  of an offense under Chapters 71, 109A, 110, 117 of Title 18 of

1    the U.S. Code, or the laws of any state relating to aggravated

2    sexual abuse, sexual abuse, or abusive sexual conduct involving

3    a minor, did unlawfully and knowingly possess, or knowingly

4    accessed with intent to view, one or more matters containing

5    visual depictions of minors engaging in sexually explicit

6    conduct and the production of such visual depictions involved

7    the use of a minor engaging in that sexually explicit conduct,

8    that has been mailed or has been shipped or transported using

9    any means or facility of interstate or foreign commerce or in

10   or affecting interstate commerce or foreign commerce, or which

11   was produced using materials which have been mailed or so

12   shipped or so transported, by any means, including by computer,

13   to wit:  electronic files depicting minor children engaging in

14   sexually explicit conduct that had been uploaded to a file

15   sharing site on the internet; in short, possession of visual

16   depiction of minors.

17              That's the first charge in Count 1.  Do you

18   understand that charge?

19              THE DEFENDANT:  Yes, Your Honor.

20              THE COURT:  And to that charge, how do you want to

21   plead, guilty or not guilty?

22              THE DEFENDANT:  Guilty.

23              THE COURT:  And Count 2 of the criminal information

24   alleges that in or about February of 2000, that you knowingly

25   transported a 14-year-old boy described as Minor Boy 1, who had

1    not attained the age of 18 years, in interstate or foreign

2    commerce, or in any commonwealth, territory, or possession of

3    the United States, with the intent that the boy engage in

4    prostitution, or in any sexual activity for which any person

5    can be charged with a criminal offense, or attempted to do so;

6    specifically, that you transported Minor Boy 1 from Europe to

7    Washington-Dulles International Airport, located in the Eastern

8    District of Virginia, by means of commercial airplane with the

9    requisite intent.

10              So in short, Count 2 charges transportation of a

11   minor with intent to engage in criminal sexual activity.  And

12   how do you want to plead to that charge?

13              THE DEFENDANT:  Guilty.

14              THE COURT:  All right.  Now, before the Court accepts

15   either of those two charges, I'm going to be asking you a

16   series of questions about your decision to plead guilty, the

17   plea agreement and the statement of facts.  At any point this

18   afternoon, if you should decide you want to change your mind as

19   to either one or both of these charges, you can stop the

20   process, we will enter a not guilty plea for you, and we will

21   set the case for trial within 70 days of today's date.

22              Do you understand that?

23              THE DEFENDANT:  Yes.

24              THE COURT:  All right.  Now, there's been filed in

25   court this afternoon a written plea agreement, and the plea

1   agreement itself is 13 pages long, and I see on page 13 what

2   appears to be your signature.

3            THE DEFENDANT:  Yes.

4            THE COURT:  So I first of all want to ask you did

5   you, in fact, sign the plea agreement?

6            THE DEFENDANT:  Yes, Your Honor.

7            THE COURT:  And the date of the signature appears to

8   be December 24 of last year.  Is that when you signed the plea

9   agreement?

10           THE DEFENDANT:  Yes, Your Honor.

11           THE COURT:  Now, before you signed that plea

12  agreement -- am I missing something?

13           MR. JEFFRESS:  October, Your Honor.  That's my poor

14  handwriting.

15           THE COURT:  Oh, it's October.

16           MR. JEFFRESS:  Yeah, I apologize.

17           THE COURT:  Even further back, all right.

18           Before you signed the plea agreement, did you have

19  enough time to read it over for yourself word for word?

20           THE DEFENDANT:  Yes.

21           THE COURT:  And did you have enough time to discuss

22  it thoroughly with Mr. Jeffress and, I guess, at that point

23  Latham & Watkins were still your attorneys, but did you discuss

24  it thoroughly with the attorneys you had at that time?

25           THE DEFENDANT:  Yes.

16

1          THE COURT:  All right.  Did you ask your lawyers all
2   the questions that you had about the plea agreement?
3          THE DEFENDANT:  Yes, I did.
4          THE COURT:  And did they answer all of your questions
5   to your satisfaction?
6          THE DEFENDANT:  Yes.
7          THE COURT:  Now, do you understand you can at any
8   time this afternoon stop and ask either of your attorneys or
9   ask me if you should have any question about this proceeding?
10  Do you understand that?
11         THE DEFENDANT:  Yes, Your Honor.
12         MR. NASSIKAS:  And, Your Honor, I also have had a
13  chance to go over the plea agreement with Mr. Nader separately
14  and more recently.
15         THE COURT:  All right.  And so with new counsel on
16  board, you've again spent some time with Mr. Nassikas?
17         MR. NASSIKAS:  Yes.
18         THE COURT:  Your new lawyer?  All right.
19         And did you have questions you asked him about the
20  plea agreement?
21         THE DEFENDANT:  Yes.  He confirmed and reaffirmed,
22  and I'm pleased, yes.
23         THE COURT:  All right.  Now, I want you to look at
24  page 13.  I assume you have a copy of the agreement in front of
25  you.

```
 1              THE DEFENDANT:  Yes.
 2              THE COURT:  And in particular, the two sentences that
 3    are right above where your signature appears, because I want
 4    you to realize these are part of the plea agreement, they
 5    go, "I have read this plea agreement and carefully reviewed
 6    every part of it with my attorney."  It should be "attorneys"
 7    in this case, all right?  "I understand this agreement and
 8    voluntarily agree to it."
 9              Now, are those two sentences completely true?
10              THE DEFENDANT:  Yes, Your Honor.
11              THE COURT:  By telling the Court that you yourself
12    have read the entire plea agreement and you've discussed it
13    thoroughly with your lawyers and you understand it and you
14    voluntarily agree to it, that means you will be bound by
15    everything that's written in this 13-page document even if I
16    don't go over every paragraph or page with you this afternoon.
17              Do you understand that?
18              THE DEFENDANT:  Yes, Your Honor.
19              THE COURT:  And the reason for that result is that
20    this plea agreement is really a written contract between you
21    and portions of the United States government, and when a person
22    signs a written document or written contract after he's
23    carefully reviewed it himself and with counsel and he
24    understands it when he signs it and he signs it voluntarily,
25    then that becomes a binding legal document, and that means you
```

1   can't just come back to court in a couple of weeks and say:

2   Well, you know, I've thought more about it.  I don't like

3   what's on page 4.  I want to change it.

4          That's too late.  Do you understand that?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Now, other than this written plea

7   agreement, do you believe that you have any side deals or side

8   understandings with any prosecutor, any investigator, any

9   attorney, or anybody else concerning this case?

10          THE DEFENDANT:  No, Your Honor.

11          THE COURT:  And, Mr. Jeffress, is that correct, that

12   there are no side deals of any kind?

13          MR. JEFFRESS:  That's correct, Your Honor.

14          THE COURT:  All right.  Then let's turn to the plea

15   agreement itself, page 1, paragraph 1.  There it says first of

16   all that you've agreed to plead guilty to the two-count

17   criminal information; and I want to make sure you understand

18   that the first count, that is, the possession of child

19   pornography, the maximum penalty is a mandatory -- I'm sorry,

20   the penalty provisions are a mandatory minimum term of ten

21   years of imprisonment, with the possible maximum term of 20

22   years of imprisonment.

23          Do you understand that?

24          THE DEFENDANT:  Yes.

25          THE COURT:  In addition, there could be a fine of up

1  to $250,000, full restitution, forfeiture of any assets as

2  described later on in the plea agreement.  There would be an

3  automatic special assessment of $100, and there's a mandatory

4  minimum term of supervised release of at least five years, but

5  that could be as much as a life term of supervised release.

6          Do you understand that?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Now, with Count 2, and that is the

9  transportation of the minor count, the maximum sentence is 15

10 years, which is increased to a maximum of 30 years for a repeat

11 sexual offender, and it's my understanding that the defendant

12 would qualify for the 30-year maximum exposure because of the

13 prior conviction.

14          Is that counsel's understanding as well?

15          MR. JEFFRESS:  Yes.

16          THE COURT:  And you understand that, Mr. Nader?

17          THE DEFENDANT:  Yes.

18          THE COURT:  All right.  In addition, as to Count 2,

19 again, there could be a fine of up to $250,000, full

20 restitution, forfeiture of assets, a special assessment of

21 $100, and again a mandatory minimum term of five years of

22 supervised release, with the possibility of a life term of

23 supervised release.

24          Do you understand all of the penalties you are

25 exposed to?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Now, in the federal system, parole is not

3    available, and that means whatever term of imprisonment imposed

4    must be served.  Do you understand that?

5          THE DEFENDANT:  Yes.

6          THE COURT:  When the prison portion of the sentence

7    has been satisfied, then the supervised release portion goes

8    into effect.  When a person is on supervised release, he's

9    under the control of a federal probation officer; and there may

10   be requirements to do certain things as well as requirements

11   not to do certain things.

12          For example, a requirement of these types of cases is

13   you'll have to register as a sex offender; and there will be

14   limitations on who you can associate with, where you can live,

15   where you can work, all sorts of things like that.

16          Do you understand that?

17          THE DEFENDANT:  Yes.

18          THE COURT:  The key fact you need to understand about

19   supervised release -- and again, I can't tell you the

20   conditions yet because I have not yet seen the pre-sentence

21   report -- but what you need to understand at this point is that

22   if you violate any condition of supervised release, you could

23   be sent back to prison for as long as the period of supervised

24   release.

25          Do you understand that?

1          THE DEFENDANT:  Yes.

2          THE COURT:  So that would be at least five years.  Do

3   you understand that?

4          THE DEFENDANT:  (Nodding head.)

5          THE COURT:  Now, when it comes time for sentencing,

6   the Court is going to be looking at two sources -- actually

7   three sources of law in this case:  first, the statutes of

8   conviction, because the -- Count 1 has the mandatory minimum

9   term of ten years.  Then we have to look at the federal

10  sentencing guidelines, and last we have to look at the factors

11  under 3553(a) of Title 18 of the United States Code.

12          Now, in terms of the guidelines, the Court has to

13  make two factual decisions before your guidelines can be

14  calculated.  First, we have to determine your criminal history.

15          Criminal histories are divided into six categories,

16  with each one getting a number.  A No. I criminal history would

17  go to somebody who's never been in trouble with the law or has

18  a very minor record; and then as convictions, probation

19  violations, and other problems occur, the score would go up,

20  with a level VI going to the most serious offenders.

21          Do you understand that?

22          THE DEFENDANT:  Yes.

23          THE COURT:  And then the Court must determine the

24  offense level.  Now, every federal crime has a number given to

25  it by the Sentencing Commission; and that's called the base

1    offense number; and then depending upon the facts of the case,

2    that number can go up or down; and you and the government in

3    paragraph 5 of the plea agreement, and this is primarily on

4    page 4, have agreed to a series of factors that will affect the

5    guideline numbers.

6              I just want to make sure you're clear, number one,

7    that everything in paragraph 5 is binding on you and your

8    lawyers and on the prosecutor, but nothing in paragraph 5

9    limits the probation officer when that officer prepares the

10   pre-sentence report, and nothing in paragraph 5 limits the

11   Court's discretion when it goes to sentence you.

12             Do you understand that?

13             THE DEFENDANT:  Yes.

14             THE COURT:  All right.  But as I understand it,

15   you-all have agreed that as to the first count, the base

16   offense level would be an 18; and then you would receive a

17   two-level enhancement because the offense involved material

18   involving minors who had not yet attained the age of 12.

19             Is that your understanding?

20             THE DEFENDANT:  Yes.

21             THE COURT:  And then there would be another

22   four-level enhancement because the offense involved material

23   that portrays sadistic or masochistic conduct or other

24   depictions of violence against either an infant or a toddler.

25             Do you agree with that?

1            THE DEFENDANT:  Yes.

2            THE COURT:  All right.  And you certainly can consult

3    with counsel, but I want to make sure you understand this is

4    your day in court.  If you disagree with something, you need to

5    make sure you've made your record.  So is there any dispute

6    about whether some of these images depicted violence or sexual

7    abuse or exploitation of an infant or a toddler?

8            MR. JEFFRESS:  Your Honor, we're not contesting that.

9    I mean, as the Court is aware, the images here were not

10   actually recovered; but based on how these things usually work

11   and the, you know, surrounding evidence, we're not contesting

12   that in this plea; and Mr. Nader understands that.

13           THE COURT:  You're comfortable with that decision,

14   Mr. Nader?

15           THE DEFENDANT:  Yes.

16           THE COURT:  All right.  And then it says the next

17   bullet is that you would receive a two-level enhancement

18   because the offense involved the use of a computer.  Do you

19   agree that that's part of the agreement?

20           THE DEFENDANT:  Yes, Your Honor.

21           THE COURT:  All right.  And that you would receive at

22   least a two-level enhancement because your offense involved at

23   least one video which would have at least 75 images.  Do you

24   agree with that?

25           THE DEFENDANT:  Yes.

24

1       THE COURT:  And again, as I said, the Court doesn't

2  have to accept those enhancements; but that's something that

3  you and the government have agreed to.  Do you understand that?

4       THE DEFENDANT:  Yes.

5       THE COURT:  All right.  As to Count 2, you've agreed,

6  as I understand it, to the base offense level is 14 and that

7  that would be increased seven levels because the offense

8  involved a victim who had not obtained the age of 12 -- I'm

9  sorry, who had obtained the age of 12 but had not obtained the

10  age of 16; in other words, he's between 12 and 16.

11       Is that correct?

12       THE DEFENDANT:  Yes.

13       THE COURT:  And lastly, that you would receive a

14  two-level enhancement because the victim was otherwise in your

15  custody, care, or you were the supervisor of the defendant.  Do

16  you agree with that?

17       THE DEFENDANT:  Yes.

18       THE COURT:  All right.  Now, defendants who fully

19  cooperate with the government -- I'm sorry, the next paragraph,

20  at the bottom of page 4, the United States and the defendant

21  have agreed to jointly recommend a sentence of ten years of

22  imprisonment for charges contained in the criminal information,

23  as well as the additional relevant conduct in the statement of

24  facts, and that you've asked that these ten years be

25  concurrent.  That means ten years on each count that would be

1    served at the same time.

2            Is that part of your understanding of the agreement?

3            THE DEFENDANT:  Yes.

4            THE COURT:  And again, do you understand that the

5    Court is not in any respect bound by that recommendation?

6            THE DEFENDANT:  Yes, Your Honor.

7            THE COURT:  And so if the Court were to sentence you

8    to, say, 20 years, that doesn't violate the plea agreement; and

9    it wouldn't give you a basis to withdraw your guilty pleas.  Do

10   you understand that?

11           THE DEFENDANT:  Yes.

12           THE COURT:  All right.  Defendants normally -- I'm

13   sorry, on the top of page 5, the other thing that the

14   government has agreed to recommend to the Court is that your

15   sentence should include an opportunity for you to voluntarily

16   leave the United States at the conclusion of any term of

17   imprisonment.  Now, what that would mean then is you would

18   technically not be under direct supervised release supervision.

19           Again, do you understand the Court's not bound by

20   that recommendation; and the Court might determine, for

21   example, that you have to serve at least two years of

22   supervised release and then perhaps have leave to leave the

23   country, but that that paragraph is not binding on the Court.

24           Do you understand that?

25           THE DEFENDANT:  Yes.

26

1            THE COURT:  It goes on to say that if you were

2    allowed to leave the country and you returned to the United

3    States at any point during the period of supervised release,

4    you'd be required to register as a sex offender.

5            Do you understand that?

6            THE DEFENDANT:  Yes.

7            THE COURT:  All right.  And that you would have to

8    report to the Probation Office in this district within 72 hours

9    of returning to the country.  Do you understand that?

10           THE DEFENDANT:  Yes.

11           THE COURT:  All right.  Now, as part of the -- in

12   Count 1 of this criminal information, those events all occurred

13   in the Southern District of New York.  Do you understand that

14   you would have a right to have that charge heard in the

15   Southern District of New York?

16           THE DEFENDANT:  Yes, Your Honor.

17           THE COURT:  All right.  And my understanding from the

18   next paragraph is that you are waiving, which again means

19   giving up, any argument that would challenge venue in this

20   district.  Is that correct?

21           THE DEFENDANT:  Yes.

22           THE COURT:  All right.  That means on appeal down the

23   road, you can't say:  I shouldn't have been prosecuted in

24   Virginia because all the acts occurred in New York.  A

25   defendant can waive, which means give up, his right to be tried

27

1    in the jurisdiction where the offense occurred.

2              Do you understand that?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Do you feel that anyone put any force or

5    pressure on you to waive venue in New York as to that count?

6              THE DEFENDANT:  No.

7              THE COURT:  All right.  Now, in the -- these are not

8    numbered paragraphs, so one, two, three, four, it's the fourth

9    paragraph on page 5 provides that the United States and you

10   have not agreed on any other sentencing issues; and that --

11   and that means that you can make other arguments; and in

12   addition, the defense can make what are called -- and the

13   government can make 3553(a) arguments.

14             Do you understand that?

15             THE DEFENDANT:  Yes.

16             THE COURT:  All right.  Now, when a defendant

17   cooperates with the government and fully accepts

18   responsibility, he can have two levels reduced from the offense

19   level and in some cases a third level if the government files a

20   motion to that effect, and the government has provided here

21   that if you qualify for the two-level reduction for acceptance

22   of responsibility and the offense level is at least a 16, the

23   government will ask the Court to award you that third-level

24   reduction.

25             Is that an additional part of your understanding?

1          THE DEFENDANT:  Yes.

2          THE COURT:  All right.  But at the end of the day, it

3   will be the Court which will decide what your criminal history

4   should be and the offense level should be, and then those two

5   numbers are put on a one-page chart called the Sentencing

6   Guideline Table.

7          Have you seen a copy of that table with all the

8   numbers on it?  It's like a matrix.  It's one page, and it has

9   two columns.

10         Mr. Prabhu, is --

11         MR. NASSIKAS:  We have it, Your Honor.

12         THE COURT:  All right.  I just want to make sure

13   you've seen it.  You don't have to have seen it, but most

14   lawyers do show it to their clients.

15         Has he seen it?

16         THE DEFENDANT:  Yes.

17         THE COURT:  All right.  Now, I want to make sure you

18   understand that, as I said before, the Court will make the

19   final decision as to the criminal history and the offense

20   level.  Then those two numbers are going to be put on a chart,

21   that matrix, and the guideline range that results, if it's

22   under ten years, in other words, if the range is under 120

23   months, the Court can't use the guidelines because there's a

24   statutory minimum of ten years as to Count 1.

25              Do you understand that?

1            THE DEFENDANT:  Yes.

2            THE COURT:  However, if the guideline range is above

3    ten years, then the Court must consider the range but is not

4    required to sentence within it; and if the Court has good

5    reasons, it can sentence above the guideline range or below the

6    range.  The only limits on the Court's authority is the Court

7    cannot sentence below the mandatory minimum barring a couple of

8    exceptions we'll get to in a minute, and it can't ever sentence

9    above the statutory maximum.

10           Do you understand that?

11           THE DEFENDANT:  Yes.

12           THE COURT:  Now, in addition to the guidelines, the

13   Court must also look at the 3553(a) factors; and this requires

14   a full evaluation of your entire history, your work history,

15   educational background, health issues, certainly any pattern of

16   repeated conduct in this area of sexual abuse or involvement

17   with pornography involving minors.

18           We're going to look at the need for deterrence, that

19   is, to make sure you don't engage in this conduct in the

20   future, as well as the need to deter others from engaging in

21   the conduct.  So there's a whole lot of factors that go into

22   the sentencing decision.

23           Now, I'm going to assume that you spent a great deal

24   of time talking with your lawyers about the possible sentence

25   you may get in this case.  Have you done that?  Most defendants

1    do.

2                THE DEFENDANT:  Yes, Your Honor.

3                THE COURT:  All right.  And they've given you -- I'm

4    sure they've given you estimates as to what type of a final

5    sentence you may get.  Have they done that?

6                THE DEFENDANT:  Yes, Your Honor.

7                THE COURT:  I want to make sure you understand that

8    no matter what your lawyers may have told you or, for that

9    matter, if Mr. Prabhu or any of the agents or anyone else has

10   said, well, you know, you're probably looking at such-and-such

11   a sentence, none of those discussions in any respect are

12   binding on the Court; and so if at the sentencing hearing you

13   receive a sentence that is different from what you might be

14   expecting or hoping for, that does not constitute a violation

15   of the plea agreement; and it will not give you a basis to

16   withdraw your guilty pleas.

17               Do you understand that?

18               THE DEFENDANT:  Yes.

19               THE COURT:  Now, defendants normally have the right

20   to appeal the sentence imposed on them, but if you look at

21   paragraph 6 of this plea agreement, on page 6, this explains

22   that you are by pleading guilty today giving up many of your

23   appeal rights.  Specifically, the second sentence of that

24   paragraph, starting with the word "nonetheless," as a condition

25   of this plea agreement, you are knowingly waiving your right to

1   appeal both your convictions and any sentence within the

2   statutory maximum as described above.

3           Do you understand that?

4           THE DEFENDANT:  Yes.

5           THE COURT:  All right.  Now, there is a few, a few

6   limitations on this.  You have -- the government has agreed

7   with you that you may challenge as a possible violation of

8   18 U.S.C. 2423(a), that is, Count 3 of the indictment and

9   Count 2 of the criminal information, on the basis of your claim

10  that the admitted conduct fell outside of the statute of

11  limitations.

12          You may recall your lawyers -- prior lawyers filed a

13  motion to dismiss because of a violation of the statute of

14  limitations.  We did issue an opinion that denied that motion

15  to dismiss, but it's my understanding that you may still appeal

16  that decision.

17          And, counsel, is that correct?  That's still a part

18  of the plea agreement?

19          MR. JEFFRESS:  That's correct.

20          MR. PRABHU:  That's correct.

21          THE COURT:  Yeah, all right.

22          It indicates here that the Court's determination on

23  that issue, that is, that one -- which only affects one count,

24  that just affects the second, Count 2 of the criminal

25  information, shall not be grounds for either the United States

1    or the defendant to withdraw from this plea agreement, and all

2    provisions not specifically reflecting this count shall remain

3    in full force and effect.

4            So you understand that all that's going to do is

5    affect your right to appeal that particular count?

6            THE DEFENDANT:  Yes, Your Honor.

7            THE COURT:  All right.  On that particular ground,

8    that is, the statute of limitations ground.  Is that

9    everybody's understanding?

10           MR. JEFFRESS:  Yes.

11           MR. NASSIKAS:  Yes, Your Honor.

12           THE COURT:  All right.  Now, in terms of restitution,

13   that issue is addressed in paragraph 9 of the plea agreement;

14   and there it indicates it's putting you on notice that you may

15   be required to pay the full amount of any victims' losses; and

16   you've agreed to the entry of a restitution order for the full

17   amount of the victims' losses, as those losses are further

18   developed during the sentencing hearing.

19           Do you understand that?

20           THE DEFENDANT:  Yes, Your Honor.

21           THE COURT:  All right.  And at this time, you

22   specifically acknowledge that the individual in the Czech

23   Republic is a victim who is entitled to restitution in an

24   amount to be determined at or before sentencing, and that you

25   have agreed that you will enter into an agreement modifying the

33

1    terms of this agreement to incorporate that specific amount.

2                Are you anywhere close to getting that number,

3    Mr. Prabhu?

4                MR. PRABHU:  Your Honor, as the Court will recall,

5    you appointed the public defender to represent the victim; and

6    they are prepared to engage on this issue with defense.

7                THE COURT:  And have they been working with you on it

8    already?

9                MR. JEFFRESS:  So we, we just found out the name of

10   the lawyer today, Your Honor.  We will get to work immediately

11   on contacting that person and trying to arrange -- work out a

12   mutually agreeable time.

13               THE COURT:  All right, all right.

14               Now, paragraph 10 is important for everybody to be

15   absolutely clear about because that discusses the immunity from

16   further prosecution.  The U.S. Attorney for the Eastern

17   District of Virginia has agreed it will not further prosecute

18   the defendant in this district for any of the activity

19   described either in the criminal information or the statement

20   of facts, except the government of the United States may still

21   prosecute for any crimes of violence or conspiracies to -- or

22   aiding and abetting a crime of violence.

23               Everybody understands that?

24               MR. JEFFRESS:  Yes.

25               THE DEFENDANT:  Yes, Your Honor.

34

1           THE COURT:  All right.  Mr. Nader, is that part of

2      your understanding?

3           THE DEFENDANT:  Yes, Your Honor.

4           THE COURT:  All right.  Now, in the second paragraph,

5      the United States Attorney's Offices for the District of

6      Columbia and the Eastern District of New York -- so it's

7      Eastern District, not Southern District?

8           MR. PRABHU:  That's correct, Your Honor.

9           THE COURT:  All right.  Have reviewed the plea

10     agreement, and they've agreed to be bound by its terms to

11     resolve any potential charges.

12          So again, to the extent that any of your criminal

13     conduct related to the criminal information or a statement of

14     facts occurred in those jurisdictions, you will not be

15     prosecuted by those authorities.  Do you understand that?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  All right.  Now, there's a specific --

18     the next sentence is important.  The Criminal Division of the

19     Department of Justice's Public Integrity Section is not bound

20     by the terms of this plea agreement, and this plea agreement

21     does not resolve any potential charges or conduct under

22     investigation by that section.

23          Do you understand that?

24          THE DEFENDANT:  Yes.

25          THE COURT:  All right.

35

1           MR. PRABHU:  Your Honor, just for the record,

2  Mr. Nader has been charged by the Public Integrity Section in

3  the District of Columbia.

4           THE COURT:  Right, I recognize that.  So, I mean,

5  this -- and who knows, there could be other charges in other

6  jurisdictions.  In fact, frankly, I mean, the U.S. Attorney for

7  Utah could -- if there were charges of misconduct in that

8  jurisdiction, could still prosecute you.

9           Do you understand that?

10          THE DEFENDANT:  Yes.

11          THE COURT:  All right.  Now, there was a pending

12  indictment originally in this case, so Count 11 provides that

13  the indictment will be dismissed, and I assume there are

14  dismissal papers if the plea goes through?

15          MR. PRABHU:  Yes, Your Honor.

16          THE COURT:  All right.  Paragraph 12 is the --

17  describes the forfeiture agreement.  You have agreed to

18  forfeit, that means to give up, any interest you might have in

19  any assets that are related to this case, and specifically

20  right now in the plea agreement, that's been described as an

21  iPhone 7, an iPhone X, and an iPhone 6 Plus.

22          Do you agree that you have given up any interest in

23  those items?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  All right.  Paragraph 15 puts you on

36

1  notice as to the requirements to register as a sex offender;

2  and that would be an absolute requirement as a result of this;

3  and that's, I believe, going to be a lifetime requirement for

4  that.  Do you understand that?

5          THE DEFENDANT:  Yes.

6          THE COURT:  All right.  Now, have you had enough time

7  to explain everything you know about this case to your lawyers?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Do you feel you've told them everything

10  you know?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  And have your attorneys discussed with

13  you the nature of these two charges and any ways in which you

14  could possibly defend yourself against these charges if you

15  decided to plead not guilty and go to trial?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  And, counsel, did you get full discovery

18  in this case?

19          MR. JEFFRESS:  Yes, Your Honor.

20          THE COURT:  And, Mr. Nassikas, have you also had

21  adequate opportunity to review the discovery?

22          MR. NASSIKAS:  Yes, Your Honor, the material portions

23  of it.

24          THE COURT:  And was the discovery fully shared with

25  and explained to Mr. Nader, Mr. Jeffress?

1          MR. JEFFRESS:  Yes.

2          THE COURT:  All right.  And, Mr. Nader, do you feel

3    that your lawyers kept you fully advised with their plea

4    bargaining efforts on your behalf?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  All right.  Did they talk to you about

7    what they were trying to do for you?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  All right.  Are you fully satisfied with

10   the way your counsel have worked for you in this case?

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  And I don't want to get into the details

13   of it.  Because Latham was in this case early on and recently

14   dropped out, is there any issue about the way in which they

15   represented you that you feel undermined or injured your case?

16   I want to make sure I don't have down the road some issue about

17   that.

18         MR. JEFFRESS:  So, Your Honor, if I could just --

19         THE COURT:  Yeah.

20         MR. JEFFRESS:  I think on that issue, if the Court

21   could just add that Mr. Nader does not feel it has been cured

22   by his, subsequently through his current representation.  I

23   think there were some issues related to that that is a whole

24   can of worms, but I think all of those things, to the extent

25   they existed, have now been cured through --

38

1          THE COURT:  Are you satisfied that any problems that

2   you had with your prior counsel have been resolved by your

3   current two attorneys and their associates?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  All right.  Because, I mean, the lawyers

6   that are now representing you on this plea are Mr. Jeffress and

7   Mr. Nassikas.  Are you completely satisfied with what they have

8   done for you?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  And in any respect, do you feel that

11   anything they've done for you has been undercut or diminished

12   because of whatever Latham had done?

13          THE DEFENDANT:  No, Your Honor.

14          THE COURT:  All right.  Now, do you understand you

15   still at this time have a right to change your mind and plead

16   not guilty to either one or both of these charges?  Do you

17   understand that?

18          THE DEFENDANT:  Yes.

19          THE COURT:  And if you did decide to go to trial,

20   then the burden would be on the government to prove your guilt;

21   and at trial, you might be found guilty of one count and not

22   necessarily of the other count.  So their burden would be to

23   prove you guilty, and the standard is proof beyond a reasonable

24   doubt as to each of those counts.

25               Do you understand that?

39

1          THE DEFENDANT:  Yes.

2          THE COURT:  All right.  So as to Count 1, essentially

3   what the government would have to prove is that on the dates

4   alleged, that you knowingly and intentionally, and that means

5   not by an accident or by a mistake or some other innocent

6   reason, possessed materials which the government must prove

7   beyond a reasonable doubt would have contained visual

8   depictions of minors in sexually explicit poses or conduct.

9   That's the essence of that case -- of that charge.

10          Do you understand that?

11          THE DEFENDANT:  Yes.

12          THE COURT:  And in Count 2, they'd have to prove

13   beyond a reasonable doubt again on the date that they've

14   alleged that you knowingly, which means again not by an

15   accident or mistake or other innocent reason, transported a

16   person who was under the age of 18, in fact, they've alleged a

17   14-year-old minor, and that you had a specific intent with that

18   boy that he engage in some sort of prostitution or sexual

19   activity that would constitute a criminal offense.

20          Do you understand that?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Now, if you pled not guilty and went to

23   trial, there are a series of rights and protections you'd have

24   at trial that essentially are given up when a person pleads

25   guilty.  First, you could see all the government's witnesses

40

1    and evidence and test it through the questions of your lawyers.

2             Do you understand that?

3             THE DEFENDANT:  Yes.

4             THE COURT:  You could ask the Court to issue

5    subpoenas that would require the presence at the courthouse of

6    witnesses and/or physical evidence which you could then use in

7    your defense at trial.  Do you understand that?

8             THE DEFENDANT:  Yes.

9             THE COURT:  You could testify as a witness at trial.

10   Do you understand that?

11            THE DEFENDANT:  Yes, Your Honor.

12            THE COURT:  You could also invoke your Fifth

13   Amendment to remain silent; and you could therefore choose not

14   to say a word at trial; and if you made that decision, no

15   evidence of guilt could be drawn from your silence.  Do you

16   understand that?

17            THE DEFENDANT:  Yes, Your Honor.

18            THE COURT:  If you decided to plead not guilty, you

19   would have a choice as to how your case was tried.  You could

20   either have the case tried by a judge alone, which we call a

21   bench trial, or you had previously, I believe, opted for a jury

22   trial, in which case 12 ordinary citizens would be brought

23   together to try the case, but in either type of trial, the same

24   burden would be on the government, and that is, you could not

25   be found guilty unless the government proved your guilt beyond

41

1    a reasonable doubt.

2            Do you understand that?

3            THE DEFENDANT:  Yes, Your Honor.

4            THE COURT:  You would start your trial with a

5    presumption of innocence, and there would be no obligation on

6    you to present any evidence whatsoever.  In fact, your

7    attorneys wouldn't even have to argue the case because the

8    burden at all times would be on the prosecution to prove guilt.

9            Do you understand that?

10           THE DEFENDANT:  Yes, Your Honor.

11           THE COURT:  And in the case of a jury trial, in order

12   for a jury to convict you, all 12 jurors would have to agree

13   with the decision.  So if just one juror had a reasonable doubt

14   about your guilt, that jury could not convict, it would be what

15   we call a hung jury, we would have to declare a mistrial, and

16   you would have a right to a new trial with a new jury.

17           Do you understand that?

18           THE DEFENDANT:  Yes, Your Honor.

19           THE COURT:  And, of course, you'd always have the

20   right to be represented by counsel; and if for some reason you

21   could not afford trial counsel, we would make sure that an

22   attorney was appointed for you at taxpayers' expense.  Do you

23   understand that?

24           THE DEFENDANT:  Yes, Your Honor.

25           THE COURT:  If you continued with a not guilty plea

42

1    or pleas in this case, your attorneys could try to attack the

2    prosecution's case.  Now, they did file the motion to dismiss

3    that one count of the indictment; and that is still an issue

4    that you can appeal; but there might have been other issues,

5    whether, for example, the way in which your cell phones were

6    searched, whether there was a legal defect in that, whether the

7    warrants were proper or not, any statements you gave, whether

8    you got proper *Miranda* warnings, whether the depictions of the

9    minors were actually of minors, because if these people were 19

10   years old, that's not an offense.

11             Again, I don't know what, if any, defenses you might

12   have to the prosecution's case; but what you need to understand

13   at this point is that by pleading guilty, other than the issues

14   we've talked about on the statute of limitations that you have

15   reserved, you're giving up any and all attacks on the

16   prosecution's case except for an attack on the jurisdiction of

17   the Court.

18             Do you understand that?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  And lastly, if you pled not guilty to

21   either one or both of these charges and then went to trial and

22   were found guilty, you could appeal the finding of guilt to a

23   higher-level court.

24             Do you understand that based upon the nature of the

25   law as well as your plea agreement, by being found guilty today

43

1    based on your guilty plea, you're giving up almost all of your

2    appeal rights?  Do you understand that?

3                THE DEFENDANT:  Yes, Your Honor.

4                THE COURT:  All right.  Other than the plea agreement

5    that we've been discussing, do you believe that anybody has

6    promised or suggested to you that by pleading guilty rather

7    than going to trial, you would get a lighter sentence or more

8    favorable treatment by the Court?

9                THE DEFENDANT:  No, Your Honor.

10               THE COURT:  Has anyone or anything such as your

11   mental health -- your physical condition or the pending charges

12   in D.C. or anything else put any force or pressure on you to

13   plead guilty today?

14               THE DEFENDANT:  No, Your Honor.

15               THE COURT:  All right.  Then the last document we

16   need to go over is the statement of facts.  Now, the government

17   filed a motion to seal the actual statement of facts and to

18   have the Clerk's Office publicly file a redacted version.  The

19   only thing that's being redacted, as I understand it, is a

20   little bit of information that could identify a potential

21   coconspirator.  Other than that, nothing else has been redacted

22   from this statement of facts.

23               MR. PRABHU:  That's correct, Your Honor.

24               THE COURT:  I just wanted that to be on the public

25   record.

44

1              And I've gone ahead and I've signed that order.  So

2     as we go over the statement of facts in court today, I will

3     make sure that that person's -- that no names are used, all

4     right?

5              But the first thing is I'm looking at the unredacted

6     statement of facts, and I see what appears to be your signature

7     on page 8 of that statement of facts, Mr. Nader, and again the

8     date, October 24 of 2019.

9              Did you, in fact, sign the statement of facts?

10             THE DEFENDANT:  Yes, Your Honor.

11             THE COURT:  And before you signed the statement, did

12    you very carefully read over the 27 numbered paragraphs above

13    your signature?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  And do you understand -- and I am

16    assuming you and your lawyers negotiated some of those

17    paragraphs.  Is that a fair statement?

18             THE DEFENDANT:  That's right.

19             THE COURT:  And, Mr. Jeffress, I guess you were

20    involved in that, correct?

21             MR. JEFFRESS:  Yes, Your Honor.

22             THE COURT:  All right.  Was there a fair amount of

23    back-and-forth about those 27 paragraphs?

24             MR. JEFFRESS:  Yes, Your Honor.

25             THE COURT:  All right.  And, Mr. Nader, do you

45

1  understand that by signing this statement of facts, you've done

2  two things:  One, you are admitting to the complete truth of

3  everything in those 27 paragraphs; and two, you are admitting

4  that if the case went to trial, the government could have

5  proven all of those facts beyond a reasonable doubt.

6          Do you understand that?

7          THE DEFENDANT:  Yes.

8          THE COURT:  All right.  So I'm not going to go

9  through all of that with you today because I've also read it in

10 chambers.  I just want to make sure that you do agree that you

11 were convicted in this district back in 1991 for violations

12 related to smuggling child pornography.

13         Is that correct?

14         THE DEFENDANT:  Yes.

15         THE COURT:  And you pled guilty to that, and you were

16 sentenced for that; is that correct?

17         THE DEFENDANT:  Yes.

18         THE COURT:  All right.  And then do you agree that

19 over a series of years, you've had exchanges with at least one

20 other person concerning child pornography?

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  All right.  And do you agree that --

23 yeah, I guess the reason why I was surprised that the Eastern

24 District of New York signed off on this is that paragraph 5

25 discussed the Southern District of New York.  But you've got

1   the right district?

2           MR. PRABHU:  That's correct.  If you'd like us to

3   approach, I can explain it.

4           THE COURT:  That's all right.  As long as everybody

5   understands that what we went through before was accurate.  All

6   right, that's fine.

7           But do you agree that in September of 2012, you

8   received some e-mails that had links to various explicit

9   pictures that included child pornography?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  All right.  And do you admit also that at

12  paragraph 11, that while you were in the Southern District of

13  New York between September 20, 2012, and October 1 of 2012, you

14  knowingly possessed or knowingly accessed with the intent to

15  view at least one video of child pornography?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  All right.  And again, this goes on to

18  talk about the Southern District of New York and that you could

19  have been prosecuted there but you've given up that venue,

20  correct?

21          THE DEFENDANT:  Yes.

22          THE COURT:  All right.  All right.  And do you agree

23  with paragraph 12, that in October of 1999, while you were in

24  the Czech Republic, you met a -- the young man who's identified

25  as Minor Boy No. 1?

47

```
 1              THE DEFENDANT:  Yes, Your Honor.
 2              THE COURT:  All right.  And that you met him for the
 3    purpose of commercial sex?
 4              THE DEFENDANT:  Yes, Your Honor.
 5              THE COURT:  All right.  And that you then invited
 6    this boy to travel to the United States, and you arranged for
 7    him to get a visa; is that correct?
 8              THE DEFENDANT:  Yes, Your Honor.
 9              THE COURT:  All right.  And did you send money to
10    somebody in order to get him to come to the United States?
11              THE DEFENDANT:  Yes, Your Honor.
12              THE COURT:  All right.  And do you agree that on or
13    about March 18 of 2000, the minor boy left -- did come to
14    the -- I'm sorry, earlier than that, that he did come to the
15    United States back in -- on a Lufthansa flight, and he arrived
16    at Dulles Airport on or about, was it February of 2000, and you
17    met him?  Did you meet him at the airport, or did somebody meet
18    him on your behalf?
19              THE DEFENDANT:  I don't remember.
20              THE COURT:  It says -- I'm looking at page 5, at the
21    very top paragraph -- Nader met Minor Boy 1 at the airport and
22    transported him to your Washington, D.C., residence.
23              Is that correct?
24              THE DEFENDANT:  I think so, yes, Your Honor.
25              THE COURT:  All right.  And he stayed with you from,
```

48

1    what, February 6, 2000, to about March 18 of 2000, a couple of

2    weeks; is that correct?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  And then he left the United States from

5    Dulles Airport; is that correct?

6              THE DEFENDANT:  That's correct.

7              THE COURT:  All right.  And so you agree that you did

8    cause him to be transported in both interstate and foreign

9    commerce for purposes of engaging in sexual activity?

10             THE DEFENDANT:  Yes, Your Honor.

11             THE COURT:  All right.  Do you understand -- again, I

12   don't have to go through all of this -- do you understand that

13   if the Court -- and I guess I should go back on this.  Do you

14   agree that in April of 2018 -- no, it would be earlier than

15   that.  Hold on.

16             Well, in the, in the 2018 time period, I'm just

17   looking at these various flights that you were coming back and

18   forth from the United States and overseas, you had in your

19   possession iPhones that had depictions of child pornography?

20   Do you agree with that?

21             MR. JEFFRESS:  Your Honor, that's not --

22             THE COURT:  Not quite accurate?

23             MR. JEFFRESS:  The government submits that; but, you

24   know, these are the images that were sort of contested that

25   came back, that were on the 2018 --

49

1        THE COURT:  But they were subject to a search

2   warrant.

3        MR. JEFFRESS:  That's correct, Your Honor.

4        THE COURT:  All right.  So they are what they are.

5        MR. JEFFRESS:  They are what they are.

6        THE COURT:  All right, that's fine.

7        All right.  Do you understand, Mr. Nader, that if the

8   Court accepts your guilty pleas today, there'll be no further

9   trial of the issues, and you will be found guilty?

10        THE DEFENDANT:  Yes, Your Honor.

11        THE COURT:  As to Count 1, which is that you

12   possessed visual depictions of minors engaged in sexually

13   explicit activity, how do you want to plead, guilty or not

14   guilty?

15        THE DEFENDANT:  Guilty, Your Honor.

16        THE COURT:  And as to Count 2, which was the

17   transportation of the minor from Czechoslovakia to the United

18   States, how do you want to plead?

19        THE DEFENDANT:  Guilty, Your Honor.

20        THE COURT:  All right.  And, Mr. Jeffress and

21   Mr. Nader, have both of you had enough time to thoroughly go

22   over these two guilty pleas with your client?

23        MR. JEFFRESS:  Yes, Your Honor.

24        MR. NASSIKAS:  Yes, Your Honor.

25        THE COURT:  Are you each fully satisfied that the

50

1    pleads accord with your understanding of the facts and law in

2    this case?

3              MR. JEFFRESS:  Yes, Your Honor.

4              MR. NASSIKAS:  Yes, Your Honor.

5              THE COURT:  And are you each satisfied that Mr. Nader

6    has entered his pleas in a knowing and voluntary fashion?

7              MR. JEFFRESS:  Yes.

8              MR. NASSIKAS:  Yes.

9              THE COURT:  All right.  Then based upon all these

10   answers, I'm satisfied, Mr. Nader, you've entered both pleas

11   with the full advice of competent counsel, that the written

12   statement of facts plus your oral admissions today are more

13   than enough evidence upon which to find you guilty beyond a

14   reasonable doubt as to both counts; and I'm satisfied you've

15   entered your pleas in a knowing and voluntary fashion.  So

16   you're found guilty of Counts 1 and 2.

17             If we have the motion to dismiss the indictment, I'll

18   enter that order now.

19             MR. JEFFRESS:  Thank you, Your Honor.

20             THE COURT:  I've also entered the sealing order, all

21   right?

22             All right, we need to set this case for sentencing;

23   and that's one of the reasons I asked about the time it's going

24   to take to get the information for restitution purposes is that

25   might affect the time for the sentencing hearing; but do you

1    think you can do it within the normal 70 to 80 days?

2              MR. JEFFRESS:  Your Honor, we were hoping for the

3    second week of April if the Court's available.  I think that

4    would give us enough time.  We do plan on getting right on that

5    restitution order.

6              MR. NASSIKAS:  That would be, Your Honor, the week of

7    April 6 is the Monday.

8              THE COURT:  Right.  April 10, April 10 is available,

9    as is the 17th, so what works for you-all?

10             MR. JEFFRESS:  April 10, please, Your Honor.

11             MR. NASSIKAS:  Thank you.

12             MR. PRABHU:  Fine with the government.

13             THE COURT:  All right, that will be at 11:00.

14             And, Mr. Nader, you are getting credit for the time

15    you're now serving against your final sentence.  You will be

16    visited in your cell by a federal probation officer who will be

17    conducting the background information investigation, and so

18    your full cooperation with the officer is to your advantage.

19             Do you understand that?

20             THE DEFENDANT:  Yes, Your Honor.

21             THE COURT:  All right.  Is there anything further on

22    this case?

23             MR. NASSIKAS:  Your Honor, do you know when that

24    probation officer is likely to be surfacing with us?

25             THE COURT:  You should probably go check -- you can

1  go over to the office right now and just let them know that the

2  plea has been accepted and when the sentencing hearing is, and

3  then they'll assign somebody.

4            MR. NASSIKAS:  Okay.

5            THE COURT:  There usually are specialized probation

6  officers who handle these child pornography cases.

7            MR. NASSIKAS:  Okay.

8            THE COURT:  So there'll be an experienced officer

9  doing this.

10           Anything further?

11           MR. PRABHU:  Nothing from the government, Your Honor.

12           MR. NASSIKAS:  Thank you, Your Honor.

13           THE COURT:  Then the defendant is remanded, and we'll

14  adjourn court for the day.

15                          (Which were all the proceedings

16                           had at this time.)

17

18              CERTIFICATE OF THE REPORTER

19     I certify that the foregoing is a correct transcript of

20  the record of proceedings in the above-entitled matter.

21

22

23                        _____
                                      /s/
24                           Anneliese J. Thomson

25